IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DISTRICT

| | | |
|---|---|---|
| HUDSON SURGICAL DESIGN, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 08 C 1566 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | Magistrate Judge Nan R. Nolan |
| ZIMMER HOLDINGS, INC., ZIMMER, | ) | |
| INC., RUSH SYSTEM FOR HEALTH and | ) | |
| RUSH UNIVERSITY MEDICAL CENTER, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**HUDSON SURGICAL DESIGN INC.'S MOTION TO COMPEL
DISCOVERY FROM RUSH UNIVERSITY MEDICAL CENTER**

In accordance with Fed. R. Civ. Proc. 37(a), Plaintiff Hudson Surgical Design, Inc.
("Hudson") seeks an order compelling defendant Rush University Medical Center ("RUMC") to
serve proper answers to interrogatories and document requests seeking basic discovery related to
the accused techniques, instruments and implants and RUMC's invalidity contentions.

## I.    **INTRODUCTION**

On March 18, 2008, plaintiff Hudson filed its Complaint in this matter asserting claims
for patent infringement.  Hudson's complaint asserts two patents:  U.S. Patent No. 7,344,541
("the '541 patent"), entitled "Methods and Apparatus for Femoral and Tibial Resection," issued
on March 18, 2008 and U.S. Patent No. 5,643,272 ("the '272 patent"), entitled "Method and
Apparatus for Tibial Resection," issued on July 1, 1997 (collectively "patents-in-suit").  The
patents-in-suit relate to minimally invasive knee replacement surgery. By way of background,
minimally invasive surgery ("MIS") techniques, first developed for hip replacement surgery, are
now also being applied to knee replacement surgery.  The knee procedure is called MIS Quad-

Sparing Total Knee Arthroplasty ("MIS quad-sparing TKA").  The MIS Quad-Sparing TKA that uses the patented technique that is much less invasive than traditional knee replacement surgery. During traditional knee replacement surgery, an 8- to 12-inch incision is made, cutting the quadriceps tendon and muscles. However, with MIS Quad-Sparing TKA, the surgeon only has to make an approximate 3- to 5-inch incision and uses specific instruments and adapted surgical techniques to avoid cutting through muscle tissues and tendons.  This minimally invasive procedure provides many benefits to patients, including reduced pain, quicker recovery time, less scaring, and less time in the hospital.  Hudson's allegations of infringement extend to the surgical techniques, implants and instruments used in this procedure, including those used by RUMC at its facilities.

Hudson's complaint for patent infringement alleges, among other things, that RUMC including its employees, representatives and agents has directly infringed, contributorily infringed and actively induced infringement of one or more claims of the patents-in-suit by using, promoting, providing, assisting in the design or development of, training surgeons to perform as well as benefitting from the accused techniques, accused instruments, and/or accused implants.  On May 9, 2008, RUMC answered Hudson's complaint summarily claiming that the patents-in-suit are not infringed and/or invalid.  RUMC has participated in the very acts of direct infringement.  RUMC physicians have admittedly played a critical role in the design and development of the surgical instruments and surgical technique required for this procedure. (Ex. A, H003538-39, Rush press release dated February 6, 2004).  The accused technique itself even shows RUMC doctors as co-authors.  Additionally, RUMC surgeons perform the accused techniques at RUMC with RUMC support staff using the accused implants and the accused instruments.  For example, a document produced by RUMC, identifies a Zimmer Quad-Sparing

System that has been consigned to Rush (Ex. B, RUMC0001555) and a document describing the "MIS QUAD-Sparing Total Knee Procedure" done at RUMC is easily accessible from the Rush website. RUMC also actively promotes and benefits from the accused techniques and instruments. Additionally, RUMC has been directly involved in training surgeons on how to perform the accused techniques using the accused implants and the accused instruments. (Ex. C, Zimmer's consultant report showing million dollar payments made to Rush and Rush physicians, including Dr. Berger and Dr. Rosenberg). Such documents demonstrate that RUMC has participated in the very acts of infringement as well as partnered with Zimmer. RUMC is a not merely an innocent non-for-profit hospital who has no involvement in the infringing activities. Thus, RUMC's refusal to properly respond to the discovery served by Hudson is improper.

## II.    THE COURT SHOULD ORDER HUDSON TO SUPPLEMENT ITS RESPONSES TO INTERROGATORIES 1-7, 10 and 12-14

On May 15, 2008, Hudson served its discovery on RUMC requesting basic information related to the accused surgeries performed at RUMC, the accused instrument, techniques and implants and RUMC's non-infringement and invalidity contentions. To date, RUMC has refused to provide complete responses to this discovery. The relevance of such information is beyond dispute. Nearly all of RUMC's responses to Hudson's interrogatories are deficient, most are evasive and some are deliberately misleading (Ex. D). Examples follow:

**Interrogatory No. 1** seeks the identity of all current and former officers, directors, employees etc. who has or had any involvement in the marketing, distribution, training, use and/or sale of the accused instruments, accused techniques and/or accused implants. Although RUMC agreed to supplement its response to Interrogatory No. 1 on June 27, 2008, to date it has failed to do so.

**Interrogatory Nos. 2 and 3** ask straight-forward questions that can easily be answered by RUMC regarding the accused techniques and instruments. Interrogatory 2 seeks information concerning the surgeries, procedures or operations performed by or for RUMC using the accused techniques, including the number of surgeries, when they were performed and by whom as well as any associated financial information. Interrogatory 3 seeks basic information regarding the accused instruments from 2002 forward, including the trade name and model number. By letter dated 7/25/08, RUMC acknowledges that it has unilaterally limited this request providing information from 2006 forward only. RUMC has not represented that it will supplement or provide such information for the additional years and has no viable basis for limiting its response to 2006 forward, particularly because Hudson is entitled to damages going back to 2002 based on RUMC's infringement of the '272 patent.

**Interrogatory No. 4** seeks information regarding payments received by RUMC from 2002 forward pertaining to the accused instruments, implants or techniques. RUMC claims it is "investigating" this interrogatory but also asserts RUMC cannot be liable for damages under §271 and has not agreed to supplement this response. RUMC's most recent letter of July 25, 2008, responding to Hudson's repeated request for this information is also evasive, asserting incorrectly that Hudson's request that RUMC fully respond to Nos. 2-4 is an issue that "is newly raised" and stating RUMC will supplement its responses but again fails to provide Hudson with a specific date for the supplemented responses.

**Interrogatories 5, 6 and 7** request the basis for RUMC's position that the claims of the patent-in-suit are either invalid or not infringed. Hudson's responses are again wholly inadequate and evasive. Interrogatory 5 requests that RUMC explain why it contends that it does not infringed each asserted claim of the patents in suit. Interrogatory No. 6 seeks the basis

for RUMC's contention that the patents in suit are invalid for failure to comply with 35 U.S.C. §102. Interrogatory No. 7 seeks the basis for RUMC's contention that the patents in suit are invalid for failure to comply with 35 U.S.C. §103. RUMC first asserted that it needed clarification regarding RUMC's current infringement contentions. On July 9, 2008, Hudson provided RUMC with its current infringement contentions, including approximately 500 pages of detailed claim charts applying the asserted claims to quad-sparing instruments, implants and techniques on a claim element by claim element basis. Since that date RUMC has repeatedly requested that RUMC supplement its infringement contentions (7/9/08 D. Sheikh letter to B. Sodikoff; 7/18/08 D. Sheikh letter to T. Maas). It is unbalanced and unjust that RUMC has a detailed element-by-element claim chart for Hudson's infringement contentions, yet RUMC refuses to do the same for its invalidity contentions. See Digitronics Corp. v. Jewel Companies, Inc., 57 F.R.D. 649, 650 (N.D. Ill. 1972) (finding that interrogatory requesting analysis as to each list of prior art references not overly burdensome and ordering defendant to answer interrogatory asking for an element-by-element description of prior art, and noting that plaintiff, in response to defendant's interrogatories, had provided an element-by-element application of its patent claims to the accused devices).

**Interrogatory No. 10** seeks RUMC's contention on the issue of damages for infringement in the event the patent is held valid. RUMC refused to provide such information and to date has failed to supplement this response.

**Interrogatory No. 12** again seeks basic information easily accessible by RUMC and requests each patent or patent application filed, owned or controlled by RUMC covering any accused instruments, techniques and or implants. RUMC refused to provide such information and to date has failed to supplement this response.

**Interrogatory Nos. 13 & 14** requests each communication, contract or agreement between RUMC and any third party pertaining to Hudson's rights, the patents-in-suit, the accused instruments, accused techniques or accused implants. RUMC has not represented that it has produced all relevant information nor has it agreed to supplement. While RUMC has represented that its investigation has not revealed any additional contracts or types of agreements between physicians and RUMC, its representation seeks to limit the scope of this interrogatory and RUMC has not made such a representation for all other third parties. (No. 14).

RUMC should be compelled to serve complete responses to Hudson's first set of interrogatories including 1, 2-7, 10, and 12-14.

## III.    THE COURT SHOULD ORDER RUMC TO PRODUCE RELEVANT DOCUMENTS RESPONSIVE TO HUDSON'S DOCUMENT REQUESTS

Similar to RUMC's deficient responses to Hudson's interrogatories, RUMC has also failed to produce all responsive documents. Hudson seeks an ordering compelling production of documents related to three broad categories of documents for which it served discovery requests on May 15, 2008 (Ex. E).

### A.    RUMC Should Be Compelled To Produce Documents Related To All RUMC Surgeons Who Have Performed Infringing Quad-Sparing Procedures

RUMC has specifically requested all documents and things constituting or pertaining to the Accused Techniques, the Accused Instruments and/or Accused Implants (Request No. 12) and documents sufficient to show when, where and by whom the Accused Techniques and Instruments have been used (Request Nos. 13 and 14). During the June 27 meet and Confer, Counsel for RUMC stated that it intended to provide information on quad sparing procedures done at RUMC by Dr. Berger and Dr. Aaron Rosenberg because Hudson had previously referred to these two doctors. To date, RUMC has not provided such information for Dr. Rosenberg.

Counsel for Hudson believes that additional RUMC surgeons have also performed infringing quad-sparing procedures and Hudson requested information on these physicians and procedures. After the parties debated whether it was reasonable for RUMC to provide this requested information given the number of RUMC surgeons, counsel for Hudson visited the websites of Zimmer and Midwest Orthopedics at Rush and was able to limit the scope of this request. Specifically, counsel for Hudson limited the request to any of the nine surgeons identified on the Midwest Orthopedics at Rush Website and any of the forty-five surgeons identified on the Zimmer website whose joint procedure specialties included "MIS Knee" (Ex.F, website printouts provided to counsel for RUMC on June 27, 2008 identifying area surgeons believed to have done quad-sparing procedures at RUMC). Despite Hudson's clear and limited request, no additional responsive documents have been produced.

The requested documents are admittedly within the control, possession or custody of RUMC, are readily accessible to RUMC and similar documents have previously been produced in this litigation. For example, RUMC produced a "Preference Card" for Dr. Richard A. Berger that specifically identifies "MIS TIbial Cutting Jigs" and a "Quad Sparing Femoral Tray" (Ex. G, RUMC0001543-45). After this document was produced, Hudson specifically requested that RUMC produce all Preference Cards identifying "MIS Tibial Cutting Jigs" and "Quad-Sparing Femoral Tray" within its possession, custody or control (Ex. H, 7/18/08 letter from D. Sheikh to T. Maas; Ex. I, 6/27/08 letter from D. Sheikh to R. Briesblatt). Despite the fact that RUMC can readily locate and produce such documents, as it did for Dr. Berger, RUMC has failed to produce similar documents for the other identified physicians who perform surgeries using the accused techniques. RUMC continues to assert that it would be burdensome to produce such information and claims Hudson can obtain this information from other sources. These objections are

insufficient. The documents are relevant and responsive to Hudson's requests. The withholding of such information by RUMC is improper and the documents should be produced.

**B.    RUMC Should Be Ordered To Produce All Documents Showing The Specifics Of The Accused Surgeries Performed At Rush**

Despite Hudson's requests, RUMC refuses to produce documents showing the number of accused surgeries performed at RUMC, when the surgeries were performed, who performed the surgeries and the associated financial information. Hudson has specifically requested all documents and things constituting or pertaining to the Accused Techniques, the Accused Instruments and/or Accused Implants (Request No. 12); documents sufficient to show when, where and by whom the Accused Techniques and Accused Instruments have been used (Request Nos. 13 and 14); dates on which and circumstances under which the Accused Techniques, the Accused Instruments and the Accused Implants were conceived, designed, used, offered for sale, sold, provided, supplied and/or distributed (Request No. 18) and documents sufficient to show all revenues to RUMC pertaining to the Accused Techniques, Accused Instruments and/or Accused Implants (Request No. 23). Moreover, such information is likewise responsive to other broader document requests, including Request Nos. 3, 4, 7, 8, 9, 10, 24, 25, 53, 54, 55, 62 and 63. RUMC's refusal to produce any documents revealing basic factual information related to these surgeries that is clearly within its possession, custody or control without merit, and it should be compelled to produce all responsive documents.

**C.    RUMC Should Be Ordered To Produce All Documents Showing The Totality Of Quad-Sparing Instruments Within Its Possession, Custody Or Control As Well As The Chain Of Custody Of These Instruments**

RUMC has failed to provide Hudson with documents sufficient to identify all the quad-sparing instruments in the possession, custody or control of RUMC. Hudson has specifically requested all documents and things sufficient to show the number of Accused Instruments that

have been provided to defendant and when such instruments were provided (Request 15); documents sufficient to show who was and/or is in possession of the accused instruments (Request 16); documents and things sufficient to show the design, function and operation of the accused instruments (Request 19); documents and things sufficient to show the number of accused instruments made, sold, supplied, provided and/or distributed by or for defendant (Request 43).  There is no confusion about what Hudson seeks from RUMC through its requests as Hudson has specifically articulated that the scope of its discovery requests related to the Accused Instruments.

Hudson has clearly explained that its allegations of infringement extend to the "Zimmer MIS Quad-Sparing Total Knee instruments" in the possession, custody or control of RUMC and the implants implanted using these instruments (See Ex. H, 7/18/08 letter from D. Sheikh to T. Maas; Ex. I 6/27/08 letter from D. Sheikh to R. Breisblatt). Hudson also identified the Zimmer Quad-Sparing tibial and femoral cutting guides and alignment guides and the trays including them.  Furthermore, Hudson also identified the surgical techniques, implants and instruments used in the Zimmer quad-sparing system that have been consigned to RUMC as well as the technique entitled "MIS Quad-Sparing Surgical Technique for Total Knee Arthroscopy, NEXGEN COMPLETE KNEE SOLUTION" and the instruments and implants described and shown in it.  (Ex. J, H004166-220).  Further, Hudson informed RUMC that it contends that the femoral tray described in document (Ex. K, RUMC0001553), and specifically the Medial IM Guides and the Cutting Guides, is also relevant.  Thus, despite Hudson's request and assistance to RUMC in responding to this request, RUMC's production remains inadequate in response to these requests.

IV.    **THE DISCOVERY SOUGHT BY HUDSON IS RELEVANT AND THERE IS NO UNDUE BURDEN IN ORDERING RUMC TO FULLY AND COMPLETELY RESPOND TO THE DISCOVERY SERVED BY HUDSON**

A.    **The Discovery Sought By Hudson Is Relevant**

The Court has broad discretion in ruling on discovery motions. Lakewood Eng'g & Mfg. Co. v. Lasko Prods., 2003 U.S. Dist. LEXIS 3867, 3-4 (N.D. Ill. Mar. 13,2003). Parties may obtain discovery "regarding any matter, not privileged, which is relevant to the subject matter" of the action. FED. R. CIV. P. 26(b)(1). Relevance is broadly defined, and includes information that may "not be admissible at trial [but is discoverable] if [it] appears reasonably calculated to lead to the discovery of admissible evidence." Videojet Sys. Intl, Inc. v Inkjet, Inc., 1997 U.S. Dist. LEXIS 3378, 1997 WL 138008, at *1 (N.D. Ill. Mar. 19, 1997). A request for discovery "should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." Videojet, 1997 U.S. Dist. LEXIS 3378, 1997 WL 138008, at *1 (internal citations omitted); Lakewood Eng'g & Mfg. Co. v. Lasko Prods., 2003 U.S. Dist. LEXIS 3867, 3-4 (N.D. Ill. Mar. 13,2003). The discovery sought by Hudson is clearly relevant to the subject matter of this action. RUMC has not claimed the requested information is privileged. Accordingly, RUMC should be compelled to provide complete responses to such discovery.

B.    **There Is No Undue Burden On RUMC**

In response to the discovery served by Hudson, RUMC claims the requests are overly burdensome. An objection on the ground of burden must be supported by a specific showing why an interrogatory should not be answered. In re Folding Carton Antitrust Litigation, 83 F.R.D. 260, 265 (N.D. Ill. 1979) (ordering production of information on purchasing practices over a fifteen-year period, despite burden and expense, because information was relevant to key

issues).    In <u>In re Folding Carton Antitrust Litigation</u>, the Court held, "[b]ecause the interrogatories themselves are relevant, the fact that answers to them will be burdensome and expensive 'is not in itself a reason for refusing to order discovery which is otherwise appropriate." <u>Id.</u>  Imposing such a burden on RUMC is proper where, as here, the information sought is important to the ultimate determination of Hudson's claims of infringement.

Further, in <u>Innovative Piledriving Prods., LLC,</u> plaintiff's motion to compel complete responses to interrogatories was granted in part over defendant's objection that it was unduly burdensome:

> The request is not unduly burdensome, and that the information may be "equally available to Plaintiffs" is not a valid objection. See <u>Capacchione</u>, 182 F.R.D. at 491; Wilson, 2000 WL 33672980, at * 3. Defendants' response is inadequate, as it does not sufficiently identify which responsive documents contain the information. <u>Muchin v. Lincolnshire Bath & Tennis Club, Inc.</u>, 1991 U.S. Dist. LEXIS 17950, No. 91 C 746, 1991 WL 264605, at * 1 (N.D. Ill. Dec. 6, 1991) (responding party must state which documents contain the responsive information); <u>For Your Ease Only, Inc. v. Calgon Carbon Corp.</u>, 2003 U.S. Dist. LEXIS 20267, No. 02 C 7345, 2003 WL 22682361, at * 3 (N.D. Ill., Nov 12, 2003) (granting motion to compel because response failed to sufficiently identify responsive documents).

<u>Innovative Piledriving Prods., LLC</u>, 2005 U.S. Dist LEXIS 14744 7-9.  In this case, RUMC's document production indicates that it has highly relevant documents in its possession, custody or control that can and should be produced.  (see e.g., Ex. G, RUMC0001543-45, Preference Card for Dr. Berger).  Like the Preference Cards, Hudson asserts RUMC is withholding other relevant documents without a basis to do so.  Accordingly, RUMC should be ordered to fully and completely respond to the discovery served by Hudson, including identifying responsive documents which are admittedly within its control.

## V.     THE OTHER REASONS PROFERRED BY RUMC ARE LIKEWISE INSUFFICEINT TO EXCUSE ITS DISCOVERY OBLIGATIONS

### A.     Hudson Has Both Clarified And Limited The Scope Of Its Requests In An Effort To Assist RUMC In Responding To Its Discovery

Initially, RUMC claimed that it needed further assistance from Hudson in order to fully respond to its discovery requests.   RUMC requested that Hudson provide the exact surgical instruments and techniques that it alleges infringe the patents-in-suit as well as the exact claims allegedly infringed.   Hudson's June 27, 2008 letter to RUMC identified in great detail the accused techniques, implants and instruments.   (Ex. I, 6/27/08 letter from D. Sheikh to R. Briesblatt). Additionally, on July 9, 2008, Hudson provided RUMC with its current infringement contentions, including detailed nearly 500 page claim charts applying the asserted claims to quad-sparing instruments, implants and techniques on a claim element by claim element basis. Thus, although Hudson complied with both of RUMC's specific requests for assistance regarding the discovery served by Hudson, neither has resulted in additional documents or supplemented interrogatories from RUMC.   Hudson also provided RUMC with references to numerous RUMC documents identifying the accused techniques and instruments, thus there is no basis for RUMC to continue to provide evasive responses to the discovery served by Hudson

### B.     The Federal Rules of Civil Procedure Do Not Provide An Exception To Discovery Obligations For Medical Care Providers

Equally as deficient in excusing RUMC from having to respond to Hudson's discovery are RUMC'S repeated statements that it is a medical care provider.   RUMC seems to assert that its role as a medical care provider somehow subjects it to a different and more lenient obligation for purposes of responding to the discovery served by Hudson because it is too "busy providing medical care."   RUMC also asserts that responding to Hudson's discovery "takes away from the time that [Rush medical personnel] can spend providing patient care."   (See e.g. 7/7/08 letter

12

from B. Sodikoff to D. Sheikh).  The repeated self-serving statements made by RUMC are both at odds with the Federal Rules of Civil Procedure which recognize no such exception and the undeniable fact that the individuals actually responsible for providing medical services and patient care are not the same individuals and/or attorneys responsible for responding to Hudson's discovery.  RUMC is a party to this lawsuit and has benefitted from the activities accused of infringement as well as affirmatively challenged Hudson Surgical's patent rights.  As such, RUMC must participate in the discovery process and comply with the Federal Rules of Civil Procedure.

### C.     There Is No Concern Over Private Patient Information

In a further attempt to avoid responding to Hudson's request for documents, RUMC also asserts that it cannot produce certain documents because they contain private information.  While Hudson is sensitive to this concern, there is no basis to withhold these documents for the stated reason.  First, the protective order which has been adopted and entered by the Court in this matter includes specific provisions in order to protect private patient information.  Moreover, counsel for RUMC agreed to produce such information in redacted form during the meet and confer on June 27, 2008.  Thus, the private nature of the documents will also be sufficiently protected if the documents are produced in redacted form.  Consequently, there is no fear of disclosure of private information and the documents should be produced.

## VI.    HUDSON HAS COMPLIED WITH LOCAL RULE 37.2

Pursuant to Local Rule 37.2, Hudson attempted to resolve these issues with RUMC on numerous occasions.  Beginning on June 18, 2008, pursuant to Rule 37.2, counsel for Hudson, David Sheikh, conferred by telephone with counsel for RUMC, Robert Breisblatt regarding the deficiencies in RUMC's discovery responses. RUMC agreed to produce documents and

supplement at least some of their responses to Hudson's interrogatories by Friday June 20, 2008. RUMC failed to do either.  On June 27, 2008, pursuant to Rule 37.2 counsel for Hudson, David Sheikh again conferred by telephone pursuant to Rule 37.2 with counsel for RUMC, Robert Breisblatt, regarding the deficiencies in RUMC's discovery responses.  During the call, RUMC agreed to produce certain requested information and Hudson agreed to provide additional clarification to RUMC related to specific requests.

Over the course of the past six weeks, the parties have engaged in repeated letter correspondence. (See Ex. L, 6/25/08 letter from D. Sheikh to R. Breisblatt; Exhibit I, Ex.M, 7/7/08 letter from D. Sheikh to R. Breisblatt; Ex. N, 7/9/08 letter from D. Sheikh to B. Sodikoff; and Ex. H, 7/18/08 letter From D. Sheikh to T. Maas).  The communications from counsel for Hudson clearly articulated the need for the information sought herein and specifically identified the deficiencies in RUMC's discovery.  Hudson has repeatedly requested the same information from RUMC for which it now seeks the Court's relief.  While the parties were able to achieve limited success on their own related to the deficiencies in RUMC's discovery responses, many important issues remain unresolved and the parties have been unable to reach an accord related to the issues presented herein. (Exhibit H).  Despite continued efforts, neither the meet and confer nor the continued communications have successfully resolved the discovery dispute between the parties.  RUMC's refusal to comply with its discovery obligations has served only to delay the discovery process.

Hudson made an ongoing good faith effort to resolve these discovery issues without the need for intervention by the Court.  Specifically, RUMC refuses to provide full and complete responses to interrogatories 1-7, 10, and 12-14 served by Hudson and refuses to provide responsive non-privileged documents related to the accused surgeries that are admittedly within

its possession and control.

**VII.    CONCLUSION**

Hudson respectfully requests the RUMC be compelled to supplement its interrogatory responses to fully and completely answer Interrogatory Nos. 1-7, 10 and 12-15 served by Hudson in this matter, by no later than August 19, 2008.  Hudson also respectfully requests the RUMC be compelled to produce all responsive documents to the three categories of documents identified herein, including all documents identifying the physicians who have performed the accused surgeries, specifics of the accused surgeries and accused instruments.

Respectfully submitted,


 *s/Laura A. Kenneally*
Christopher J. Lee
David J. Sheikh
Richard B. Megley, Jr.
Laura A. Kenneally
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois  60602
(312) 236-0733

**Attorneys for Plaintiff, Hudson Surgical Design, Inc.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **HUDSON SURGICAL DESIGN INC.'S MOTION TO COMPEL DISCOVERY FROM RUSH UNIVERSITY MEDICAL CENTER** was electronically filed with the Clerk of Court using CM/ECF system, which will send notification by electronic mail to the following:

> Robert B. Breisblatt (*robert.breisblatt@kattenlaw.com*)
> Sheldon T. Zenner (*sheldon.zenner@kattenlaw.com*)
> Thomas J. Maas (*thomas.maas@kattenlaw.com*)
> Brian Sodikoff (*brian.sodikoff@kattenlaw.com*)
> KATTEN MUCHIN ROSENMAN LLP
> 525 W. Monroe Street
> Chicago, IL 60661
> (312) 902-5200
> Fax: (312) 902-1061
>
> *Attorneys for Rush System for Health and*
> *Rush University Medical Center*

> Christina L. Brown (*brownc@mbhb.com*)
> Michael H. Baniak (*baniak@mbhb.com*)
> Gary E. Hood (*hood@mbhb.com*)
> MCDONNELL BOEHNEN HULBERT & BERGHOFF LLP
> 300 South Wacker Drive, Suite 3100
> Chicago, IL 60606
> (312) 913-0001
> Fax: (312) 913-0002
>
> *Attorneys for Zimmer, Inc. and Zimmer Holdings, Inc.*

on August 6, 2008.

> *s/Laura A. Kenneally*

# EXHIBIT A

News Releases



HOME | FOR PHYSICIANS | RUSH UNIVERSITY

RUSH UNIVERSITY
MEDICAL CENTER    IT'S HOW MEDICINE
SHOULD BE

ABOUT RUSH | CONTACT US | MAKE APPOINTMENT | NEWSLETTER SIGN-UP | INFORMACION DE SALUD    SEARCH [        ]  GO

) FIND A DOCTOR

) PATIENT & VISITOR SERVICES

) HEALTH INFORMATION

) CLINICAL SERVICES

) EVENTS & CLASSES

) RUSH NEWS ROOM

) CLINICAL TRIALS

) RESEARCH AT RUSH

) NURSING AT RUSH

) WORK AT RUSH

) GIVING TO RUSH



**IN THIS SECTION**
▸ Back to Rush News Room
▸ Search News Releases
▸ Join Our News Release E-mail List
▸ Unsubscribe from News Releases

February 06, 2004

**Rush University Medical Center First to Perform Minimally Invasive Total Knee Replacement Surgery as Outpatient**

*Minimally Invasive Approach Sends Patients Home Same Day*

Chicago – The same minimally invasive surgical techniques that were developed for hip replacement surgery are now being applied to total knee replacement surgery, in most cases dramatically reducing time in the hospital, pain and recovery. In the present study, Dr. Richard A. Berger, an orthopedic surgeon at Rush University Medical Center, reported that 92 percent of his patients who have minimally invasive total knee replacement surgery are able to leave the hospital and go home the same day.

Berger, one of the pioneers of the first minimally invasive hip replacement surgery using two small incisions, is also the first surgeon to perform the innovative minimally invasive total knee arthroplasty (TKA) as an outpatient procedure. Developed in conjunction with Zimmer, a manufacturer of orthopedic reconstructive devices, the procedure is called the *MIS Quad-Sparing* Total Knee Procedure because it avoids cutting muscles and tendons in the knee during surgery. A similar procedure has been performed with partial knee replacement and is now being successfully performed for complete knee replacements by Berger and Dr. Aaron Rosenberg at Rush. The *MIS Quad-Sparing* total knee procedure is performed through one small three- to four- inch incision instead of a large, eight- to 12-inch incision. This approach has the potential for dramatically reducing pain by sparing muscles and tendons that historically have been cut during standard TKA surgery.

"Using new tools and minimally invasive surgical techniques, we avoid cutting through the quadriceps tendon and muscles and replace the damaged knee through a three- to four-inch incision, rather than the standard eight- to12-inch incision down the front of the knee."

Berger says the minimally invasive approach translates into potentially great benefits for the patient. The quadriceps muscles and tendon control the function of the knee. The cutting of the quadriceps tendon and muscles in standard surgery causes much of the pain the patient feels during rehabilitation after standard total knee replacement surgery. Also, scarring and adhesions that form while the tissues heal can cause pain, swelling and stiffness during rehabilitation.

H003538

News Releases

Because the quadriceps tendon and muscles are not cut during minimally invasive TKA, other potential benefits of the procedure include increased range of motion sooner after surgery, faster recovery, less blood loss during surgery, and a shorter hospital stay as 92 percent of patients leave the hospital the same day.

Dr. Alfred J. Tria, Jr. of New Jersey and Dr. Thomas Coon of California were the first to perform the *MIS Quad-Sparing* total knee procedure. Berger and Rosenberg have worked closely with Tria and Coon to develop the specialized instruments and the surgical technique required for this procedure. And Berger was the first to perform the procedure on an outpatient basis.

These surgeons are beginning to train other surgeons on this technically demanding procedure through the Zimmer Institute, based in Warsaw, Ind., which includes a satellite training location at Rush University Medical Center.

"These benefits may allow quicker return to work and daily activities," says Berger. "Patients generally have a two- to four-week recovery time with the minimally invasive surgery, versus two to three months of recovery time with traditional knee surgery.

More than 250,000 TKA surgeries were performed in the United States last year. Minimally invasive quadriceps-sparing TKA is an option for most patients who are candidates for standard TKA. Using modified techniques and instruments, surgeons can place the same, clinically proven implants used in standard surgery, but through a much smaller incision and without cutting through the quadriceps tendon and muscles.

Candidates for total knee replacement experience painful arthritis in the joints, including the knee. Over time, the cartilage that cushions the joint deteriorates, causing pain and stiffness when knee bones rub directly against each other. Knee pain originally may be felt when the person is bending or putting pressure on the knee – while walking or going up and down stairs – but eventually may be nearly constant. Pain medications and walking aids may help temporarily, but the only long-term solution is knee replacement.

Factors that may rule MIS TKA out for some patients include variation in knee structure (i.e., being extremely knock-kneed or bow-legged), prior knee surgery on the same knee, obesity, a recent history of deep vein thrombosis (DVT) or other unstable medical conditions.

---

Find a Doctor | Patient & Visitor Services | Health Information
Clinical Services | Events & Classes | Rush News Room | Clinical Trials
Research At Rush | Nursing At Rush | Work At Rush
Disclaimer | Privacy Statement | Site Map

© Rush University Medical Center, Chicago, Illinois

H003539

# EXHIBIT B

# Filed Under Seal

# Restricted Document
# Pursuant to Local Rule 26.2

# EXHIBIT C

The following disclosure of the Company's consultants and payments made to them is made pursuant to paragraph 41 of the Deferred Prosecution Agreement.

| Consultant Name | City | State | 2008 Payments | 2008 In Kind Payments |
|---|---|---|---|---|
| AMERICAN ACADEMY OF ORTHOPAEDIC SURGEONS | CAROL STREAM | IL | 1,800 | |
| BERTIN, KIM C., MD | NORTH SALT LAKE | UT | | |
| | | | | 10,075  (corporate assistance for clinical study) |
| CAMBRIDGE POLYMER GROUP INC | BOSTON | MA | 3,750 | - |
| Stephen Spiegelberg | | | | |
| CLARK, CHARLES R., MD | IOWA CITY | IA | 4,000 | - |
| CROWNINSHIELD, ROY D | ASHEVILLE | NC | - | - |
| | | | | 143  (lodging) |
| DELLA VALLE, CRAIG J, MD | CHICAGO | IL | | |
| | | | | 300  (corporate assistance for clinical study) |
| INTEG7 REVIEW | AUSTIN | TX | 550 | - |
| JORDAN RESEARCH FOUNDATION | VIRGINIA BEACH | VA | | - |
| Kevin Bonner | | | | 5,300  (corporate assistance for clinical study) |
| Louis Jordan | | | | 5,300  (corporate assistance for clinical study) |
| MCATEE, JAMES | MANHATTAN | KS | - | - |
| PIERSON, JEFFERY L, MD | INDIANAPOLIS | IN | 4,396 | - |
| RAND, JAMES A, MD | PARADISE VALLEY | AZ | - | - |
| SCHULMAN ASSOCIATES | CINCINNATI | OH | 1,000 | - |
| Stanley Dysart | | | | |
| TPS IV OF PA LLC | PHILADELPHIA | PA | - | - |
| Norman Johanson | | | | 600  (corporate assistance for clinical study) |
| WINDSOR, RUSSELL E MD | LARCHMONT | NY | 2,000 | - |

| Consultant Name | City | State | 2007 Payments | 2007 In Kind Payments |
|---|---|---|---|---|
| 3B ORTHOPAEDICS | PHILADELPHIA | PA | 319,302 | - |
| Hari Bezwada | | | | 143  (lodging) |
| | | | | 72  (meals) |
| | | | | 59  (ground transportation) |
| Jeff Jasko | | | | 71  (meals) |
| | | | | 59  (ground transportation) |
| | | | | 73  (gifts) |
| Jess Lonner | | | | - |
| David Nazarian | | | | |
| ADA ORTHOPAEDIC CLINIC | BOISE | ID | - | - |
| Richard Moore | | | | |
| Daniel Prohaska | | | | |
| ADVANCED TECHNOLOGIES IN ORTHOPEDICS | HOUSTON | TX | 112,500 | - |
| Philip Noble | | | | |
| Kenneth Mathis | | | | |
| AHS CORPORATION | MORRISTOWN | NJ | 1,500 | - |
| ALBERT EINSTEIN MEDICAL CENTER | PHILADELPHIA | PA | 56,668 | - |
| John A. Handel | | | | |
| ALLEGHENY SINGER RESEARCH INSTITUTE | PITTSBURGH | PA | 76,287 | - |
| Garth Ehrlich | | | | |
| ALTOONA REGIONAL HEALTH SYSTEM | ALTOONA | PA | 1,600 | - |
| William Tyndell | | | | |
| ALUMNI ASSOCIATION SCHOOL OF MEDICINE LOMA LINDA UNIVERSITY | LOMA LINDA | CA | 7,706 | - |
| Ian Clarke | | | | |
| Tom Donaldson | | | | |
| Francisco Leyva | | | | |
| ALVARADO ORTHOPAEDIC RESEARCH | LA MESA | CA | 145,880 | - |
| Thomas Peterson | | | | |
| AMD3 CONSULTING INC | PITTSBURGH | PA | 408,750 | - |
| Anthony DiGoia | | | | |
| AMERICAN ACADEMY OF ORTHOPAEDIC SURGEONS | CAROL STREAM | IL | 758,750 | - |
| AMERICAN ASSOCIATION OF HIP & KNEE SURGEONS | ROSEMONT | IL | - | - |
| AMERICAN ORTHOPAEDIC ASSOCIATION | ROSEMONT | IL | 200,000 | - |
| AMERICAN OSTEOPATHIC ACADEMY OF ORTHOPEDICS | DAVIE | FL | 47,200 | - |
| Morton Morris | | | | |
| AMERICAN SOCIETY FOR ORTHOPAEDIC PHYSICIANS ASSISTANTS | INDIANAPOLIS | IN | 2,500 | - |
| ANDERSON, MICHAEL, MD | MEQUON | WI | 10,425 | - |
| ANDERSSON, GUNNAR, MD | CHICAGO | IL | 62,433 | - |
| | | | | 488  (meals) |
| ANDRIACCHI, THOMAS | LOS ALTOS HILLS | CA | 2,086,179 | - |
| | | | | 193  (lodging) |
| | | | | 20  (meals) |
| ARCHIBECK, MICHAEL J | ALBUQUERQUE | NM | 14,500 | - |
| | | | | 2,582  (commercial airline flight) |
| | | | | 1,172  (lodging) |
| | | | | 588  (meals) |
| | | | | 165  (ground transportation) |
| | | | | 450  (corporate assistance for clinical study) |
| | | | | 5  (gifts) |
| ARTHRITIS SURGERY RESEARCH FOUNDATION | MIAMI | FL | 700 | - |
| Carlos Lavernia | | | | |
| ARTHROPLASTY PRODUCT CONSULTANTS INC | NORTHFIELD | IL | 9,750 | - |
| Steven Stern | | | | 136  (ground transportation) |
| ATLANTA RESEARCH & EDUCATION FOUNDATION | DECATUR | GA | 4,480 | - |
| Sameh Labib | | | | |
| AYERS, DAVID C. | FAYETTVILLE | NY | - | - |
| | | | | 6  (meals) |
| | | | | 4,500  (corporate assistance for clinical study) |

| Consultant Name | City | State | 2007 Payments | 2007 In Kind Payments |
|---|---|---|---|---|
| BABIKIAN, GEORGE M | FALMOUTH | ME | 10,000 | |
| | | | | 3,313 (commercial airline flight) |
| | | | | 229 (private airline flight) |
| | | | | 143 (lodging) |
| | | | | 330 (meals) |
| BAL, SONNY B. | COLUMBIA | MO | 113,750 | |
| | | | | 93 (private airline flight) |
| | | | | 500 (lodging) |
| | | | | 204 (meals) |
| BALDWIN BONE & JOINT PC | DAPHNE | AL | 1,728 | |
| John Todd | | | | 55 (meals) |
| | | | | 35 (ground transportation) |
| | | | | 6 (gifts) |
| BARR, ROLAND, MD | HERRIN | IL | 3,200 | |
| BARTOLOZZI, ARTHUR B. | PHILADELPHIA | PA | - | |
| BAUER, GREGORY | GOLDSBORO | NC | 4,000 | |
| | | | | 576 (commercial airline flight) |
| | | | | 194 (lodging) |
| | | | | 65 (meals) |
| | | | | 69 (ground transportation) |
| BEAR, JAN VAN TWISK, MD | SANTA FE | NM | 5,250 | |
| | | | | 8 (meals) |
| BEAUCHAMP, CHRISTOPHER PAUL | SCOTTSDALE | AZ | 10,000 | |
| | | | | 846 (commercial airline flight) |
| | | | | 190 (lodging) |
| | | | | 69 (meals) |
| BEAVER, WALTER BURNS JR, MD | CHARLOTTE | NC | 40,250 | |
| | | | | 3,335 (commercial airline flight) |
| | | | | 429 (lodging) |
| | | | | 182 (meals) |
| | | | | 305 (ground transportation) |
| | | | | 9,000 (corporate assistance for clinical study) |
| BECKER, CARL E, II, MD | LITITZ | PA | 3,500 | |
| BENTWOOD PLACE, INC. | SIOUX FALLS | SD | - | - |
| Gail Benson | | | | |
| BERGER, RICHARD A MD | CHICAGO | IL | 2,211,088 | |
| | | | | 12,079 (commercial airline flight) |
| | | | | 1,503 (lodging) |
| | | | | 1,839 (meals) |
| | | | | 18 (gifts) |
| BERKOWITZ, RICHARD D, MD | PARKLAND | FL | 17,750 | |
| | | | | 1,002 (commercial airline flight) |
| | | | | 231 (lodging) |
| | | | | 152 (meals) |
| | | | | 36 (product training expenses) |
| BERTIN FAMILY FOUNDATION | BOUNTIFUL | UT | 150 | |
| Kim Bertin | | | | |
| BERTIN, KIM C., MD | NORTH SALT LAKE | UT | 1,963,192 | |
| | | | | 5,971 (commercial airline flight) |
| | | | | 98 (private airline flight) |
| | | | | 413 (lodging) |
| | | | | 466 (meals) |
| | | | | 72 (ground transportation) |
| | | | | 6,000 (corporate assistance for clinical study) |
| | | | | 5 (gifts) |
| | | | | 15 (product training expenses) |
| BEZWADA, HARI P, MD | MOORESTOWN | NJ | 5,000 | |
| BICKNELL, HAROLD RYAN, JR, MD | SHREVEPORT | LA | 750 | |
| BLASSER, KURT E. | PONTE VEDRA BEACH | FL | - | |
| BLOEBAUM ROY D PHD | SALT LAKE CITY | UT | 15,700 | |
| | | | | 22 (meals) |
| BLOUNT ORTHOPAEDIC CLINIC | MILWAUKEE | WI | - | |
| Michael Anderson | | | | |
| BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY | STANFORD | CA | 300,000 | |
| Stuart Goodman | | | | |
| BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS | CHICAGO | IL | 2,847 | |
| Farid Amirouche | | | | 89 (private airline flight) |
| | | | | 40 (meals) |
| BOLANOS, ALBERTO | SAN MATEO | CA | - | |
| | | | | 149 (ground transportation) |
| | | | | 9,000 (corporate assistance for clinical study) |
| BOLOGNESI, MICHAEL MD | DURHAM | NC | 9,500 | |
| | | | | 4,864 (commercial airline flight) |
| | | | | 1,017 (lodging) |
| | | | | 772 (meals) |
| | | | | 140 (ground transportation) |
| | | | | 4 (gifts) |
| BON SECOURS RICHMOND HEALTHCARE FOUNDATION | RICHMOND | VA | 36,000 | |
| BONNER, KEVIN FRANCIS | VIRGINIA BEACH | VA | 41,250 | |
| | | | | 2,779 (commercial airline flight) |
| | | | | 303 (lodging) |
| | | | | 220 (meals) |
| | | | | 755 (ground transportation) |
| BOONE ORTHOPAEDIC ASSOCIATES, PA | BOONE | NC | 300 | |
| John Newell | | | | |
| Ted Weller | | | | |
| BOOTH, ROBERT E JR MD | PHILADELPHIA | PA | 1,875,000 | |
| | | | | 34,938 (commercial airline flight) |
| | | | | 791 (private airline flight) |
| | | | | 3,135 (lodging) |
| | | | | 1,214 (meals) |

| Consultant Name | City | State | 2007 Payments | 2007 In Kind Payments | |
|---|---|---|---|---|---|
| | | | | 1,040 | (ground transportation) |
| | | | | 6 | (gifts) |
| BOS, GARY D. MD | MOXEE | WA | 2,500 | | |
| | | | | 143 | (lodging) |
| | | | | 105 | (meals) |
| | | | | 32 | (ground transportation) |
| BOWLING, JACK W. JR. M.D. | ROCKY POINT | NC | 32,000 | | |
| | | | | 4,286 | (commercial airline flight) |
| | | | | 3,814 | (lodging) |
| | | | | 686 | (meals) |
| | | | | 54 | (ground transportation) |
| | | | | 250 | (gifts) |
| BOYD, JOEL L, MD | BLOOMINGTON | MN | 13,750 | | |
| | | | | 1,349 | (commercial airline flight) |
| | | | | 88 | (lodging) |
| | | | | 16 | (ground transportation) |
| BOZIC, KEVIN J, MD MBA | SAN RAFAEL | CA | 2,750 | | |
| | | | | 17 | (meals) |
| BRADFORD, MICHAEL S, MD, LTD | LAS VEGAS | NV | 25,110 | | |
| | | | | 28 | (meals) |
| BRAMLETT, KENNETH W, MD | BIRMINGHAM | AL | 35,250 | | |
| | | | | 148 | (private airline flight) |
| | | | | 426 | (lodging) |
| | | | | 225 | (meals) |
| | | | | 600 | (corporate assistance for clinical study) |
| | | | | 8 | (gifts) |
| BRASLOW, JONATHON S. MD | INDIO | CA | 106,692 | | |
| | | | | 660 | (commercial airline flight) |
| | | | | 246 | (lodging) |
| | | | | 269 | (meals) |
| | | | | 35 | (ground transportation) |
| | | | | 6 | (gifts) |
| BRIEN, EARL W, MD | PACIFIC PALISADES | CA | 10,500 | | |
| | | | | 1,136 | (commercial airline flight) |
| | | | | 189 | (lodging) |
| | | | | 222 | (meals) |
| | | | | 148 | (ground transportation) |
| BRYAN, THOMAS MD | WEST COVINA | CA | 37,000 | | |
| | | | | 2,374 | (commercial airline flight) |
| | | | | 629 | (lodging) |
| | | | | 323 | (meals) |
| | | | | 103 | (ground transportation) |
| | | | | 6 | (gifts) |
| BRYANT, GINGER | HUNTSVILLE | AL | 2,750 | | |
| BUBB, STEPHEN K. MD | ST. THOMAS | VI | 8,425 | | |
| | | | | 23 | (meals) |
| BUECHEL-PAPPAS TRUST | ENDOTEC | NJ | 256,751 | | |
| BUGBEE MD, WILLIAM | SAN DIEGO | CA | 27,250 | | |
| | | | | 261 | (commercial airline flight) |
| | | | | 423 | (lodging) |
| | | | | 541 | (meals) |
| | | | | 190 | (ground transportation) |
| | | | | 6 | (gifts) |
| BURKE, DENNIS W  MD | MILTON | MA | 15,797 | | |
| BUTLER, JAY, MD | BEND | OR | 93,750 | | |
| CABANELA, MIGUEL E | ROCHESTER | MN | | | |
| | | | | 466 | (commercial airline flight) |
| | | | | 739 | (lodging) |
| | | | | 107 | (meals) |
| | | | | 27 | (ground transportation) |
| CABORN, DAVID N M, M.D. | GOSHEN | KY | 8,625 | | |
| | | | | 1,065 | (commercial airline flight) |
| | | | | 469 | (meals) |
| CAMARATA, DAVID, MD | SCOTTSDALE | AZ | 3,750 | | |
| CAMBRIDGE POLYMER GROUP INC | BOSTON | MA | 1,511,616 | | |
| Stephen Spiegelberg | | | | 73 | (meals) |
| CAPITAL ORTHOPAEDICS | FLOWOOD | MS | | | |
| Jeff Kennedy | | | | 143 | (lodging) |
| | | | | 72 | (meals) |
| | | | | 65 | (ground transportation) |
| Bradford Martin | | | | 72 | (meals) |
| | | | | 65 | (ground transportation) |
| | | | | 74 | (gifts) |
| CARANGELO, ROBERT J | WEST HARTFORD | CT | 6,000 | | |
| | | | | 1,252 | (commercial airline flight) |
| | | | | 46 | (private airline flight) |
| | | | | 276 | (lodging) |
| | | | | 112 | (meals) |
| | | | | 27 | (gifts) |
| CASTRO, JOSE SUAREZ MD | GUAYNABO | PR | 39,000 | | |
| | | | | 122 | (meals) |
| CATES, HAROLD E | KNOXVILLE | TN | 50,875 | | |
| | | | | 2,131 | (commercial airline flight) |
| | | | | 131 | (private airline flight) |
| | | | | 628 | (lodging) |
| | | | | 400 | (meals) |
| | | | | 320 | (ground transportation) |
| CECCARELLI, BRIAN J., DO | XENIA | OH | 10,000 | | |
| | | | | 70 | (meals) |
| | | | | 207 | (ground transportation) |
| CELEBRATION HEALTH RESEARCH INSTITUTE | CELEBRATION | FL | 4,200 | | |
| David Dore | | | | | |

H003567

| Consultant Name | City | State | 2007 Payments | 2007 In Kind Payments | |
|---|---|---|---|---|---|
| CELEBRATION ORTHOPAEDIC & SPORTS MEDICINE INSTITUTE | CELEBRATION | FL | 11,332 | | |
| David Dore | | | | 1,061 | (commercial airline flight) |
| | | | | 155 | (meals) |
| | | | | 133 | (ground transportation) |
| CHAN, KWAN-HO MD | LUBBOCK | TX | 122,792 | - | |
| CHANG, HUAN J | CHICAGO | IL | - | 600 | (ground transportation) |
| CHARLOTTE ORTHOPAEDIC RESEARCH INSTITUTE | CHARLOTTE | NC | 3,600 | - | |
| Thomas McCoy | | | | | |
| Walter Beaver | | | | | |
| P. Pressly Gilbert | | | | | |
| CHASSIN, ERIC P, MD | BURR RIDGE | IL | 15,000 | | |
| | | | | 4,492 | (commercial airline flight) |
| | | | | 1,012 | (lodging) |
| | | | | 205 | (meals) |
| | | | | 98 | (gifts) |
| CHENGER MD, JOSEPH | NASHVILLE | TN | 6,250 | | |
| | | | | 319 | (commercial airline flight) |
| | | | | 188 | (meals) |
| | | | | 76 | (ground transportation) |
| CHIANG, PETER P | LAFAYETTE | CO | 8,656 | | |
| CHMELL, MICHAEL JON MD | ROCKFORD | IL | 39,400 | | |
| | | | | 1,687 | (commercial airline flight) |
| | | | | 470 | (lodging) |
| | | | | 338 | (meals) |
| | | | | 342 | (ground transportation) |
| CLARK, CHARLES R, MD | IOWA CITY | IA | 15,899 | | |
| | | | | 1,789 | (commercial airline flight) |
| | | | | 116 | (meals) |
| | | | | 90 | (ground transportation) |
| CLEVELAND CENTER FOR JOINT RECONSTRUCTION | CLEVELAND | OH | 350 | - | |
| Bernard Stulberg | | | | | |
| CLOHISY, JOHN C, MD | ST LOUIS | MO | 1,000 | | |
| | | | | 227 | (commercial airline flight) |
| COEN, JOHN MD PC | CORVALLIS | OR | 2,300 | | |
| COHEN, RICHARD W, MD | ATLANTA | GA | 65,230 | | |
| | | | | 683 | (commercial airline flight) |
| | | | | 1,385 | (lodging) |
| | | | | 848 | (meals) |
| | | | | 149 | (ground transportation) |
| | | | | 4,500 | (corporate assistance for clinical study) |
| | | | | 8 | (gifts) |
| COHEN, RUSSELL G, MD | TUCSON | AZ | 65,375 | | |
| | | | | 223 | (commercial airline flight) |
| | | | | 1,036 | (lodging) |
| | | | | 897 | (meals) |
| | | | | 260 | (ground transportation) |
| | | | | 6 | (gifts) |
| COLE, BRIAN J, MD | CHICAGO | IL | 22,990 | | |
| | | | | 473 | (lodging) |
| | | | | 979 | (meals) |
| | | | | 124 | (ground transportation) |
| | | | | 7 | (gifts) |
| COLEMAN, BRIAN E | MERRILLVILLE | IN | 16,500 | | |
| | | | | 146 | (lodging) |
| | | | | 137 | (meals) |
| COLLIS, DENNIS MD | EUGENE | OR | 88,155 | - | |
| COLORADO JOINT REPLACEMENT | DENVER | CO | - | | |
| Todd Miner | | | | 143 | (lodging) |
| | | | | 72 | (meals) |
| | | | | 64 | (ground transportation) |
| | | | | 28 | (gifts) |
| Rhonda Wellborn | | | | 1,761 | (commercial airline flight) |
| | | | | 218 | (lodging) |
| | | | | 257 | (meals) |
| | | | | 10 | (ground transportation) |
| | | | | 74 | (gifts) |
| CONRAD, ERNEST | SEATTLE | WA | - | | |
| | | | | 190 | (lodging) |
| | | | | 69 | (meals) |
| COOK, JENNIFER L, MD PA | NEW PORT RICHEY | FL | 10,500 | | |
| | | | | 2,665 | (commercial airline flight) |
| | | | | 137 | (lodging) |
| | | | | 194 | (meals) |
| | | | | 110 | (ground transportation) |
| COOK, THOMAS M | DAYTON | OH | 16,000 | | |
| | | | | 3,107 | (commercial airline flight) |
| | | | | 926 | (lodging) |
| | | | | 393 | (meals) |
| | | | | 201 | (ground transportation) |
| COOK, WILLIAM P, IV, MD | JOPPA | MD | 3,500 | | |
| | | | | 2,134 | (commercial airline flight) |
| COON, THOMAS M, MD | REDDING | CA | 156,420 | | |
| | | | | 1,944 | (commercial airline flight) |
| | | | | 2,498 | (lodging) |
| | | | | 1,034 | (meals) |
| | | | | 440 | (ground transportation) |
| | | | | 10 | (gifts) |
| CORBETT, CORNELIA FA | RICHMOND | VA | 750 | | |
| | | | | 105 | (meals) |
| COREN, SETH D, MD | VERO BEACH | FL | 1,400 | - | |
| COUTTS, RICHARD D, MD | SAN DIEGO | CA | 112,500 | | |

H003568

| Consultant Name | City | State | 2007 Payments | 2007 In Kind Payments |
|---|---|---|---|---|
| CRANE, HAL S. | DENVER | CO | - | 23 *(meals)* |
| CRICKARD, GEORGE, MD | QUINCY | IL | 7,890 | 197 *(private airline flight)*<br>235 *(meals)*<br>13 *(gifts)* |
| CROWNINSHIELD INC.<br>Roy Crowninshield | ASHEVILLE | NC | 565,087 | - |
| CROWNINSHIELD, ROY D | ASHEVILLE | NC | | 30,635 *(commercial airline flight)*<br>1,192 *(lodging)*<br>361 *(meals)*<br>660 *(ground transportation)*<br>264 *(product training expenses)*<br>300 *(corporate assistance for clinical study)* |
| CURATORS OF THE UNIVERSITY OF MISSOURI | KANSAS CITY | MO | 37,208 | |
| CURRENT CONCEPTS FOUNDATION | CLEVELAND | OH | 3,000 | |
| CURRENT CONCEPTS INSTITUTE | CLEVELAND | OH | 92,200 | |
| CUSHNER, FRED D, MD | NEW YORK | NY | 97,875 | 27,413 *(commercial airline flight)*<br>1,537 *(lodging)*<br>586 *(meals)*<br>880 *(ground transportation)*<br>177 *(product training expenses)*<br>6 *(gifts)* |
| DAVIDSON, JOHN T MD | VERO BEACH | FL | 4,500 | |
| DEARBORN, JOHN T | WOODSIDE | CA | 71,000 | 995 *(commercial airline flight)*<br>1,136 *(lodging)*<br>680 *(meals)*<br>6 *(gifts)* |
| DECLAIRE, JEFFREY H MD PC | ROCHESTER HILLS | MI | 500 | |
| DEIRMENGIAN, CARL | MEDIA | PA | 94,200 | |
| DELLA VALLE, CRAIG J, MD | CHICAGO | IL | 46,625 | 489 *(commercial airline flight)*<br>569 *(lodging)*<br>1,644 *(meals)*<br>134 *(ground transportation)*<br>1,200 *(corporate assistance for clinical study)*<br>11 *(gifts)* |
| DES MOINES ORTHOPEDIC SURGEONS<br>Davide Vittetoe | DES MOINES | IA | 4,000 | |
| DESERT ORTHOPEDIC CENTER MEDICAL RESEARCH FOUNDATION,<br>Robert Murphy<br>Adrian Graff-Radford<br>Ronald Lamb<br>Raj Sinha | RANCHO MIRAGE | CA | 21,500 | 310 *(meals)*<br>6 *(gifts)* |
| DEW, DOUGLAS K, MD | PALATKA | FL | 9,500 | 3,363 *(commercial airline flight)*<br>93 *(private airline flight)*<br>568 *(lodging)*<br>286 *(meals)*<br>30 *(gifts)* |
| DIAZ EFFORT LLC<br>Robert Diaz | PALM BEACH GARDENS | FL | 126,796 | 9,591 *(commercial airline flight)*<br>194 *(lodging)*<br>126 *(meals)*<br>732 *(ground transportation)* |
| DICARLO, EDWARD F. | NEW YORK | NY | | |
| DICKINSON MEDICAL GROUP, LLC<br>Thomas Volatile | MILFORD | DE | 2,800 | |
| DIETRICK, TODD | PASADENA | CA | | 76 *(meals)*<br>51 *(ground transportation)*<br>6 *(gifts)* |
| DIGIOIA, ANTHONY M, DR. | PITTSBURGH | PA | 18,000 | |
| DIMAIO, FRANK R MD | GLEN HEAD | NY | | 1,141 *(commercial airline flight)*<br>167 *(private airline flight)*<br>419 *(meals)*<br>201 *(ground transportation)*<br>9,600 *(corporate assistance for clinical study)* |
| DIRAIMONDO, CARL A | MANITOWOC | WI | 72 | 24 *(meals)* |
| DISCOVERY INSTITUTE OF MEDICAL EDUCATION | CHICAGO | IL | 2,050 | |
| DOOLITTLE, KENNETH H, II MD | MOUNT VERNON | OH | 2,050 | |
| DORR INSTITUTE FOR ARTHRITIS RESEARCH & EDUCATION<br>A. Maheswari<br>A. Malik<br>Andrew Yun<br>C Burak<br>D. Thomas<br>L. Chao<br>L. Fujimato<br>Lawrence Dorr<br>Leigh Sirianni<br>M. Boutary<br>P. Paul<br>R. Jones | INGLEWOOD | CA | 401,218 | |

H003569

| Consultant Name | City | State | 2007 Payments | 2007 In Kind Payments |
|---|---|---|---|---|
| R. Manish | | | | |
| S. Ward | | | | |
| University of Texas Southwestern Medical Center | | | | |
| William T. Long | | | | |
| Y. Yugi | | | | |
| Z. Wan | | | | |
| DORR, LAWRENCE D. M.D. | INGLEWOOD | CA | 1,466,661 | |
| | | | | 21,840 (commercial airline flight) |
| | | | | 306 (private airline flight) |
| | | | | 2,728 (lodging) |
| | | | | 820 (meals) |
| | | | | 799 (ground transportation) |
| | | | | 18 (gifts) |
| | | | | 9,704 (product donation) |
| DOYLESTOWN HOSPITAL | DOYLESTOWN | PA | 1,500 | |
| Charles Burrows | | | | |
| D'SILVA, JOE DR. | CHICAGO | IL | 3,000 | |
| | | | | 110 (commercial airline flight) |
| | | | | 110 (ground transportation) |
| DUFFETT, RAYMOND S. MD | YOUNGSTOWN | OH | 300 | |
| | | | | 6 (gifts) |
| DUKE UNIVERSITY | DURHAM | NC | 40,652 | |
| Diane Covington | | | | 1,503 (commercial airline flight) |
| | | | | 218 (lodging) |
| | | | | 115 (meals) |
| | | | | 10 (ground transportation) |
| Michael Bolognesi | | | | 67 (meals) |
| | | | | 81 (ground transportation) |
| David Attarian | | | | 1,338 (commercial airline flight) |
| | | | | 109 (meals) |
| | | | | 81 (ground transportation) |
| Apostolos Dimitroulias | | | | 353 (commercial airline flight) |
| | | | | 779 (lodging) |
| | | | | 172 (meals) |
| | | | | 75 (ground transportation) |
| | | | | 128 (gifts) |
| Robert Zura | | | | - |
| Steven Olson | | | | - |
| Jaren Bombach | | | | - |
| DUNN, HAROLD K. MD | SALT LAKE CITY | UT | 1,697,410 | |
| DUWELIUS, PAUL | LAKE OSWEGO | OR | 373,134 | |
| | | | | 588 (commercial airline flight) |
| | | | | 2,345 (lodging) |
| | | | | 1,051 (meals) |
| | | | | 421 (ground transportation) |
| DYSART, STANLEY H MD | MARIETTA | GA | 3,000 | |
| | | | | 212 (meals) |
| | | | | 8 (gifts) |
| EASTERN ORTHOPAEDIC ASSOCIATION | TOWSON | MD | - | |
| EBERT, FRANK R. MD | BALTIMORE | MD | 82,500 | |
| | | | | 1,680 (commercial airline flight) |
| | | | | 424 (lodging) |
| | | | | 200 (meals) |
| | | | | 35 (ground transportation) |
| | | | | 6 (gifts) |
| EINGORN, DAVID MD | NEWTOWN | PA | 23,750 | |
| | | | | 596 (commercial airline flight) |
| | | | | 191 (meals) |
| | | | | 147 (ground transportation) |
| EL PASO ORTHOPAEDIC SURGERY GROUP | EL PASO | TX | 250 | |
| Jose Alicea | | | | 20 (meals) |
| ELMHURST MEMORIAL HOSPITAL | ELMHURST | IL | 1,500 | |
| Michael Chmell | | | | - |
| ELTING, JAMES J MD | ONEONTA | NY | 39,660 | |
| EMORY UNIVERSITY | ATLANTA | GA | 2,450 | |
| James Roberson | | | | - |
| ESSEX IRB | LEBANON | NJ | 900 | |
| Andrew Glassman | | | | - |
| ESTOK II MD, DANIEL M | NEWTON | MA | 209,125 | |
| | | | | 14,436 (commercial airline flight) |
| | | | | 1,557 (lodging) |
| | | | | 295 (meals) |
| | | | | 352 (ground transportation) |
| EVANICH, CHRISTOPHER J | BROOKFIELD | WI | 10,000 | |
| FADA, ROBERT A, MD | DUBLIN | OH | 150,000 | |
| | | | | 27 (meals) |
| FANELLI, GREGORY C. | DANVILLE | PA | - | |
| FARR, JACK II, MD. | INDIANAPOLIS | IN | 19,750 | |
| | | | | 2,227 (commercial airline flight) |
| | | | | 296 (lodging) |
| | | | | 304 (meals) |
| | | | | 109 (ground transportation) |
| FIFER, JOHN S. MD | FORT MYERS | FL | 25,250 | |
| FIGGIE, MARK P. MD | RIVERSIDE | CT | 94,250 | |
| FIRESTONE, THEODORE P. | PARADISE VALLEY | AZ | 4,250 | |
| | | | | 16,445 (commercial airline flight) |
| | | | | 78 (lodging) |
| | | | | 664 (meals) |
| | | | | 52 (ground transportation) |
| | | | | 5,000 (corporate assistance for clinical study) |

| Consultant Name | City | State | 2007 Payments | 2007 In Kind Payments |
|---|---|---|---|---|
| FLOREZ, FRANCIS XAVIER, MD | CINCINNATI | OH | 15,500 | 65 (meals)<br>92 (ground transportation) |
| FLORIDA HOSPITAL MEDICAL CENTER<br>    David Dore<br>    James Bohannon | ORLANDO | FL | 560 | - |
| FLORIDA ORTHOPAEDIC SOCIETY | LUTZ | FL | 10,000 | - |
| FOUNDATION FOR ORTHOPAEDIC RESEARCH & EDUCATION<br>    Nicholas G. Solareros | PITTSBURGH | PA | 184,988 | - |
| FOUNDATION FOR SOUTHWEST ORTHO RESEARCH<br>    David Lionberger | HOUSTON | TX | 201,670 | - |
| FOWLER, HOWARD LESLIE MD | TUSCALOOSA | AL | 16,875 | 531 (commercial airline flight)<br>407 (lodging)<br>260 (meals)<br>145 (ground transportation)<br>8 (gifts) |
| FRAMINGHAM ORTHOPEDIC ASSOC, INC<br>    David Moore<br><br>    Peter Brassard | FRAMINGHAM | MA | 2,650 | 322 (private airline flight)<br>5 (gifts) |
| FREIBERG, ANDREW MD | WESTON | MA | 312,440 | 3,502 (commercial airline flight)<br>493 (lodging)<br>222 (meals)<br>432 (ground transportation)<br>6 (gifts) |
| FRIEDMAN, MARC J, MD | VAN NUYS | CA | 40,500 | 1,058 (commercial airline flight)<br>218 (lodging)<br>87 (meals)<br>237 (ground transportation) |
| FRITZ, WILLIAM D. | FRANKLIN | PA | 2,400 | - |
| GALANTE, JORGE, MD | CLINTON | WI | 1,951,810 | 1,177 (commercial airline flight) |
| GANJIANPOUR, RAMIN MD | ENCINO | CA | 78,750 | 108 (meals) |
| GEMMELL, BRENDA | GLEN ALLEN | VA | 4,225 | 105 (meals) |
| GENTCHOS, CHRISTOPHER | ADA | MI | 11,500 | 92 (private airline flight)<br>861 (lodging)<br>777 (meals)<br>8 (gifts) |
| GEORGE WASHINGTON UNIVERSITY, THE<br>    Andrew Unger<br>    Robert J. Neviager<br>    Jill Caplan<br>    Angela Jones<br>    Jose Echenique<br>    Richard Mitchell | WASHINGTON | DC | 73,517 | - |
| GIANNOTTI, BRADLEY F MD | COUDERSPORT | PA | 4,000 | 47 (ground transportation) |
| GIBBS, CHARLES PARKER, JR | GAINESVILLE | FL | 2,000 | 34 (commercial airline flight)<br>190 (lodging)<br>69 (meals)<br>38 (ground transportation) |
| GILBERT, PAUL | PASADENA | CA | - | - |
| GILL, LOWELL H MD | CHARLOTTE | NC | 12,951 | |
| GILL, PARAMJEET S MD | FRESNO | CA | 20,250 | 376 (commercial airline flight)<br>842 (lodging)<br>448 (meals)<br>238 (ground transportation)<br>5 (gifts) |
| GLASSMAN, ANDREW H, MD | BEXLEY | OH | 139,750 | 16,379 (commercial airline flight)<br>208 (private airline flight)<br>268 (lodging)<br>858 (meals)<br>205 (ground transportation) |
| GOBLE, E MARLOWE, MD | N LOGAN | UT | - | 12 (meals)<br>139 (ground transportation) |
| GOLD, GARRY MD | STANFORD | CA | 7,405 | - |
| GOLDBERG, VICTOR MD | GATES MILLS | OH | 1,913,864 | 8,671 (commercial airline flight)<br>143 (lodging)<br>242 (meals)<br>254 (ground transportation)<br>13 (gifts) |
| GOLDMAN, ROBERT MD | SHORT HILLS | NJ | 10,088 | |
| GOLLADAY, GREGORY | GRAND RAPIDS | MI | 10,000 | 1,748 (commercial airline flight)<br>1,014 (lodging)<br>330 (meals)<br>686 (ground transportation) |
| GOODMAN, FLOYD G, MD | LANSING | MI | 279,783 | 200 (product donation) |
| GOODMAN, STUART BARRY, MD | LOS ALTOS | CA | 10,500 | - |
| GOULD, JOHN S | BIRMINGHAM | AL | 4,875 | - |

| Consultant Name | City | State | 2007 Payments | 2007 In Kind Payments | |
|---|---|---|---|---|---|
| GRAFF-RADFORD, ADRIAN MD | RANCHO MIRAGE | CA | 52,000 | | |
| | | | | 2,132 | (commercial airline flight) |
| | | | | 166 | (lodging) |
| | | | | 309 | (meals) |
| | | | | 6 | (gifts) |
| GRANT, RICHARD E, MD | BEACHWOOD | OH | 17,000 | | |
| | | | | 3,841 | (commercial airline flight) |
| | | | | 194 | (lodging) |
| | | | | 686 | (meals) |
| | | | | 73 | (ground transportation) |
| GREATER BALTIMORE MEDICAL CENTER INC | BALTIMORE | MD | 100 | | |
|     Robert Peroutka | | | | | |
| GREENHOW, ROBERT J | DENVER | CO | 7,000 | | |
| | | | | 1,442 | (commercial airline flight) |
| | | | | 295 | (lodging) |
| | | | | 47 | (meals) |
| | | | | 86 | (ground transportation) |
| | | | | 14 | (gifts) |
| GREENKY, BRETT | MANLIUS | NY | | | |
| | | | | 65 | (meals) |
| GREENKY, SETH S, MD | FAYETTEVILLE | NY | 500 | | |
| GRIFFIN, DAVID W, MD | VERO BEACH | FL | 8,500 | | |
| | | | | 940 | (commercial airline flight) |
| | | | | 160 | (lodging) |
| | | | | 230 | (meals) |
| | | | | 210 | (gifts) |
| GUEVARA, JASON E, MD | ABERDEEN | NC | 8,500 | | |
| | | | | 369 | (commercial airline flight) |
| | | | | 194 | (lodging) |
| | | | | 163 | (meals) |
| | | | | 202 | (ground transportation) |
| | | | | 6 | (gifts) |
| GUSTKE, KENNETH M.D. | TAMPA | FL | 582,448 | | |
| | | | | 28,898 | (commercial airline flight) |
| | | | | 419 | (lodging) |
| | | | | 1,193 | (meals) |
| | | | | 326 | (ground transportation) |
| | | | | 406 | (product training expenses) |
| GUTHRIE, CHARLES D | TUCSON | AZ | 18,750 | - | |
| GUTOWSKI, W THOMAS, MD | PRINCETON | NJ | 30,350 | | |
| | | | | 768 | (commercial airline flight) |
| | | | | 65 | (meals) |
| | | | | 128 | (ground transportation) |
| HAIDUKEWYCH, GEORGE J. | TAMPA | FL | 75,000 | | |
| HAKANSON, ROBYN JOAN MD | MOUNT AIRY | NC | 19,500 | | |
| | | | | 3,903 | (commercial airline flight) |
| | | | | 727 | (lodging) |
| | | | | 185 | (meals) |
| | | | | 175 | (ground transportation) |
| HALLEY, DAVID K MD | COLUMBUS | OH | 4,500 | | |
| | | | | 194 | (lodging) |
| | | | | 190 | (meals) |
| | | | | 181 | (ground transportation) |
| HALLOCK, RICHARD, MD | CAMP HILL | PA | 113,500 | | |
| | | | | 138 | (private airline flight) |
| | | | | 80 | (meals) |
| HANNUM, SCOTT QUINCY | WASHINGTON | NC | 11,250 | | |
| | | | | 915 | (commercial airline flight) |
| | | | | 70 | (meals) |
| | | | | 84 | (ground transportation) |
| HANSSEN, ARLEN | ROCHESTER | MN | - | | |
| HARBOR HOSPITAL | BALTIMORE | MD | | | |
| | | | | 1,987 | (product training expenses) |
| HARRINGTON, MELVYN A MD | DOWNERS GROVE | IL | 6,250 | | |
| | | | | 6,428 | (commercial airline flight) |
| | | | | 206 | (lodging) |
| | | | | 861 | (meals) |
| | | | | 138 | (ground transportation) |
| HARRIS METHODIST FORT WORTH HOSPITAL | FORT WORTH | TX | 500 | | |
|     Steve Weeden | | | | | |
| HARRIS, ADAM I., MD, PA. | SAN ANTONIO | TX | 7,326 | | |
| | | | | 1,519 | (commercial airline flight) |
| HARRIS, WILLIAM H MD | BELMONT | MA | - | | |
| | | | | 1,287 | (commercial airline flight) |
| | | | | 296 | (lodging) |
| | | | | 123 | (meals) |
| HARTFORD HOSPITAL | HARTFORD | CT | 16,437 | | |
|     Courtland Lewis | | | | | |
|     Joseph DeAngelis | | | | | |
| HARTZBAND JOINT REPLACEMENT INSTITUTE | PARAMUS | NJ | 20,619 | | |
|     Gregg Klein | | | | 151 | (private airline flight) |
| | | | | 33 | (meals) |
| | | | | 22 | (gifts) |
|     Mark Hartzband | | | | | |
| HARTZBAND, MARK A, MD | FRANKLIN LAKES | NJ | 732,667 | | |
| | | | | 21,838 | (commercial airline flight) |
| | | | | 108 | (private airline flight) |
| | | | | 3,040 | (lodging) |
| | | | | 2,923 | (meals) |
| | | | | 3,316 | (ground transportation) |
| | | | | 24 | (gifts) |
| HARVARD COLLEGE - PRESIDENT&FELLOWS OF | CAMBRIDGE | MA | 36,100 | - | |

H003572

| Consultant Name | City | State | 2007 Payments | 2007 In Kind Payments |
|---|---|---|---|---|
| HARWELL, CARLA | RICHMOND HTS | OH | 4,000 | |
| | | | | 1,491 (commercial airline flight) |
| | | | | 747 (meals) |
| | | | | 50 (ground transportation) |
| HASKINS, DONALD BURKE | BEL AIR | MD | 9,250 | |
| HAWAII ORTHOPAEDIC ASSOCIATION | HONOLULU | HI | 5,000 | |
| HEALTH RESEARCH ASSOCIATION INC | LOS ANGELES | CA | 300 | |
| Kelly Vince | | | | |
| HEFLEY, WILLIAM  F JR MD | LITTLE ROCK | AR | 6,250 | |
| | | | | 138 (private airline flight) |
| HEINER, JOHN P, MD | MADISON | WI | 6,000 | |
| | | | | 489 (lodging) |
| | | | | 119 (meals) |
| | | | | 175 (ground transportation) |
| HENRY M JACKSON FOUNDATION | ROCKVILLE | MD | 5,915 | |
| Keith Holley | | | | |
| HENRY, JAMES E, DO | MANHASSETT | NY | 250 | |
| HICKMAN, JOSHUA | BOUNTIFUL | UT | - | |
| HIGHGENBOTEN, CARL L, MD | DALLAS | TX | 3,500 | |
| HIGHLAND CLINIC, APMC | NASHVILLE | TN | 22,886 | |
| William Overdyke | | | | |
| HOFFMAN, JOHN M, MD | MOLINE | IL | 10,890 | |
| | | | | 11 (meals) |
| HOFMANN,  AARON A. M.D. | SALT LAKE CITY | UT | 4,299,300 | |
| | | | | 8,316 (commercial airline flight) |
| | | | | 114 (lodging) |
| | | | | 93 (meals) |
| | | | | 189 (ground transportation) |
| HOLDEN, MARTHA | YADKINSVILLE | NC | - | |
| | | | | 37 (ground transportation) |
| HOLT, GINGER E | NASHVILLE | TN | 23,250 | |
| | | | | 1,768 (commercial airline flight) |
| | | | | 137 (lodging) |
| | | | | 245 (meals) |
| HOME ORTHOPEDICS AND SPORTS MEDICINE | SAINT LOUIS | MO | - | |
| Clayton Perry | | | | |
| HORENSTEIN, PAUL | BROOMALL | PA | - | |
| HORLOCKER, TERESE | ROCHESTER | MN | 2,598 | |
| | | | | 1,492 (commercial airline flight) |
| HORTON, RINELDA M, M.D. | NORTH BETHESDA | MD | 12,500 | |
| | | | | 7,324 (commercial airline flight) |
| | | | | 308 (meals) |
| | | | | 126 (ground transportation) |
| HOSPITAL FOR JOINT DISEASES ORTHOPAEDIC INSTITUTE | NEW YORK | NY | - | |
| Peter Walker | | | | |
| HOSPITAL FOR SPECIAL SURGERY | NEW YORK | NY | 172,750 | |
| Tim Wright | | | | |
| Thomas Sculco | | | | |
| HOWARD UNIVERSITY HOSPITAL | WASHINGTON | DC | 18,000 | |
| Terry Thompson | | | | 99 (ground transportation) |
| HUNGERFORD, MARC W, MD | COCKEYSVILLE | MD | 75,125 | |
| | | | | 2,395 (commercial airline flight) |
| | | | | 208 (meals) |
| | | | | 152 (ground transportation) |
| HUO, MICHAEL H | EULESS | TX | 30,400 | |
| | | | | 6,513 (commercial airline flight) |
| | | | | 1,736 (lodging) |
| | | | | 398 (meals) |
| | | | | 71 (ground transportation) |
| ILLGEN, RICHARD LYNN, II | MADISON | WI | - | |
| | | | | 174 (commercial airline flight) |
| | | | | 104 (private airline flight) |
| | | | | 2,533 (lodging) |
| | | | | 1,504 (meals) |
| | | | | 849 (ground transportation) |
| | | | | 99 (gifts) |
| ILLINOIS BONE & JOINT FOUNDATION | MORTON GROVE | IL | 33,000 | |
| Wayne Goldstein | | | | |
| INNOVAS LLC | PITTSBURGH | PA | 15,850 | |
| Doug Robertson | | | | 18 (ground transportation) |
| INSALL SCOTT RESEARCH FOUNDATION | NEW YORK | NY | 1,386 | |
| Michael Kelly | | | | |
| Giles Scuderi | | | | |
| INSALL, ESTATE OF JOHN N MD | NEW YORK | NY | 7,026,617 | |
| INSTITUTE FOR MEDICAL RESEARCH | DURHAM | NC | - | |
| Terri Monk | | | | |
| INSTITUTE OF ORTHOPAEDIC RESEARCH & EDUCATION | HOUSTON | TX | 170,407 | |
| Philip Noble | | | | |
| Kenneth Mathis | | | | |
| INTEG' REVIEW | AUSTIN | TX | 950 | |
| Adam Harris | | | | |
| Randall Dryer | | | | |
| INTEGRATED SURGICAL SYSTEMS | SACRAMENTO | CA | - | |
| Ramesh Trivedi | | | | |
| ISAKOS | SAN RAMON | CA | 120,000 | |
| ISRAELITE, CRAIG MD | PLYMOUTH MEETING | PA | 26,750 | |
| | | | | 1,985 (commercial airline flight) |
| | | | | 431 (lodging) |
| | | | | 298 (meals) |
| | | | | 243 (ground transportation) |
| JACOBS, JOSHUA J,  MD | WILMETTE | IL | 16,375 | |
| | | | | 1,072 (commercial airline flight) |

H003573

| Consultant Name | City | State | 2007 Payments | 2007 In Kind Payments |
|---|---|---|---|---|
| | | | | 704 (lodging) |
| | | | | 595 (meals) |
| | | | | 229 (ground transportation) |
| | | | | 11 (gifts) |
| JAFFE, KENNETH | BIRMINGHAM | AL | 7,250 | |
| | | | | 457 (commercial airline flight) |
| | | | | 93 (private airline flight) |
| | | | | 143 (lodging) |
| | | | | 104 (meals) |
| JASTY, MURALI, MD | WESTON | MA | 106,205 | |
| JEWETT, BRIAN A. | EUGENE | OR | - | |
| | | | | 3,828 (product donation) |
| JINNAH, RIYAZ H, MD | TANEYTOWN | MD | 500 | |
| JOHANSEN, R. LANCE, MD | BILOXI | MS | 150,250 | |
| | | | | 3,437 (commercial airline flight) |
| | | | | 146 (private airline flight) |
| | | | | 1,634 (lodging) |
| | | | | 844 (meals) |
| | | | | 115 (ground transportation) |
| | | | | 8 (gifts) |
| JOHNS HOPKINS UNIVERSITY | BALTIMORE | MD | 141,012 | |
|   Frank Frassica | | | | |
|   Marc Hungerford | | | | |
|   Simon Mears | | | | |
|   Stephen Belkoff | | | | |
|   Lynne Jones | | | | |
| JOHNSON, MARK | HOUSTON | TX | | |
| | | | | 190 (lodging) |
| | | | | 69 (meals) |
| JOHNSTON, RICHARD MD | IOWA CITY | IA | 101,897 | |
| JONES, RICHARD E | DALLAS | TX | 50,000 | |
| JORDAN RESEARCH FOUNDATION | VIRGINIA BEACH | VA | 153,969 | |
|   Kevin Bonner | | | | 800 (corporate assistance for clinical study) |
|   Louis Jordan | | | | 31 (meals) |
| | | | | 85 (ground transportation) |
| | | | | 800 (corporate assistance for clinical study) |
| JORDAN YOUNG INSTITUTE | VIRGINIA BEACH | VA | 228 | |
|   Louis Jordan | | | | |
| JORDAN, LOUIS C. | VIRGINIA BEACH | VA | 18,000 | |
| JRSI FOUNDATION, INC | INDIANAPOLIS | IN | 400 | |
|   Philip Faris | | | | |
|   Jeffrey Pierson | | | | |
| JUSTIN, DANIEL F | LOGAN | UT | 9 | |
| | | | | 273 (commercial airline flight) |
| KAGAN, ABBOTT II, MD PA | FORT MYERS | FL | 145 | |
| | | | | 76 (meals) |
| KAISER FOUNDATION HOSPITAL | HONOLULU | HI | 10,000 | |
| KANSAS JOINT & SPINE INSTITUTE | WICHITA | KS | 600 | |
|   David McQueen | | | | |
| KARAYAN, SOOREN | GLENDALE | CA | 31,000 | |
| KARPMAN, ROBERT R, MD PC | PHOENIX | AZ | 6,800 | |
| | | | | 1,257 (commercial airline flight) |
| | | | | 59 (ground transportation) |
| KASTENBAUM, DONALD MARK MD | NEW YORK | NY | 175,000 | |
| | | | | 1,592 (commercial airline flight) |
| | | | | 63 (meals) |
| KATZ, JAY A, MD | TUCSON | AZ | 11,750 | |
| | | | | 1,747 (commercial airline flight) |
| | | | | 134 (private airline flight) |
| | | | | 1,157 (lodging) |
| | | | | 668 (meals) |
| | | | | 116 (ground transportation) |
| KELLY, MICHAEL A. MD | FRANKLIN LAKES | NJ | 1,042,238 | |
| | | | | 16,046 (commercial airline flight) |
| | | | | 186 (private airline flight) |
| | | | | 440 (lodging) |
| | | | | 490 (meals) |
| | | | | 741 (ground transportation) |
| KENNEDY, EDWIN JEFF | FLOWOOD | MS | 250 | |
| | | | | 212 (meals) |
| | | | | 8 (gifts) |
| KENNEDY, WILLIAM R, MD | SARASOTA | FL | 253,058 | |
| KERINA, JEFFREY MANDOME | MOUNT DORA | FL | 250 | |
| | | | | 210 (commercial airline flight) |
| | | | | 461 (lodging) |
| | | | | 327 (meals) |
| KHANUJA, HARPAL S | COCKEYSVILLE | MD | 39,125 | |
| | | | | 386 (commercial airline flight) |
| | | | | 501 (lodging) |
| | | | | 160 (meals) |
| | | | | 45 (ground transportation) |
| KKNC LLC | LOUISVILLE | KY | 9,000 | |
|   Akbar Nawab | | | | |
| KLAPPER, ROBERT C. MD | LOS ANGELES | CA | 17,500 | |
| | | | | 173 (commercial airline flight) |
| KLEIN, KENNETH S MD | BRICK | NJ | 15,000 | |
| KNAUER, SALLY A, MD PC | FORT COLLINS | CO | 2,950 | |
| | | | | 185 (meals) |
| | | | | 11 (gifts) |
| KOLB, EDWARD | BLOOMINGTON | IL | 2,300 | |
| | | | | 116 (meals) |
| | | | | 92 (ground transportation) |

| Consultant Name | City | State | 2007 Payments | 2007 In Kind Payments | |
|---|---|---|---|---|---|
| KOMISTEK, RICHARD D, PHD | KNOXVILLE | TN | 451,625 | 5 | (gifts) |
| | | | | 5,561 | (commercial airline flight) |
| | | | | 128 | (private airline flight) |
| | | | | 1,701 | (lodging) |
| | | | | -1,329 | (meals) |
| | | | | 2,048 | (ground transportation) |
| KRAAY, MATTHEW J, MD | LAKEWOOD | OH | 1,250 | 8 | (gifts) |
| KRESS MD, KENNETH J | ALPHARETTA | GA | 7,250 | | |
| | | | | 1,095 | (commercial airline flight) |
| | | | | 241 | (lodging) |
| | | | | 335 | (meals) |
| | | | | 45 | (ground transportation) |
| | | | | 258 | (gifts) |
| KUESIS, DANIEL THOMAS | BARRINGTON | IL | 11,750 | - | |
| KUESTER, DAVID J, MD | MANITOWOC | WI | 72 | - | |
| KUNKEL, SANFORD | CARMEL | IN | - | 24 | (meals) |
| KWONG, LOUIS M MD | BEVERLY HILLS | CA | 41,125 | | |
| | | | | 510 | (lodging) |
| | | | | 347 | (meals) |
| | | | | 433 | (ground transportation) |
| | | | | 103 | (product training expenses) |
| KYLE, RICHARD | LONG LAKE | MN | 715,163 | 4 | (gifts) |
| | | | | 10,926 | (commercial airline flight) |
| | | | | 55 | (meals) |
| LACHIEWICZ, PAUL, MD | CHAPEL HILL | NC | 14,000 | | |
| | | | | 1,175 | (commercial airline flight) |
| | | | | 71 | (meals) |
| | | | | 103 | (ground transportation) |
| LAMMENS, PETER NELSON | GOLDEN | CO | 7,000 | | |
| | | | | 1,629 | (commercial airline flight) |
| | | | | 195 | (lodging) |
| | | | | 339 | (ground transportation) |
| | | | | 35 | (meals) |
| LANCASTER, JAMES MACK MD | DALLAS | TX | 15,000 | | |
| | | | | 2,891 | (commercial airline flight) |
| | | | | 241 | (lodging) |
| | | | | 208 | (meals) |
| LANDON, GLENN, MD PA | FRIENDSWOOD | TX | 750 | | |
| | | | | 682 | (commercial airline flight) |
| | | | | 200 | (private airline flight) |
| | | | | 15 | (meals) |
| LANE, JOSEPH M. | NEW YORK | NY | - | - | |
| LAREDO MEDICAL CENTER | LAREDO | TX | - | - | |
|   Ramon Soriano | | | | | |
| LAVERNIA, CARLOS J, MD | CORAL GABLES | FL | 568,863 | | |
| LEE MEMORIAL HEALTH SYSTEM | FORT MYERS | FL | 1,500 | - | |
| LENOX HILL HOSPITAL | NEW YORK | NY | - | - | |
|   Alonzo Sexton | | | | | |
| LES, KIMBERLY A | CLARKSTON | MI | 15,500 | | |
| | | | | 629 | (commercial airline flight) |
| | | | | 333 | (lodging) |
| | | | | 69 | (meals) |
| LEVINE, BRETT, MD | PEORIA | IL | 31,425 | | |
| | | | | 21 | (meals) |
| | | | | 36 | (gifts) |
| LEWIS & UNGER PC | WASHINGTON | DC | 25,000 | - | |
|   Anthony Unger | | | | | |
|   Randall Lewis | | | | | |
| LEWIS, RANDALL J MD | BETHESDA | MD | 112,623 | | |
| | | | | 1,996 | (commercial airline flight) |
| | | | | 476 | (lodging) |
| | | | | 313 | (meals) |
| | | | | 453 | (ground transportation) |
| | | | | 5 | (gifts) |
| LIEBER, LAWRENCE | DOWNERS GROVE | IL | - | 4,500 | (corporate assistance for clinical study) |
| LIM, EDWARD VA, MD | CINCINNATI | OH | 14,500 | | |
| | | | | 1,058 | (commercial airline flight) |
| | | | | 199 | (private airline flight) |
| | | | | 218 | (lodging) |
| | | | | 87 | (meals) |
| | | | | 294 | (ground transportation) |
| LIONBERGER, DAVID MD | HOUSTON | TX | 25,000 | | |
| | | | | 875 | (commercial airline flight) |
| | | | | 86 | (meals) |
| | | | | 437 | (ground transportation) |
| LITTLE, BRYAN EDWARD | BLOOMFIELD HILLS | MI | 11,750 | | |
| | | | | 2,629 | (commercial airline flight) |
| | | | | 241 | (lodging) |
| | | | | 85 | (meals) |
| LOEFFLER, ROBERT G | POTOMAC | MD | 19,250 | | |
| | | | | 1,265 | (commercial airline flight) |
| | | | | 65 | (meals) |
| | | | | 69 | (ground transportation) |
| LONG ISLAND JOINT REPLACEMENT SERVICE, PC | GLEN HEAD | NY | 15,250 | | |
|   Frank DiMaio | | | | | |
| LONG, WILLIAM T, MD | LOS ANGELES | CA | 39,875 | | |
| | | | | 2,460 | (commercial airline flight) |

| Consultant Name | City | State | 2007 Payments | 2007 In Kind Payments | |
|---|---|---|---|---|---|
| | | | | 1,035 | (lodging) |
| | | | | 439 | (meals) |
| | | | | 110 | (ground transportation) |
| | | | | 6 | (gifts) |
| LONGENECKER, STANTON JR | JACKSONVILLE | FL | 12,000 | | |
| | | | | 3,339 | (commercial airline flight) |
| | | | | 387 | (lodging) |
| | | | | 553 | (meals) |
| | | | | 106 | (ground transportation) |
| LONGJOHN, DONALD B, MD | TORRANCE | CA | 29,000 | | |
| | | | | 104 | (meals) |
| | | | | 205 | (ground transportation) |
| LONNER, JESS H, MD | WYNNEWOOD | PA | 42,000 | | |
| | | | | 4,495 | (commercial airline flight) |
| | | | | 182 | (private airline flight) |
| | | | | 719 | (lodging) |
| | | | | 544 | (meals) |
| | | | | 245 | (ground transportation) |
| LOS ANGELES BIOMEDICAL RESEARCH INSTITUTE | TORRANCE | CA | | | |
| Louis Kwong | | | | | |
| LOUCKS, DAVID CRAIG | DENVER | CO | 7,000 | | |
| | | | | 1,442 | (commercial airline flight) |
| | | | | 152 | (lodging) |
| | | | | 12 | (meals) |
| | | | | 51 | (ground transportation) |
| | | | | 14 | (gifts) |
| LOWRY, WILLIAM E, MD | ST. PETERSBURG | FL | 50 | - | |
| LURATE, R BARRY, MD | PENSACOLA | FL | 16,625 | | |
| | | | | 1,407 | (commercial airline flight) |
| | | | | 568 | (lodging) |
| | | | | 291 | (meals) |
| | | | | 465 | (ground transportation) |
| | | | | 8 | (gifts) |
| LYONS, STEVEN | TAMPA | FL | 64,350 | | |
| | | | | 4,751 | (commercial airline flight) |
| | | | | 195 | (private airline flight) |
| | | | | 233 | (meals) |
| | | | | 167 | (ground transportation) |
| MACKEL, AUDLEY III, MD | SHAKER HEIGHTS | OH | 23,250 | | |
| | | | | 8,603 | (commercial airline flight) |
| | | | | 556 | (lodging) |
| | | | | 1,109 | (meals) |
| | | | | 134 | (ground transportation) |
| MACKELL CODY BURROWS ORTHOPAEDICS | DOYLESTOWN | PA | 2,000 | - | |
| Charles Burrows | | | | | |
| MAHFOUZ, MOHAMED R, PHD | KNOXVILLE | TN | 337,304 | | |
| | | | | 15,519 | (commercial airline flight) |
| | | | | 128 | (private airline flight) |
| | | | | 2,651 | (lodging) |
| | | | | 1,218 | (meals) |
| | | | | 58 | (ground transportation) |
| | | | | 6 | (gifts) |
| | | | | 7,500 | (corporate assistance for clinical study) |
| MALBERG, MARC I, M.D. | PRINCETON | NJ | 6,500 | | |
| | | | | 241 | (ground transportation) |
| MALONEY, WILLIAM J, MD | CLAYTON | MO | 432,899 | | |
| | | | | 877 | (commercial airline flight) |
| | | | | 791 | (lodging) |
| | | | | 440 | (meals) |
| | | | | 386 | (ground transportation) |
| | | | | 6 | (gifts) |
| MALTRY, JOHN A, MD | TUSCON | AZ | 71,750 | | |
| | | | | 7,077 | (commercial airline flight) |
| | | | | 291 | (private airline flight) |
| | | | | 1,975 | (lodging) |
| | | | | 1,609 | (meals) |
| | | | | 498 | (ground transportation) |
| | | | | 5 | (gifts) |
| MALVITZ, THOMAS A, MD | ADA | MI | 250 | | |
| MANNER, PAUL A., MDCM FRCS | MERCER ISLAND | WA | 40,875 | | |
| | | | | 1,616 | (commercial airline flight) |
| | | | | 892 | (lodging) |
| | | | | 539 | (meals) |
| | | | | 217 | (ground transportation) |
| | | | | 4 | (gifts) |
| MANNING, DAVID W JR | CHICAGO | IL | 45,000 | | |
| | | | | 1,504 | (commercial airline flight) |
| | | | | 234 | (lodging) |
| | | | | 379 | (meals) |
| | | | | 207 | (ground transportation) |
| MARKS, RICHARD | MILWAUKEE | WI | - | | |
| MARTELL, JOHN M. | MATTESON | IL | - | | |
| MARTIN, GARRETT | BANGOR | ME | - | | |
| MARTIN, KENNETH A, MD | MAUMELLE | AR | 50,250 | 9,000 | (corporate assistance for clinical study) |
| MARTIN, SIDNEY | FLINT | MI | - | | |
| MASKILL, JOHN D, MD | SCARBOROUGH | ME | 12,250 | | |
| | | | | 1,754 | (commercial airline flight) |
| | | | | 861 | (lodging) |
| | | | | 800 | (meals) |
| | | | | 46 | (ground transportation) |
| | | | | 8 | (gifts) |

| Consultant Name | City | State | 2007 Payments | 2007 In Kind Payments | |
|---|---|---|---|---|---|
| MASSACHUSETTS GENERAL HOSPITAL CORPORATION | BOSTON | MA | 8,673,997 | 112 | (meals) |
| Henrik Malchau | | | | 2,259 | (commercial airline flight) |
| Harry Rubash | | | | - | |
| Andrew Freiberg | | | | - | |
| Brian Burroughs | | | | - | |
| Daniel P. Hoeffel | | | | - | |
| Erbru Oral | | | | - | |
| Gareth McKinley | | | | - | |
| Gleeson Rebello | | | | - | |
| Guoan Li | | | | - | |
| Hatice Bodugoz-Senturk | | | | - | |
| James E. Thompson | | | | - | |
| Ohun Muratoglu | | | | - | |
| Stephen Speigelberg | | | | - | |
| William Harris | | | | - | |
| MATHIS, KENNETH | HOUSTON | TX | 17,250 | | |
| | | | | 10,788 | (commercial airline flight) |
| | | | | 160 | (lodging) |
| | | | | 200 | (meals) |
| MATTHEWS, LESLIE S MD | LUTHERVILLE | MD | 250 | | |
| MAYO CLINIC | ROCHESTER | MN | 10,000 | - | |
| MAYO CLINIC JACKSONVILLE | JACKSONVILLE | FL | 2,180 | | |
| Mark Broderson | | | | 212 | (meals) |
| | | | | 8 | (gifts) |
| Eric Yue | | | | | |
| Kurt Blasser | | | | | |
| MAYO CLINIC ROCHESTER | ROCHESTER | MN | 167,461 | | |
| David Lewallen | | | | | |
| Ari Itala | | | | | |
| John Reach | | | | | |
| Franklin Sim | | | | | |
| Kai Nan-An | | | | | |
| P. Scully | | | | | |
| Scott Steinmann | | | | | |
| Julie Adams | | | | | |
| MAYO FOUNDATION FOR MEDICAL EDUCATION & RESEARCH | ROCHESTER | MN | 913,530 | - | |
| Bernard Morrey | | | | | |
| Christopher Beauchamp | | | | | |
| David Lewallen | | | | | |
| Kurt Blasser | | | | | |
| Mark Pagnano | | | | | |
| Mary O'Connor | | | | | |
| MAYO, DAVID B. | ROYAL OAK | MI | | 493 | (commercial airline flight) |
| MCATEE, JAMES | MANHATTAN | KS | 59,000 | | |
| | | | | 3,434 | (commercial airline flight) |
| | | | | 149 | (private airline flight) |
| | | | | 969 | (lodging) |
| | | | | 1,527 | (meals) |
| | | | | 551 | (ground transportation) |
| MCCALLUM, JOHN D | GUILFORD | CT | 17,500 | | |
| | | | | 503 | (commercial airline flight) |
| | | | | 65 | (meals) |
| | | | | 186 | (ground transportation) |
| MCCLAIN, EDWARD J, III | WEXFORD | PA | 4,805 | | |
| | | | | 133 | (meals) |
| | | | | 52 | (ground transportation) |
| MCCOY, BLANE, MD | CLEVELAND | OH | 700 | | |
| MCCOY, THOMAS H, MD | CHARLOTTE | NC | 132,750 | | |
| | | | | 1,377 | (commercial airline flight) |
| | | | | 2,842 | (lodging) |
| | | | | 494 | (meals) |
| | | | | 37 | (ground transportation) |
| | | | | 317 | (corporate assistance for clinical study) |
| MCCROSSON, JOHN J | MT PLEASANT | SC | 9,750 | | |
| MCGLYNN, FRED J., MD | RICHMOND | VA | 13,000 | | |
| | | | | 1,623 | (commercial airline flight) |
| | | | | 129 | (meals) |
| | | | | 13 | (ground transportation) |
| MCLAREN REGIONAL MEDICAL CENTER | FLINT | MI | 1,800 | 98 | (private airline flight) |
| Norman Walter | | | | | |
| MCSHANE, MICHAEL A, MD | COLUMBUS | OH | 22,950 | | |
| | | | | 143 | (lodging) |
| | | | | 190 | (meals) |
| MEARS, DANA C MD | PITTSBURGH | PA | 114,066 | | |
| | | | | 1,243 | (commercial airline flight) |
| | | | | 143 | (lodging) |
| | | | | 28 | (meals) |
| MEDICAL DEVICE TESTING & INNOVATIONS | SARASOTA | FL | - | | |
| Stephen Li | | | | | |
| MEDICINE LODGE, INC | LOGAN | UT | 491,327 | | |
| Marlowe Goble | | | | | |
| Daniel Justin | | | | | |
| MEISLES, JEFFREY S, MD | NORTHFIELD | IL | 33,650 | | |
| | | | | 4,752 | (commercial airline flight) |
| | | | | 97 | (private airline flight) |
| | | | | 854 | (lodging) |
| | | | | 670 | (meals) |
| | | | | 669 | (ground transportation) |
| MELDRUM, RUSSELL D M.D. | ZIONSVILLE | IN | 17,500 | | |
| | | | | 1,164 | (commercial airline flight) |
| | | | | 1,014 | (lodging) |

H003577

| Consultant Name | City | State | 2007 Payments | 2007 In Kind Payments |
|---|---|---|---|---|
| MEMORIAL ORTHOPAEDIC SURGICAL GROUP, AMC | LONG BEACH | CA | - | 122 (meals) |
| David Morrison | | | | |
| MENEGHINI, ROBERT MICHAEL | INDIANAPOLIS | IN | 10,500 | |
| | | | | 250 (gifts) |
| MESGHALI, HOMAYOUN, MD | DAYTON | OH | 12,400 | |
| MIAMI INSTITUTE FOR JOINT RECONSTRUCTION | MIAMI | FL | 77,550 | |
| Arturo Corces | | | | |
| MID AMERICA SARCOMA INSTITUTE | OVERLAND PARK | KS | 8,875 | - |
| Paola Rossi | | | | |
| Howard Rosenthal | | | | |
| MID-AMERICA ORTHOPEDIC ASSOCIATION | ROCHESTER | MN | 12,500 | - |
| MIDWEST ORTHOPAEDIC CENTER SC | PEORIA | IL | 316 | |
| Brett Levine | | | | |
| MIKHAIL, WASSEF E. MICHAEL, M.D. | NAPLES | FL | 113,367 | - |
| MIKULAK , STEPHEN A MD | NEWPORT COAST | CA | 8,750 | |
| | | | | 13 (meals) |
| | | | | 63 (ground transportation) |
| MILLET, CHAD W, MD | METAIRIE | LA | 47,750 | 4,929 (commercial airline flight) |
| | | | | 469 (lodging) |
| | | | | 611 (meals) |
| | | | | 269 (ground transportation) |
| MINER, TODD M | DENVER | CO | 10,500 | 3,630 (commercial airline flight) |
| | | | | 451 (lodging) |
| | | | | 397 (meals) |
| | | | | 24 (ground transportation) |
| MINTER, JOHN E MD | MARIETTA | GA | 27,250 | 19 (meals) |
| MIS-TKA GROUP, LLC | PERRYSBURG | OH | 796,725 | |
| Thomas Coon | | | | |
| Alfred Tria | | | | |
| MOCHEL , DAVID M.D. | WINFIELD | IL | 500 | - |
| MOHLER, CRAIG G. MD | EUGENE | OR | 253,798 | |
| MOLLABASHY, ALLADDIN A | FRISCO | TX | 3,000 | - |
| | | | | 190 (lodging) |
| | | | | 69 (meals) |
| MOMBERGER, NATHAN G, MD PC | MURRAY | UT | 9,000 | 3,325 (commercial airline flight) |
| | | | | 241 (lodging) |
| | | | | 226 (meals) |
| | | | | 1,128 (product donation) |
| MOORE, JOHN R. IV, MD | PINEHURST | NC | 600 | - |
| MOORE, JOHN, MD | HARVEY | LA | 254 | |
| | | | | 952 (lodging) |
| | | | | 182 (meals) |
| MOORE, RICHARD E. MD | BOISE | ID | 1,000 | - |
| MORGAN, RANDALL C., MD | UNIVERSITY PARK | FL | 22,000 | |
| | | | | 3,357 (commercial airline flight) |
| | | | | 833 (lodging) |
| | | | | 681 (meals) |
| | | | | 229 (ground transportation) |
| | | | | 5 (gifts) |
| MORTON, STEVEN, DO | QUINCY | IL | 2,650 | 4 (gifts) |
| MOUNT SINAI SCHOOL OF MEDCINE | NEW YORK | NY | 172,013 | - |
| MULVEY, THOMAS, MD | DUNLAP | IL | 6,500 | |
| | | | | 530 (commercial airline flight) |
| MURATOGLU, ORHUN K PHD | CAMBRIDGE | MA | 28,500 | 4,747 (commercial airline flight) |
| | | | | 170 (lodging) |
| | | | | 1,071 (meals) |
| | | | | 1,203 (ground transportation) |
| MURPHY, MARK | SYRACUSE | NY | - | |
| | | | | 64 (meals) |
| | | | | 155 (gifts) |
| | | | | 6 (gifts) |
| MUSCULOSKELETAL RESERCH FOUNDATION | TEMPLE TERRACE | FL | 58,771 | - |
| Kenneth Gustke | | | | |
| Florida Orthopaedic Institute | | | | |
| MUSCULOSKELETAL TUMOR SOCIETY | NASHVILLE | TN | 25,000 | - |
| MYERS, STEVEN RALPH, MD | COLORADO SPRINGS | CO | 52,960 | |
| | | | | 6,608 (commercial airline flight) |
| | | | | 843 (lodging) |
| | | | | 393 (meals) |
| | | | | 520 (ground transportation) |
| NATH CONSULTING LLC | CHICAGO | IL | 7,500 | - |
| Heather Nath | | | | |
| NATIONAL ASSOCIATION OF ORTHOPAEDIC NURSES | CHICAGO | IL | 19,500 | - |
| NATIONAL ASSOCIATION OF ORTHOPAEDIC TECHNOLOGISTS | INDIANAPOLIS | IN | 6,200 | - |
| NAWAB, AKBAR, MD | LOUISVILLE | KY | 250 | 930 (commercial airline flight) |
| | | | | 1,218 (lodging) |
| | | | | 243 (meals) |
| | | | | 76 (ground transportation) |
| NAZARIAN, DAVID G, MD | PHILADELPHIA | PA | 392,829 | 2,033 (commercial airline flight) |
| | | | | 709 (lodging) |
| | | | | 357 (meals) |

| Consultant Name | City | State | 2007 Payments | 2007 In Kind Payments |
|---|---|---|---|---|
| NELSON, CHARLES L, MD | VOORHEES | NJ | 68,500 | 74 (ground transportation) |
| | | | | 5,972 (commercial airline flight) |
| | | | | 1,109 (lodging) |
| | | | | 996 (meals) |
| | | | | 719 (ground transportation) |
| | | | | 6 (gifts) |
| NELSON, THOMAS, MD | DEEP HAVEN | MN | 3,250 | |
| | | | | 946 (commercial airline flight) |
| | | | | 156 (meals) |
| NEW ENGLAND BAPTIST HOSPITAL | BOSTON | MA | 2,500 | |
| NEW ENGLAND INSTITUTIONAL REVIEW BOARD | WELLESLEY | MA | 2,700 | |
| Benjamin Bierbaum | | | | |
| David Hedden | | | | |
| NEW HANOVER REGIONAL MEDICAL CENTER | WILMINGTON | NC | 1,500 | |
| Jack Bowling | | | | |
| NEW WEST SPORTS MEDICINE & ORTHOPAEDIC SURGER | KEARNEY | NE | | |
| | | | | 133 (meals) |
| | | | | 52 (ground transportation) |
| NEW YORK PRESBYTERIAN HOSPITAL | NEW YORK | NY | 20,000 | |
| William Macaulay | | | | |
| NEWMAN, MARK A, MD | NEW PORT BEACH | CA | 16,500 | |
| | | | | 3,843 (commercial airline flight) |
| | | | | 1,855 (lodging) |
| | | | | 651 (meals) |
| | | | | 190 (ground transportation) |
| | | | | 5 (gifts) |
| NICE, TIM MD | MAYFIELD HTS | OH | 500 | |
| NICHOLS, GEORGE K, MD | VERO BEACH | FL | 51,250 | |
| | | | | 1,565 (commercial airline flight) |
| | | | | 37 (meals) |
| | | | | 46 (ground transportation) |
| NINOMIYA, JAMES | BROOKFIELD | WI | 24,800 | |
| | | | | 143 (lodging) |
| NIXON, RICHARD G, MD | HOUSTON | TX | 3,000 | |
| NOBLE, PHILIP C, PH.D | HOUSTON | TX | 550,000 | |
| | | | | 6,157 (commercial airline flight) |
| | | | | 148 (lodging) |
| | | | | 348 (meals) |
| | | | | 68 (ground transportation) |
| NORTHWEST ORTHOPEDIC ASSOCIATES PA | HOUSTON | TX | 1,650 | |
| Richard Nixon | | | | |
| NORTHWESTERN UNIVERSITY | EVANSTON | IL | | |
| Tina Chang | | | | |
| NUELLE, DOUGLAS MD | BLUE RIDGE | GA | 27,750 | |
| | | | | 1,031 (commercial airline flight) |
| | | | | 213 (lodging) |
| | | | | 286 (meals) |
| | | | | 66 (ground transportation) |
| | | | | 8 (gifts) |
| OAKES, DANIEL | ALTADENA | CA | 5,000 | |
| | | | | 321 (private airline flight) |
| | | | | 143 (lodging) |
| | | | | 138 (meals) |
| O'CONNOR, DANIEL | DIGHTON | MA | 1,079 | |
| OHIO CITY ORTHOPAEDICS INC | CLEVELAND | OH | 10,000 | |
| Mark Berkowitz | | | | |
| William Bohl | | | | |
| OHIO ORTHOPEDIC SURGERY INSTITUTE | COLUMBUS | OH | 39,000 | |
| OHIO RIVERSIDE SPORTS MEDICINE FOUNDATION | UPPER ARLINGTON | OH | 21,322 | |
| Michael McShane | | | | |
| O'KEEFE, THOMAS J, MD, PC | YPSILANTI | MI | 129,125 | |
| | | | | 21,093 (commercial airline flight) |
| | | | | 1,944 (lodging) |
| | | | | 945 (meals) |
| | | | | 340 (ground transportation) |
| | | | | 6 (gifts) |
| OLEYN, JOHN | AUBURN HILLS | MI | | |
| | | | | 143 (lodging) |
| | | | | 30 (meals) |
| OLSON, CRAIG, MD | MANITOWOC | WI | 5,688 | |
| | | | | 152 (private airline flight) |
| | | | | 57 (lodging) |
| | | | | 84 (ground transportation) |
| O'REILLY, MICHAEL D, MD | GREEN BAY | WI | 1,500 | |
| | | | | 152 (private airline flight) |
| ORTHOCAROLINA | CHARLOTTE | NC | 21,904 | |
| Thomas McCoy | | | | |
| Walter Beaver | | | | |
| ORTHOPAEDIC ASSOCIATES OF PORTLAND, P.A | PORTLAND | ME | | |
| George Babikian | | | | |
| ORTHOPAEDIC CLINIC | OPELIKA | AL | | |
| Richard Moore | | | | |
| ORTHOPAEDIC EDUCATION INC | CHARLOTTSVILLE | VA | 25,000 | |
| ORTHOPAEDIC HOSPITAL | LOS ANGELES | CA | | |
| Edward Ebramzadeh | | | | |
| ORTHOPAEDIC PHYSICIANS COMPANY PC | ENGLEWOOD | CO | 150 | |
| Robert Kruse | | | | |
| ORTHOPAEDIC RESEARCH FOUNDATION, INC | INDIANAPOLIS | IN | 52,112 | |
| Jack Farr | | | | |
| ORTHOPAEDIC RESEARCH, INC | LITTLE ROCK | AR | 3,350 | |

H003579

| Consultant Name | City | State | 2007 Payments | 2007 In Kind Payments | |
|---|---|---|---|---|---|
| William Helley | | | | | |
| Kenneth Martin | | | | | |
| ORTHOPAEDIC SPECIALTIES | MIDDLESEX COUNTY | UK | 19,581 | | |
| Peter Walker | | | | | |
| ORTHOPAEDIC SPECIALTY CENTER FOUNDATION | WILLOW GROVE | PA | 8,710 | | |
| Andrew Star | | | | 148 | (private airline flight) |
| | | | | 266 | (meals) |
| Guy Lee | | | | 1,358 | (commercial airline flight) |
| | | | | 96 | (meals) |
| ORTHOPAEDIC SPECIALTY GROUP PC | FAIRFIELD | CT | 25,500 | | |
| David Bindelglass | | | | 1,384 | (commercial airline flight) |
| | | | | 327 | (meals) |
| Murray Morrison | | | | 163 | (ground transportation) |
| ORTHOPEDIC & FRACTURE CLINIC, PC | PORTLAND | OR | 1,760 | - | |
| Paul Dewelius | | | | | |
| ORTHOPEDIC ASSOCIATES LLC | DENVER | CO | 1,110 | - | |
| Steven Traina | | | | | |
| ORTHOPEDIC DESIGN & CONSULTING SERVICE LLC | MADISON | WI | 45,750 | - | |
| Richard Ilgen | | | | | |
| ORTHOPEDIC GROUP, P.C. | CLAIRTON | PA | - | 143 | (lodging) |
| Thomas Brockmeyer | | | | 71 | (meals) |
| | | | | 165 | (ground transportation) |
| ORTHOPEDIC INSTITUTE OF PENNSYLVANIA | CAMP HILL | PA | 8,903 | - | |
| Richard Hallock | | | | | |
| ORTHOPEDIC MEDICAL GROUP | SAN DIEGO | CA | 177 | | |
| Richard Coutts | | | | | |
| ORTHOPEDIC EDUCATION AND EDUCAITON FOUNDATION | ROSEMONT | IL | 537,090 | - | |
| ORTHOPEDICS INTERNATIONAL LLC | LINCOLNWOOD | IL | 2,550 | | |
| Mitchell Shienkop | | | | 6,178 | (commercial airline flight) |
| ORTHOWAZ, LTD. | NEW ALBANY | OH | 173,750 | | |
| Ray Wasielewski | | | | | |
| OVERDYKE, WILLIAM L, MD APMC | SHREVEPORT | LA | 86,625 | | |
| | | | | 1,130 | (commercial airline flight) |
| | | | | 2,869 | (lodging) |
| | | | | 886 | (meals) |
| | | | | 178 | (ground transportation) |
| | | | | 4,500 | (corporate assistance for clinical study) |
| OWENS, JONATHAN, MD, PC | RIVERHEAD | NY | 13,850 | | |
| | | | | 667 | (commercial airline flight) |
| | | | | 230 | (lodging) |
| | | | | 209 | (meals) |
| | | | | 124 | (ground transportation) |
| PADGETT, DOUGLAS E MD | HARRISON | NY | 123,750 | | |
| | | | | 120 | (meals) |
| PALUTSIS, ROGER STANLEY, MD | LOUISVILLE | OH | 31,500 | | |
| | | | | 143 | (lodging) |
| | | | | 132 | (meals) |
| | | | | 248 | (ground transportation) |
| PAPAS, SPIRO N | PITTSBURGH | PA | 7,850 | | |
| PAPROSKY, WAYNE G, MD | GLEN ELLYN | IL | 1,875,000 | | |
| | | | | 7,868 | (commercial airline flight) |
| | | | | 584 | (private airline flight) |
| | | | | 504 | (lodging) |
| | | | | 914 | (meals) |
| | | | | 575 | (ground transportation) |
| | | | | 14 | (gifts) |
| PARKER, RICHARD | FOREST HILLS | NY | - | | |
| PARKS, MICHAEL L, MD | NEW YORK | NY | 30,000 | | |
| | | | | 2,642 | (commercial airline flight) |
| | | | | 320 | (lodging) |
| | | | | 559 | (meals) |
| | | | | 124 | (ground transportation) |
| PEARSALL, ALBERT W, IV | MOBILE | AL | 2,500 | | |
| | | | | 57 | (meals) |
| PEROUTKA, ROBERT M, MD | HUNT VALLEY | MD | 13,600 | - | |
| PERRY, CLAYTON | ST LOUIS | MO | - | | |
| PERRY, RICHARD | GROSSE POINTE FARMS | MI | 5,000 | | |
| | | | | 1,297 | (commercial airline flight) |
| | | | | 46 | (private airline flight) |
| | | | | 286 | (lodging) |
| | | | | 106 | (meals) |
| | | | | 22 | (gifts) |
| PETERS, LANCE E, MD PC | ITHACA | NY | 3,500 | - | |
| PETERSEN, TOM | LA MESA | CA | - | | |
| PETERSILGE MD, WILLIAM J | RUSSELL | OH | 1,750 | - | |
| PHILIPPON, MARC J., M.D. | EDWARDS | CO | 75,000 | - | |
| PIEDMONT ORTHO RESEARCH FOUNDATION | GREENVILLE | SC | 42,015 | - | |
| Christopher Kavolus | | | | | |
| James Jennings | | | | | |
| Stephen Ridgeway | | | | | |
| PIERSON, JEFFERY L, MD | INDIANAPOLIS | IN | 134,424 | | |
| | | | | 1,569 | (commercial airline flight) |
| | | | | 182 | (private airline flight) |
| | | | | 286 | (lodging) |
| | | | | 694 | (meals) |
| | | | | 216 | (ground transportation) |
| | | | | 6 | (gifts) |
| PINEHURST SURGICAL CLINIC | PINEHURST | NC | 4,030 | | |
| Neil Conti | | | | | |

H003580

| Consultant Name | City | State | 2007 Payments | 2007 In Kind Payments | |
|---|---|---|---|---|---|
| Ward Oakley | | | | | |
| PINNACLE ORTHOPAEDIC & SPORTS MEDICINE | MARIETTA | GA | 450 | | |
| Mark Diehl | | | | 212 | (meals) |
| | | | | 8 | (gifts) |
| John Day | | | | - | |
| Mark Duffield | | | | - | |
| Stanley Dysart | | | | - | |
| Clark Glass | | | | - | |
| Matthew Jaffe | | | | - | |
| Keith Lamberson | | | | - | |
| Neil Negrin | | | | - | |
| Charles Pesson | | | | - | |
| Scott Swayze | | | | - | |
| PLASTER CONSULTING | TULSA | OK | - | | |
| Julie McGee | | | | 908 | (commercial airline flight) |
| | | | | 218 | (lodging) |
| | | | | 218 | (meals) |
| | | | | 10 | (ground transportation) |
| | | | | 74 | (gifts) |
| Rodney Plaster | | | | 143 | (lodging) |
| | | | | 71 | (meals) |
| | | | | 66 | (ground transportation) |
| | | | | 29 | (gifts) |
| Kara Starkman | | | | 71 | (ground transportation) |
| | | | | 66 | |
| PLASTER, RODNEY, MD | TULSA | OK | 112,442 | | |
| | | | | 291 | (lodging) |
| | | | | 529 | (meals) |
| | | | | 10 | (ground transportation) |
| | | | | 9,000 | (corporate assistance for clinical study) |
| | | | | 5 | (gifts) |
| PLAZA MEDICAL CENTER OF FORT WORTH | FORT WORTH | TX | 1,500 | | |
| Robert Schmidt | | | | | |
| PRITCHETT, JAMES W | SEATTLE | WA | 22,000 | | |
| | | | | 10,522 | (commercial airline flight) |
| | | | | 94 | (private airline flight) |
| | | | | 143 | (lodging) |
| | | | | 130 | (meals) |
| | | | | 176 | (ground transportation) |
| PROVIDENCE HEALTH SYSTEM | PORTLAND | OR | 500 | | |
| Paul Duwelius | | | | | |
| Hans Moller, III | | | | | |
| RAKLEWICZ, MICHAEL | KINGSTON | PA | 72,250 | | |
| | | | | 10,104 | (commercial airline flight) |
| | | | | 1,910 | (lodging) |
| | | | | 816 | (meals) |
| | | | | 862 | (ground transportation) |
| RALEIGH ORTHOPAEDIC CLINIC | RALEIGH | NC | 900 | | |
| Bradley Vaughn | | | | | |
| RAMES, RICHARD D MD | LADUE | MO | 4,250 | | |
| RAND, JAMES A, MD | PARADISE VALLEY | AZ | 78,000 | | |
| | | | | 19,721 | (commercial airline flight) |
| | | | | 2,834 | (lodging) |
| | | | | 666 | (meals) |
| | | | | 1,924 | (ground transportation) |
| REGENTS OF THE UNIVERSITY OF CALIFORNIA | LA JOLLA | CA | 89,000 | | |
| Kim Choll | | | | | |
| Andrew Mahar | | | | | |
| Richard Oka | | | | | |
| REILLY, JOHN P, MD | STATEN ISLAND | NY | 9,750 | | |
| | | | | 2,823 | (commercial airline flight) |
| | | | | 426 | (lodging) |
| | | | | 388 | (meals) |
| | | | | 85 | (ground transportation) |
| RESNICK, PAUL HOLL | PITTSBURGH | PA | 220 | | |
| RICE UNIVERSITY | HOUSTON | TX | 5,000 | | |
| RIDGEWAY, STEPHEN | GREENVILLE | SC | - | | |
| | | | | 1,542 | (commercial airline flight) |
| | | | | 113 | (ground transportation) |
| ROBERTS, MELVIN D, MD | VAIL | AZ | 63,250 | | |
| | | | | 4,955 | (commercial airline flight) |
| | | | | 429 | (lodging) |
| | | | | 948 | (meals) |
| | | | | 335 | (ground transportation) |
| ROBERTSON, DOUGLAS D, JR | PITTSBURGH | PA | 3,600 | | |
| | | | | 512 | (commercial airline flight) |
| | | | | 75 | (meals) |
| ROBINWOOD ORTHOPAEDIC SPECIALISTS | HAGERSTOWN | MD | 2,900 | | |
| Bruce Edwards | | | | | |
| Donald Patterson | | | | | |
| Michael Winslow | | | | | |
| ROCKWELL, DAVID A, MD | GOLDSBORO | NC | 5,750 | | |
| | | | | 913 | (commercial airline flight) |
| | | | | 194 | (lodging) |
| | | | | 93 | (ground transportation) |
| ROJAS, FERNANDO | CAGUAS | PR | - | | |
| | | | | 101 | (meals) |
| ROSENBERG, AARON MD | DEERFIELD | IL | 1,875,500 | | |
| | | | | 8,832 | (commercial airline flight) |
| | | | | 770 | (private airline flight) |

H003581

| Consultant Name | City | State | 2007 Payments | 2007 In Kind Payments |
|---|---|---|---|---|
| | | | | 402 (lodging) |
| | | | | 1,103 (meals) |
| | | | | 1,920 (ground transportation) |
| | | | | 5 (gifts) |
| ROSENTHAL, HOWARD | OVERLAND PARK | KS | | |
| | | | | 687 (commercial airline flight) |
| | | | | 333 (lodging) |
| | | | | 69 (meals) |
| | | | | 822 (ground transportation) |
| RUBASH, HARRY MD | WESTON | MA | 1,127,483 | |
| | | | | 2,122 (commercial airline flight) |
| | | | | 880 (lodging) |
| | | | | 433 (meals) |
| | | | | 33 (ground transportation) |
| | | | | 6 (gifts) |
| RUSH UNIVERSITY | CHICAGO | IL | 1,536,736 | |
| Emily Dittle | | | | 248 (commercial airline flight) |
| | | | | 71 (meals) |
| | | | | 78 (gifts) |
| Craig Della Valle | | | | 67 (gifts) |
| | | | | 160 (ground transportation) |
| Aaron Rosenberg | | | | - |
| Josh Jacobs | | | | - |
| Laura Quigley | | | | - |
| Richard Berger | | | | - |
| Robert Urban | | | | - |
| Scott Sporer | | | | - |
| Tibor Glant | | | | - |
| Wayne Paprosky | | | | - |
| RUTHERFORD, CHARLES S, MD | DALLAS | TX | 4,000 | |
| | | | | 916 (commercial airline flight) |
| | | | | 171 (meals) |
| SAENGER, PAUL MD | ASHEVILLE | NC | 8,800 | |
| | | | | 2,041 (commercial airline flight) |
| | | | | 493 (lodging) |
| | | | | 290 (meals) |
| | | | | 70 (ground transportation) |
| | | | | 6 (gifts) |
| SAINT ANTHONY MEDICAL CENTER | ROCKFORD | IL | 750 | - |
| SAINT LOUIS UNIVERSITY | ST. LOUIS | MO | 180,000 | - |
| SAINT VINCENT'S ORTHOPAEDIC EDUCATIONAL FUND | NEW YORK | NY | | - |
| Eli Bryk | | | | |
| SALVATI, EDUARDO, A, MD | NEW YORK | NY | 155,343 | - |
| SAN ANTONIO ORTHOPAEDIC SPECIALISTS | SAN ANTONIO | TX | | - |
| Adam Harris | | | | |
| SAN FRANCISCO GENERAL HOSP FOUNDATION | SAN FRANCISCO | CA | 41,056 | |
| Theodore Miclau | | | | |
| SCHMALTZ, HARRY W. | DICKSON CITY | PA | - | |
| | | | | 143 (lodging) |
| | | | | 73 (meals) |
| | | | | 22 (gifts) |
| SCHMIDT, ROBERT | FT WORTH | TX | 27,655 | |
| | | | | 1,775 (commercial airline flight) |
| | | | | 72 (meals) |
| | | | | 72 (ground transportation) |
| SCHULMAN ASSOCIATES | CINCINNATI | OH | 1,000 | - |
| Stanley Dyeart | | | | |
| SCHUTZER, STEVEN F, MD | WEST HARTFORD | CT | 125,173 | |
| SCOTT, W NORMAN, MD | NEW YORK | NY | 5,537,357 | |
| | | | | 82 (meals) |
| SCRIPPS CLINIC | LAJOLLA | CA | 9,298 | |
| | | | | 143 (lodging) |
| Darryl Dlima | | | | 34 (meals) |
| SCRIPPS HEALTH | LAJOLLA | CA | - | |
| Darryl Dlima | | | | |
| SCUDERI, GILES R, MD | GARDEN CITY | NY | 863,993 | |
| | | | | 27,886 (commercial airline flight) |
| | | | | 99 (private airline flight) |
| | | | | 4,704 (lodging) |
| | | | | 639 (meals) |
| | | | | 3,430 (ground transportation) |
| | | | | 12 (gifts) |
| SCULCO, THOMAS | NEW YORK CITY | NY | | |
| | | | | 14 (meals) |
| SEAQUIST, JACK L, MD | AUSTIN | TX | 23,500 | |
| | | | | 1,145 (commercial airline flight) |
| | | | | 122 (meals) |
| SEKUNDIAK, TODD DALE, MD | OMAHA | NE | 102,500 | |
| | | | | 13,430 (commercial airline flight) |
| | | | | 175 (private airline flight) |
| | | | | 3,007 (lodging) |
| | | | | 1,316 (meals) |
| | | | | 1,628 (ground transportation) |
| SERAFIN, LOUIS A, JR, MD | LAKEPORT | MI | 280,717 | |
| SEWECKE, JEFFREY J, D.O. | SEWICKLEY | PA | 48,000 | |
| | | | | 3,981 (commercial airline flight) |
| | | | | 466 (lodging) |
| | | | | 422 (meals) |
| | | | | 183 (ground transportation) |
| SHARMA, ADRIJA, PHD | KNOXVILLE | TN | - | |
| | | | | 250 (lodging) |
| | | | | 158 (meals) |

H003582

| Consultant Name | City | State | 2007 Payments | 2007 In Kind Payments |
|---|---|---|---|---|
| SHINAR, ANDREW, MD | BRENTWOOD | TN | 54,250 | |
| | | | | 4,371 (commercial airline flight) |
| | | | | 1,855 (lodging) |
| | | | | 1,299 (meals) |
| | | | | 584 (ground transportation) |
| SIGMA ASSOCIATES, LLC | MARS | PA | 5,000 | |
| Charles Sutherland | | | | |
| SINAI HOSPITAL OF BALTIMORE INC | BALTIMORE | MD | 30,000 | - |
| Xin Zhou | | | | |
| SINHA, RAJ K, MD | RANCHO MIRAGE | CA | 322,968 | |
| | | | | 11,449 (commercial airline flight) |
| | | | | 2,589 (lodging) |
| | | | | 2,588 (meals) |
| | | | | 772 (ground transportation) |
| | | | | 17 (gifts) |
| SLOCUM, DONALD B RESEARCH AND EDUCATION FOUNDATION | EUGENE | OR | 13,800 | |
| Brian Jewett | | | | |
| Brick Lentz | | | | |
| Christopher Walton | | | | |
| Timothy Straub | | | | |
| SMITH, STEPHEN W, MD | ATLANTA | GA | 8,750 | |
| | | | | 212 (meals) |
| | | | | 258 (gifts) |
| SMITH, STUART E, MD | NASHVILLE | TN | 10,250 | |
| | | | | 643 (commercial airline flight) |
| | | | | 191 (meals) |
| SMITH, SUSANNE | LONGBOAT KEY | FL | 46,897 | |
| SORGER, JOEL L | CINCINNATI | OH | - | |
| SOTERANOS, NICHOLAS G | MCKEESPORT | PA | 226,250 | |
| SOUTH ALABAMA MEDICAL SCIENCE FOUNDATION | MOBILE | AL | 41,188 | - |
| Albert Pearsall IV | | | | |
| SOUTH PALM ORTHOPEDICS | BOCA RATON | FL | 5,000 | |
| David Buchalter | | | | |
| SOUTHERN ILLINOIS UNIVERSITY SCHOOL OF MEDICINE | SPRINGFIELD | IL | 8,650 | |
| Donald Gordan Allan | | | | |
| Marty Wilson | | | | 18 (meals) |
| | | | | 488 (commercial airline flight) |
| | | | | 218 (lodging) |
| | | | | 218 (meals) |
| | | | | 10 (ground transportation) |
| | | | | 74 (gifts) |
| David Olysav | | | | |
| SOUTHERN ORTHOPAEDIC ASSOCIATION | TOWSON | MD | 25,000 | |
| SOUTHWEST RESEARCH INSTITUTE | SAN ANTONIA | TX | - | |
| James Lankford | | | | |
| SPECIALTY ORTHOPEDICS | PLYMOUTH | IN | 200 | |
| Anthony McPherron | | | | |
| SPORER, SCOTT | WHEATON | IL | 94,000 | |
| | | | | 3,381 (commercial airline flight) |
| | | | | 115 (private airline flight) |
| | | | | 1,381 (lodging) |
| | | | | 1,061 (meals) |
| | | | | 1,371 (ground transportation) |
| | | | | 257 (gifts) |
| SPORTS, ORTHOPEDICS & SPINE EDUCATIONAL FOUNDATION INC. | JACKSON | TN | - | - |
| Keith Nord | | | | |
| ST ANTHONY ORTHOPAEDIC SPECIALISTS RESEARCH FOUNDATION | ST PAUL | MN | 7,169 | - |
| Terence Gioe | | | | |
| ST VINCENT CENTER FOR JOINT REPLACEMENT | INDIANAPOLIS | IN | 48,748 | |
| STAMPER DO, BLAKE A | BULLHEAD CITY | AZ | 18,750 | - |
| STANFORD UNIVERSITY | STANFORD | CA | - | |
| R Lane Smith | | | | |
| William Maloney | | | | |
| STANZIOLA, FELIX, MD | MIAMI | FL | 32,000 | |
| STEWART, CHARLES MD | BOCA RATON | FL | 21,500 | |
| | | | | 1,099 (commercial airline flight) |
| | | | | 119 (meals) |
| | | | | 230 (ground transportation) |
| STIEHL, JAMES B, MD, SC | MILWAUKEE | WI | 22,000 | |
| | | | | 5,471 (commercial airline flight) |
| | | | | 1,014 (lodging) |
| | | | | 215 (meals) |
| STONE, ROSS G, MD PA | ATLANTIS | FL | 6,750 | |
| STRATHY, GREGG M, MD | EDINA | MN | 14,750 | - |
| SYRACUSE ORTHOPAEDIC SPECIALISTS | DEWITT | NY | - | |
| Michael Clarke | | | | 143 (lodging) |
| | | | | 71 (meals) |
| | | | | 85 (ground transportation) |
| | | | | 29 (gifts) |
| Susan Hemmingway | | | | 406 (commercial airline flight) |
| | | | | 218 (lodging) |
| | | | | 187 (meals) |
| | | | | 69 (ground transportation) |
| | | | | 73 (gifts) |
| TAHOE FRACTURE CLINIC | CARSON CITY | NV | - | - |
| TANKERSLEY, W. STEPHEN, MD | CONCORD | NC | 6,250 | |
| | | | | 2,383 (commercial airline flight) |
| | | | | 286 (lodging) |
| | | | | 74 (meals) |
| | | | | 38 (ground transportation) |
| TELEHOWSKI, PAUL | FLINT | MI | - | |
| | | | | 98 (private airline flight) |

| Consultant Name | City | State | 2007 Payments | 2007 In Kind Payments | |
|---|---|---|---|---|---|
| TENNESSEE ORTHOPAEDIC CLINICS, P.C. | KNOXVILLE | TN | - | - | |
|   Harold Cates, Jr. | | | | | |
| THE ORTHOPAEDIC CLINIC & SPORTS MEDICINE CENTER | ST JOSEPH | MO | 9,150 | | |
|   William Humphreys | | | | 143 | (private airline flight) |
| | | | | 29 | (meals) |
| THE RECTORS AND VISITORS OF THE UNIVERSITY OF VIRGINIA | CHARLOTTESVILLE | VA | 36,360 | - | |
|   David Diduch | | | | | |
|   Gwo-Jaw Wang | | | | | |
| THE TEXAS HIP AND KNEE CENTER LLP | FORT WORTH | TX | 48,750 | - | |
|   Robert Schmidt | | | | 1,624 | (commercial airline flight) |
| | | | | 143 | (lodging) |
| | | | | 67 | (meals) |
| | | | | 113 | (ground transportation) |
| | | | | 2,655 | (legal fee reimbursement) |
| | | | | 32 | (gifts) |
|   Angela Alexander | | | | 1,676 | (commercial airline flight) |
| | | | | 218 | (lodging) |
| | | | | 231 | (meals) |
| | | | | 10 | (ground transportation) |
| | | | | 74 | (gifts) |
|   Steven Weeden | | | | | |
| THE TRUSTEES OF THE UNIVERSITY OF INDIANA | INDIANAPOLIS | IN | 166,982 | - | |
|   Richard Frankel | | | | | |
|   Gwendolyn Morrison | | | | | |
|   Tom Inui | | | | | |
|   Anne Royalty | | | | | |
|   Janice C. Froehlich | | | | | |
|   Fidel Barbosa | | | | | |
| THOMAS, BERT J., M.D. | PACIFIC PALISADES | CA | 250 | - | |
| TISCHLER MD, HENRY | GREAT NECK | NY | 10,375 | | |
| | | | | 723 | (commercial airline flight) |
| | | | | 190 | (meals) |
| | | | | 170 | (ground transportation) |
| TOTAL CHART, INC | ADDISON | TX | 5,000 | - | |
| TPS IV OF PA LLC | PHILADELPHIA | PA | 86,100 | - | |
|   Norman Johanson | | | | | |
|   Douglas Cerynik | | | | | |
|   Gwo Chin Lee | | | | | |
|   Brian Graser | | | | | |
|   Rami Seliktar | | | | | |
| TRADER, JOSEPH E, MD | MANITOWOC | WI | 944 | - | |
| TRAUNER, KENNETH B, M.D. | SAN FRANCISCO | CA | 112,500 | | |
| | | | | 68 | (meals) |
| TRIA, ALFRED | PRINCETON | NJ | 220,640 | | |
| | | | | 48 | (meals) |
| TRIA ORTHOPAEDIC ASSOCIATES, PA | BLOOMINTON | MN | 184,260 | - | |
| TRIANGLE ORTHOPAEDICS ASSOCIATES, PA | DURHAM | NC | 9,166 | | |
|   Ralph Liebelt | | | | 570 | (meals) |
| TRIPPEL, STEPHEN B | INDIANAPOLIS | IN | 3,500 | | |
| | | | | 65 | (ground transportation) |
| TRUSTEES OF COLUMBIA UNIVERSITY | NEW YORK | NY | 76,500 | - | |
|   William Macaulay | | | | 143 | (lodging) |
| | | | | 71 | (meals) |
| | | | | 73 | (ground transportation) |
|   Richard Yoon | | | | 143 | (lodging) |
| | | | | 71 | (meals) |
| | | | | 123 | (ground transportation) |
| | | | | 78 | (gifts) |
|   Craig Smucker | | | | | |
| TRUSTEES OF DARTMOUTH COLLEGE | HANOVER | NH | 76,720 | - | |
|   Anna Tosteson | | | | | |
|   Brian Siles | | | | | |
|   Ivan Tomek | | | | | |
|   James Weinstein | | | | | |
|   Jonathan Skinner | | | | | |
|   Kevin Spratt | | | | | |
|   Stephen Kantor | | | | | |
| TRUSTEES OF PURDUE UNIVERSITY | LAFAYETTE | IN | 27,720 | - | |
|   David Van Sickle | | | | 16 | (meals) |
|   John Nyenhuis | | | | | |
| TSAO, AUDREY K MD | LITCHFIELD PARK | AZ | 43,550 | | |
|   Audrey Tsao | | | | 5,429 | (commercial airline flight) |
| | | | | 423 | (lodging) |
| | | | | 500 | (meals) |
| | | | | 251 | (ground transportation) |
|   Robert Karpman | | | | | |
| TUCSON ORTHOPAEDIC INSTITUTE | TUCSON | AZ | 460,622 | | |
|   Nebojsa Skrepnek | | | | 294 | (meals) |
| | | | | 17,750 | (corporate assistance for clinical study) |
|   Russell Cohen | | | | 12,250 | (corporate assistance for clinical study) |
|   James Levi | | | | 364 | (meals) |
|   Nebi Sampatacos | | | | 5,500 | (corporate assistance for clinical study) |
|   John Mallry | | | | | |
|   Melvin Roberts | | | | | |
|   Jay Katz | | | | | |
|   Kevin Bowers | | | | | |
| UMLAS, MARK E, MD PA | MIAMI BEACH | FL | 39,500 | | |
| | | | | 2,122 | (commercial airline flight) |
| | | | | 886 | (lodging) |
| | | | | 295 | (meals) |

| Consultant Name | City | State | 2007 Payments | 2007 In Kind Payments |
|---|---|---|---|---|
| UNGER, ANTHONY, MD | BETHESDA | MD | 51,000 | 69 (ground transportation) |
| | | | | 1,718 (commercial airline flight) |
| | | | | 919 (lodging) |
| | | | | 1,021 (meals) |
| | | | | 922 (ground transportation) |
| | | | | 11 (gifts) |
| UNION MEMORIAL HOSPITAL | BALTIMORE | MD | 187,500 | - |
| UNIVERSITY HOSPITAL OF CLEVELAND | CLEVELAND | OH | 82,147 | - |
| Victor Goldberg | | | | |
| Matthew Kraay | | | | |
| UNIVERSITY OF ALABAMA AT BIRMINGHAM | BIRMINGHAM | AL | 82,860 | - |
| UNIVERSITY OF CHICAGO ORTHOPAEDIC RESEARCH INSTITUTE | CHICAGO | IL | 7,175 | - |
| David Manning | | | | |
| John Martell | | | | |
| UNIVERSITY OF COLORADO HEALTH SCIENCES CENTER | AURORA | CO | 13,819 | - |
| Michael Dayton | | | | |
| Joel Bach | | | | |
| UNIVERSITY OF DUISBERG | GERMANY | | - | |
| Markus Wimmer | | | | |
| | | | | 206 (meals) |
| | | | | 48 (gifts) |
| UNIVERSITY OF FLORIDA - GAINESVILLE | GAINESVILLE | FL | 19,837 | - |
| Scott Banks | | | | |
| Sean McGarry | | | | |
| UNIVERSITY OF MASSACHUSETTS MEDICAL SCHOOL | WORCESTER | MA | 6,426 | - |
| David Ayers | | | | |
| Jeffrey Metzmaker | | | | |
| UNIVERSITY OF MEMPHIS | MEMPHIS | TN | 35,000 | - |
| M. Shah Jahan | | | | |
| UNIVERSITY OF NEBRASKA | OMAHA | NE | 25,869 | - |
| Keith D. Swarts | | | | |
| Todd Sekundiak | | | | |
| UNIVERSITY OF NEW MEXICO SCHOOL OF MEDICINE | ALBUQUERQUE | NM | - | |
| Thomas DeCoster | | | | |
| UNIVERSITY OF NORTH CAROLINA | CHAPEL HILL | NC | 81,250 | - |
| Paul Lachiewicz | | | | |
| Scott Kelly | | | | |
| UNIVERSITY OF NOTRE DAME | NOTRE DAME | IN | 11,788 | - |
| Timothy Ovaert | | | | |
| Glen Niebur | | | | |
| UNIVERSITY OF PENNSYLVANIA | PHILADELPHIA | PA | - | |
| Craig Israelite | | | | |
| UNIVERSITY OF PITTSBURGH | PITTSBURGH | PA | 52,560 | - |
| UNIVERSITY OF ROCHESTER | ROCHESTER | NY | 57,423 | - |
| Edward Schwartz | | | | |
| Regis O'Keefe | | | | |
| UNIVERSITY OF TENNESSEE | KNOXVILLE | TN | 284,325 | - |
| Richard Komistek | | | | |
| Mahomed Mahfouz | | | | |
| UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON | HOUSTON | TX | 234,420 | - |
| Catherine Ambrose | | | | |
| Dhiren Sheth | | | | |
| UNIVERSITY OF UTAH | SALT LAKE CITY | UT | 59,702 | - |
| Deborah S. McAlister | | | | |
| Jeffrey Hodrick | | | | |
| Kent Bachus | | | | |
| UNIVERSITY OF WASHINGTON FOUNDATION | SEATTLE | WA | 100,300 | - |
| UNIVERSITY OF WISCONSIN BOARD OF REGENTS | MADISON | WI | 178,487 | - |
| Heidi Ploeg | | | | 33 (meals) |
| Mariana Kersh | | | | |
| James Ninomiya | | | | |
| Richard Illgen | | | | |
| UNIVERSITY WASHINGTON SCHOOL OF MEDICINE | ST LOUIS | MO | 101,850 | - |
| John Clohisy | | | | |
| William Maloney | | | | |
| USC ORTHOPAEDIC SURGERY ASSOCIATES, INC | LOS ANGELES | CA | 76,000 | - |
| Daniel Chivas | | | | |
| Kurt Droll | | | | |
| UVA HEALTH SERVICES FOUNDATION | CHARLOTTESVILLE | VA | 435 | - |
| Thomas Brown | | | | |
| VAIL, THOMAS | DURHAM | NC | - | |
| VALLEY SPORTS AND ARTHRITIS SURGEONS | ALLENTOWN | PA | 10,250 | 4,500 (corporate assistance for clinical study) |
| Eric Lebby | | | | |
| Prodromos Ververeli | | | | |
| VANDERBILT DEPARTMENT OF ORTHOPAEDICS | NASHVILLE | TN | 1,500 | - |
| Andrew Shinar | | | | |
| VAUGHN, BRADLEY K | RALEIGH | NC | 85,887 | - |
| VELYVIS, JOHN, MD | RANCHO MIRAGE | CA | 38,000 | 1,563 (commercial airline flight) |
| | | | | 1,241 (lodging) |
| | | | | 1,004 (meals) |
| | | | | 476 (ground transportation) |
| | | | | 16 (gifts) |
| VERNER, JAMES J, MD | BEVERLY HILLS | MI | 6,000 | 1,493 (commercial airline flight) |
| VERVERELI, PRODROMOS A, MD | ALLENTOWN | PA | 47,750 | 3,979 (commercial airline flight) |
| | | | | 757 (lodging) |
| | | | | 272 (meals) |
| | | | | 374 (ground transportation) |
| VINCE, KELLY, MD | HERMOSA BEACH | CA | 1,823,286 | |

H003585

| Consultant Name | City | State | 2007 Payments | 2007 In Kind Payments |
|---|---|---|---|---|
| | | | | 27,769 (commercial airline flight) |
| | | | | 9,383 (lodging) |
| | | | | 4,011 (meals) |
| | | | | 1,748 (ground transportation) |
| | | | | 6 (gifts) |
| | | | | 3,602 (product training expenses) |
| VIRGINIA ORTHOPAEDIC SOCIETY | RICHMOND | VA | 7,500 | |
| VITTETOE, DAVID A. | DES MOINES | IA | - | |
| | | | | 65 (meals) |
| VLASAK, RICHARD, MD | GAINESVILLE | FL | 500 | |
| WAKE FOREST UNIVERSITY HEALTH SCIENCES | WINSTON SALEM | NC | 165,000 | |
| Angela Collins | | | | 71 (meals) |
| | | | | 59 (ground transportation) |
| Martha Holden | | | | 404 (commercial airline flight) |
| | | | | 218 (lodging) |
| | | | | 218 (meals) |
| | | | | 47 (ground transportation) |
| | | | | 74 (gifts) |
| L. Andrew Koman | | | | 28 (meals) |
| Riyaz Jinnah | | | | 143 (lodging) |
| David Pollock | | | | 71 (ground transportation) |
| Robert N. Reddix, Jr. | | | | 59 (ground transportation) |
| Patrick Whitlock | | | | |
| WALK, INC. Kenneth Bramlett | BIRMINGHAM | AL | 1,550,000 | - |
| WALKER, PETER S | NEW YORK | NY | 2,502,958 | |
| | | | | 93 (private airline flight) |
| | | | | 337 (lodging) |
| | | | | 565 (meals) |
| | | | | 156 (ground transportation) |
| WALNUT CREEK ORTHOPAEDIC & SPORTS MEDICINE William Workman | WALNUT CREEK | CA | 5,000 | |
| WARD, MICHELLE | CUCAMONGA | CA | - | |
| | | | | 137 (lodging) |
| | | | | 160 (meals) |
| | | | | 6 (gifts) |
| WARREN, STEVEN BRIAN, MD | ST PETERSBURG | FL | 60,400 | |
| | | | | 2,655 (commercial airline flight) |
| | | | | 681 (meals) |
| | | | | 331 (ground transportation) |
| | | | | 12 (gifts) |
| | | | | 635 (product training expenses) |
| WASHINGTON HOSPITAL CENTERS FOUNDATION | WASHINGTON | DC | 112,500 | |
| WASIELEWSKI, RAY | NEW ALBANY | OH | - | |
| | | | | 2,062 (commercial airline flight) |
| | | | | 643 (lodging) |
| | | | | 389 (meals) |
| WAXMAN, DAVID L | CLARKSBURG | WV | 1,750 | |
| | | | | 122 (meals) |
| | | | | 35 (ground transportation) |
| | | | | 5 (gifts) |
| WEEDEN, STEVEN H, MD | FORT WORTH | TX | 109,650 | |
| | | | | 4,825 (commercial airline flight) |
| | | | | 1,100 (lodging) |
| | | | | 682 (meals) |
| | | | | 181 (ground transportation) |
| | | | | 6 (gifts) |
| WESTERN INSTITUTIONAL REVIEW BOARD | OLYMPIA | WA | 27,125 | - |
| WESTERN MICHIGAN BONE & JOINT SURGEONS Walter Braunohler | GRAND RAPIDS | MI | 600 | - |
| WESTERN ORTHOPAEDIC ASSOCIATION | UPLAND | CA | 25,000 | - |
| WHITE, RICHARD E, JR | ALBUQUERQUE | NM | 1,152,580 | |
| | | | | 1,971 (commercial airline flight) |
| | | | | 583 (lodging) |
| | | | | 45 (meals) |
| | | | | 54 (ground transportation) |
| WHITE, RONALD P MD, PA | SARASOTA | FL | 74,850 | |
| | | | | 1,582 (commercial airline flight) |
| | | | | 94 (private airline flight) |
| | | | | 286 (lodging) |
| | | | | 335 (meals) |
| | | | | 250 (ground transportation) |
| WIEDEL MD, JEROME D | STEAM BOAT SPRINGS | CO | 2,527 | |
| WIESNER, LAWRENCE, DO | VESTAL | NY | 11,690 | |
| | | | | 1,184 (commercial airline flight) |
| | | | | 142 (private airline flight) |
| | | | | 146 (meals) |
| WILLIAMS, JOHN T, MD JR. | NORTH WALES | PA | 34,000 | |
| | | | | 1,812 (commercial airline flight) |
| | | | | 320 (lodging) |
| | | | | 525 (meals) |
| | | | | 82 (ground transportation) |
| WILLIAMS, TIMOTHY | INDIANAPOLIS | IN | - | |
| WILLIAMSON, RICHARD V, MD | ANACORTES | WA | 124,643 | |
| | | | | 2,525 (commercial airline flight) |
| | | | | 93 (private airline flight) |
| | | | | 143 (lodging) |
| | | | | 149 (meals) |
| | | | | 49 (ground transportation) |
| | | | | 22 (gifts) |
| | | | | 650 (product training expenses) |

| Consultant Name | City | State | 2007 Payments | 2007 In Kind Payments | |
|---|---|---|---|---|---|
| WINDSOR, RUSSELL E MD | LARCHMONT | NY | 361,329 | | |
| | | | | 5,801 | (commercial airline flight) |
| | | | | 190 | (lodging) |
| | | | | 320 | (meals) |
| | | | | 517 | (ground transportation) |
| WINTERS, THOMAS F | WINTER PARK | FL | 78 | | |
| WODAJO, FELASFA M, MD PA | CHEVY CHASE | MD | 7,750 | | |
| | | | | 1,532 | (commercial airline flight) |
| | | | | 190 | (lodging) |
| | | | | 291 | (meals) |
| | | | | 130 | (ground transportation) |
| WOLFE, MICHAEL W, MD | ROANOKE | VA | 1,250 | | |
| WOLFF, DAVID A, MD | FITCHBURG | WI | 32,375 | | |
| | | | | 1,272 | (commercial airline flight) |
| | | | | 230 | (lodging) |
| | | | | 235 | (meals) |
| | | | | 169 | (ground transportation) |
| WONG, DAVID | GOLDEN | CO | | | |
| WOOD, JAMES E JR, MD | BALTIMORE | MD | 84,075 | | |
| | | | | 5,092 | (commercial airline flight) |
| | | | | 1,746 | (lodging) |
| | | | | 994 | (meals) |
| | | | | 628 | (ground transportation) |
| | | | | 6 | (gifts) |
| | | | | 58 | (product training expenses) |
| WRIGHT STATE UNIVERSITY | DAYTON | OH | 104,650 | - | |
| WRIGHT, TIM | STAMFORD | CT | - | - | |
| YUN, ANDREW | INGLEWOOD | CA | | | |
| | | | | 262 | (lodging) |
| | | | | 50 | (meals) |
| | | | | 27 | (ground transportation) |

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| HUDSON SURGICAL DESIGN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 08 C 1566 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| ZIMMER HOLDINGS, INC., ZIMMER, | ) | Magistrate Judge Nan R. Nolan |
| INC., RUSH SYSTEM FOR HEALTH | ) | |
| and RUSH UNIVERSITY MEDICAL | ) | |
| CENTER, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**Rush University Medical Center's**
**<u>Response to Hudson's First Set of Interrogatories</u>**

## <u>OBJECTIONS</u>

1.    Rush University Medical Center ("RUMC") objects to the definition of "Rush Medical" as provided, and does not respond to any of the interrogatories pursuant to that definition.   In its responses, any reference to Rush Medical or RUMC means Rush University Medical Center and only Rush University Medical Center.

2.    RUMC objects to the definition of "Rush Health" as provided, and does not respond to any of the interrogatories pursuant to that definition.   In its responses, any reference to Rush Health or RSH means Rush System for Health and only Rush System for Health.

3.    RUMC objects to the definition of the term "Accused Instruments" as being vague, ambiguous, and potentially requiring legal conclusions to be determined, especially as that

definition, as stated in the interrogatories, is "not limited to" anything. In responding to these interrogatories, RUMC reads "Accused Instruments" as "NexGen Complete Knee Solution Quad-Sparing Instrumentation."

4.    RUMC objects to the definition of the term "Accused Techniques" at least on the same bases as it objects to the term "Accused Instruments" as the former definition incorporates the latter. RUMC further objects that the phraseology "minimally invasive quadriceps-sparing surgical techniques for total knee replacement" is vague and overbroad.

5.    RUMC objects to the definition of the term "Accused Implants" at least on the same bases as it objects to the terms "Accused Instruments" and "Accused Techniques" as the first definition incorporates the latter two.

6.    RUMC objects to the definitions of the terms "persons" and "acts of a person" and does not respond pursuant to those definitions but rather pursuant to normal usage.

7.    RUMC objects to Plaintiff's First Set of Interrogatories on the grounds and to the extent they seek information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege or immunity. Nothing contained in these objections and responses is intended to be, or in any way constitutes, a waiver of any such applicable privilege or immunity.

8.    RUMC objects to Plaintiff's First Set of Interrogatories on the grounds and to the extent that they seek to impose any obligation on RUMC in addition to or different from those imposed by the Federal Rules of Civil Procedure, the Local Civil Rules for the Northern District of Illinois and/or any Order of the Court or agreement between the parties, and limits its responses to that required.

2

9.    RUMC objects to Plaintiff's First Set of Interrogatories on the grounds and to the extent that they seek to impose any obligation on RUMC to disclose information not in its possession, custody or control.

10.    RUMC objects to Plaintiff's First Set of Interrogatories on the grounds and to the extent they are overly broad, unduly burdensome, not relevant to any claims or defenses in this action, not reasonably calculated to lead to the discovery of admissible information, and seek material not within the permissible scope of discovery.

11.    RUMC objects to Plaintiff's First Set of Interrogatories on the grounds and to the extent they prematurely seek information and contentions prior to the completion of the discovery necessary for RUMC to fully respond.

12.    RUMC objects to Plaintiff's First Set of Interrogatories on the grounds and to the extent they consist of multiple discrete parts, which should be counted as separate interrogatories pursuant to Fed. R. Civ. P. 33.   RUMC reserves the right to object to further interrogatories from Plaintiff as in excess of the number allowed.

13.    To the extent not specifically objected to above, RUMC objects to Plaintiff's definitions on the grounds and to the extent they purport to alter the plain meaning or scope of any interrogatory, on the grounds that such alteration renders the interrogatory vague, ambiguous, unduly broad and uncertain.

14.    RUMC does not concede the relevance or materiality of the subject matter of any of these interrogatories or RUMC's Responses thereto.   Further, RUMC does not concede the relevancy, materiality or admissibility of any particular document identified in response to any of Plaintiff's interrogatories.   RUMC reserves the right to object to any further discovery or to the

3

admissibility of any matter or document at trial.

15.    RUMC objects to interrogatories as vague, overbroad, and unduly burdensome to the extent that their temporal scope is not limited to after the filing of this action because Hudson has not established that it states a claim for patent infringement and/or damages for any time before the filing of this action, and therefore RUMC limits, where applicable, its response to information after the filing of this action.

16.    RUMC objects to Plaintiff's First Set of Interrogatories on the grounds that they are not signed, as required by the Federal Rules of Civil Procedure.   As such, RUMC has no obligation to respond to Plaintiff's First Set of Interrogatories.

17.    The discovery period established by the Court is still ongoing.   RUMC responses are based on its current understanding and reserves the right to supplement and/or amend these responses.

## INTERROGATORIES

1.    Identify all current and former officers, directors, employees, agents, attorneys (whether in-house or outside attorneys), physicians, affiliated physicians agents, consultants or representatives of Rush Medical who has and/or had any involvement in the marketing, distribution, training, use and/or sale of the Accused Instruments, the Accused Techniques and/or the Accused Implants, and for each such person, describe in detail what involvement he or she has and/or had in the marketing, distribution, training, use and/or sale.

**RESPONSE:**

RUMC incorporates all of its objections herein.   RUMC objects to the extent this interrogatory seeks privileged information.   RUMC objects to the extent that this interrogatory seeks information not available to RUMC.   RUMC objects to the extent this interrogatory seeks to have RUMC speak for the actions or activities of other persons.

4

RUMC objects to the temporal scope of this interrogatory based on lack of relevance, overbreadth, and undue burden. Hudson has not established that it provided notice of its patents and/or established that it met the marking requirements of the Patent Act, foreclosing any damages prior to the initiation of this lawsuit. RUMC cannot be liable for infringement under 35 U.S.C. Section 271 (b) or (c) absent awareness of the patents, which Hudson has not established. Therefore, RUMC will not identify persons who would fall under the category "former."

Further, Hudson has not identified which patent claims of which patent RUMC allegedly infringes. Hudson has not identified the specific devices and/or implants it is accusing of infringement. Because of this, Hudson's interrogatory is vague and ambiguous and does not provide RUMC with specific notice as to the persons who should be identified.

RUMC cannot be liable for damages for any period under 35 U.S.C. Section 287(c). This entire interrogatory is therefore irrelevant.

Subject to those objections, RUMC is investigating this interrogatory. RUMC reserves the right to supplement this response.

2.    Separately, for each of the years 2002 forward, provide the following information: (a) state the number of surgeries, procedures and operations performed by, for or at Rush Medical using the Accused Techniques; (b) state the date and location of each such surgery, procedure and operation; (c) identify the physician(s) who performed the surgery, procedure or operation; (d) state the total revenues and profits (gross, operating and incremental) generated by Rush Medical for each such surgery, procedure and operation; (e) state the number of Accused Implants made, sold and implanted; and (f) state the total revenues and profits (gross, operating and incremental) generated by Rush Medical for each such implant.

**RESPONSE:**

RUMC incorporates all of its objections herein. RUMC objects to the extent that this interrogatory seeks information not available to RUMC. RUMC objects to the extent this interrogatory seeks to have RUMC speak for the actions or activities of other persons.

RUMC objects to the temporal scope of this interrogatory based on lack of relevance, overbreadth, and undue burden. Hudson has not established that it provided notice of its patents and/or established that it met the marking requirements of the Patent Act, foreclosing any damages prior to the initiation of this lawsuit. RUMC cannot be liable for infringement under 35 U.S.C. Section 271 (b) or (c) absent awareness of the patents, which Hudson has not established. Therefore, RUMC will not provide information for prior to the initiation of this lawsuit.

Further, Hudson has not identified which patent claims of which patent RUMC allegedly infringes. Hudson has not identified the specific devices and/or implants it is accusing of infringement. Because of this, Hudson's interrogatory is vague and ambiguous and does not provide RUMC with specific notice as to the information sought.

RUMC cannot be liable for damages for any period under 35 U.S.C. Section 287(c). This entire interrogatory is therefore irrelevant.

Moreover, since individual surgeons perform the surgeries independent of RUMC, the definitions supplied by Hudson are not specific enough to allow a determination of the surgeries for which Hudson is seeking discovery.

Subject to those objections, RUMC is investigating this interrogatory. RUMC reserves the right to supplement its response.

6

3.　　　Separately, for each of the years 2002 forward, identify by trade name, model number, part number or other suitable designation each Accused Instrument in the possession, custody or control of Rush Medical and identify the source of each such Accused Instrument.

**RESPONSE:**

RUMC incorporates all of its objections herein. RUMC objects to the extent that this interrogatory seeks information not available to RUMC. RUMC objects to the extent this interrogatory seeks to have RUMC speak for the actions or activities of other persons.

RUMC objects to the temporal scope of this interrogatory based on lack of relevance, overbreadth, and undue burden. Hudson has not established that it provided notice of its patents and/or established that it met the marking requirements of the Patent Act, foreclosing any damages prior to the initiation of this lawsuit. RUMC cannot be liable for infringement under 35 U.S.C. Section 271 (b) or (c) absent awareness of the patents, which Hudson has not established. Therefore, RUMC will not provide information for prior to the initiation of this lawsuit.

Further, Hudson has not identified which patent claims of which patent RUMC allegedly infringes. Hudson has not identified the specific devices and/or implants it is accusing of infringement. Because of this, Hudson's interrogatory is vague and ambiguous and does not provide RUMC with specific notice as to the information sought.

RUMC cannot be liable for damages for any period under 35 U.S.C. Section 287(c). This entire interrogatory is therefore irrelevant.

Moreover, since individual surgeons perform the surgeries independent of RUMC, the

7

definitions supplied by Hudson are not specific enough to allow a determination of the surgeries

for which Hudson is seeking discovery.

Subject to those objections, RUMC is investigating this interrogatory. RUMC reserves

the right to supplement this response.


4.      Separately, for each of the years 2002 forward, identify each payment and/or other consideration received by Rush Medical from any third party, person or entity pertaining to the Accused Instruments, the Accused Implants and/or the Accused Techniques and separately state the amount, the date and the source of each payment.

**RESPONSE:**

RUMC incorporates all of its objections herein. RUMC objects to the extent that this

interrogatory seeks information not available to RUMC. RUMC objects to the extent this

interrogatory seeks to have RUMC speak for the actions or activities of other persons.

RUMC objects to the temporal scope of this interrogatory based on lack of relevance,

overbreadth, and undue burden. Hudson has not established that it provided notice of its patents

and/or established that it met the marking requirements of the Patent Act, foreclosing any

damages prior to the initiation of this lawsuit. RUMC cannot be liable for infringement under

35 U.S.C. Section 271 (b) or (c) absent awareness of the patents, which Hudson has not

established. Therefore, RUMC will not provide information for prior to the initiation of this

lawsuit.

Further, Hudson has not identified which patent claims of which patent RUMC allegedly

infringes. Hudson has not identified the specific devices and/or implants it is accusing of

8

infringement. Because of this, Hudson's interrogatory is vague and ambiguous and does not provide RUMC with specific notice as to the information sought in this interrogatory.

RUMC cannot be liable for damages for any period under 35 U.S.C. Section 287(c). This entire interrogatory is therefore irrelevant.

Moreover, since individual surgeons perform the surgeries independent of RUMC, the definitions supplied by Hudson are not specific enough to allow a determination of the surgeries for which Hudson is seeking discovery.

Subject to those objections, RUMC is investigating this interrogatory. RUMC reserves the right to supplement this response.

5. Separately, for each asserted claim of each patent in suit, explain why Rush Health contends that it has not infringed the claim. A complete answer to this interrogatory shall include at least the following information: an identification of each claim element and/or term that Rush Medical contends is not met by the Accused Instruments and/or the Accused Techniques literally or under the doctrine of equivalents; Rush Medical's contentions on the proper construction of each claim element and/or term that it contends is not met by the Accused Instruments and/or the Accused Techniques, with citations to intrinsic and extrinsic evidence supporting these contentions; an element-by-element comparison between each asserted claim of the patents in suit and the Accused Instruments and the Accused Techniques identifying each claim element and/or term that is not present in the Accused Instruments and/or the Accused Techniques and explaining why such element and/or term is not present; an explanation of why Rush Medical contends that it has not contributed to the infringement or actively induced infringement of any asserted claim; an identification of all documents and things supporting Rush Medical's answer to this interrogatory; and an identification of each person having information that supports Rush Medical's answer to this interrogatory.

**RESPONSE:**

RUMC incorporates all of its objections herein. RUMC objects because this interrogatory is premature. Hudson is the plaintiff in this action and has alleged infringement.

9

However, Hudson has to date not provided a claim chart identifying which instruments of Zimmer for which it is alleging infringement. It is premature for RUMC to set forth non-infringement positions when Hudson has not yet identified what is infringing. Further, the Court has established a schedule for claim construction. To the extent this interrogatory seeks information outside of that schedule, RUMC objects.

RUMC does not manufacture any Accused Instruments. RUMC is therefore not the proper party from which to obtain discovery relating to instruments or their intended use.

RUMC does not itself perform the Accused Techniques. Therefore, RUMC cannot be liable for direct infringement.

RUMC is a related health care entity, as that term is defined in 35 U.S.C. Section 287(c). The Accused Techniques are medical activities under that same provision. Therefore, there is no remedy against RUMC even if it were to perform the Accused Techniques. Because there is no remedy, there is no case or controversy as between Hudson and RUMC relating to any alleged infringement by RUMC.

Hudson has not shown that RUMC was aware of the patents in suit prior to the initiation of the instant action. Hudson has not shown that it provided notice and/or marking under the patent statute. Therefore, RUMC cannot be liable for any damages stemming from before the initiation of this litigation. RUMC cannot be liable for contributory or inducing infringement because it has not been shown that RUMC was aware of the patents in suit.

RUMC cannot be liable for inducing infringement at any time because of 35 U.S.C. Section 287(c).

RUMC does not participate in the decision-making as to the procedure and/or devices

10

that are used during a specific knee surgery.    Individual surgeons perform the surgeries

independent of RUMC, and so RUMC cannot be liable for any type of infringement.    Moreover,

the definitions supplied by Hudson are not specific enough to allow a determination of the

surgeries for which Hudson is seeking discovery.    RUMC reserves the right to supplement this

response.

6.    Separately for each asserted claim of each patent in suit that Rush Medical
contends is invalid for failure to comply with the requirements of 35 U.S.C. § 102, explain the
factual and legal basis for the contention.    A complete answer to this interrogatory shall include
at least the following information:   an identification of each item of alleged prior art; an
explanation of why the item is prior art to any asserted claim of a patent in suit; an
element-by-element application of each item of alleged prior art to each asserted claim; an
identification of all documents and things supporting Rush Medical's answer to this
interrogatory; and an identification of each person having information that supports Rush
Medical's answer to this interrogatory.

**RESPONSE:**

RUMC incorporates all of its objections herein.    RUMC objects based on privilege.

RUMC is investigating this interrogatory.    RUMC reserves the right to supplement this

response.

7.    Separately for each asserted claim of each patent in suit that Rush Health contends
is invalid for failure to comply with the requirements of 35 U.S.C. § 103, explain the factual and
legal basis for the contention.    A complete answer to this interrogatory shall include at least the
following information:   an identification of each item of alleged prior art, including an
explanation of why the item is prior art to any asserted claim of a patent in suit; Rush Medical's

11

contentions on the level of ordinary skill in the art at the time the inventions recited in the claims were made; Rush Medical's contentions on the scope and content of the prior art and the differences between the prior art and each asserted claim; where Rush Medical relies on combinations of items of alleged prior art, an identification of each combination (including the specific portions of the items of alleged prior art that are being combined) and an explanation of why a person skilled in the art would have made the combination at the time the patented inventions were made; Rush Medical's contentions on the presence or absence of objective indicia of non-obviousness such as commercial success, copying, long-standing problem or need, failure of others, unexpected results and skepticism regarding the patented inventions; an identification of all documents and things supporting Rush Medical's answer to this interrogatory; and an identification of each person having information that supports Rush Medical's answer to this interrogatory.

**RESPONSE:**

RUMC incorporates all of its objections herein.    RUMC objects based on privilege. RUMC is investigating this interrogatory.    RUMC reserves the right to supplement this response.

8.    Identify and describe the date(s) on which and the circumstances under which Rush Medical first became aware of U.S. Patent Application No. 08/300,379; U.S. Patent No. 5,514,319; U.S. Patent Application No. 08/342,143; U.S. Patent No. 5,597,379; U.S. Patent Application No. 08/479,363; U.S. Patent No. 5,643,272; U.S. Patent Application No. 08/603,582; U.S. Patent No. 5,810,827; U.S. Patent Application No. 10/756,817; and U.S. Patent No. 7,344,541.    A complete answer to this interrogatory shall include an identification of documents and things pertaining to the subject matter of the interrogatory and an identification of all persons having information pertaining to the subject matter of this interrogatory.

**RESPONSE:**

RUMC incorporates all of its objections herein.    RUMC objects based on privilege. RUMC had no awareness of the patents listed until the initiation of this lawsuit.

9.    Describe any action, analysis or opinion requested, considered, provided or undertaken by or for Rush Medical pertaining to the patents in suit, including, but not limited to, any attempt to avoid infringement of or design around the patents in suit.    A complete answer to this interrogatory shall include at least the following information:  a description of the action, analysis or opinion; a description of the results, if any, of the action, analysis or opinion; an identification of the dates on which any such action, analysis or opinion was requested, considered, provided or undertaken; an identification of all documents and things pertaining to the subject matter of this interrogatory; and an identification of each person having information pertaining to the subject matter of this interrogatory.

**RESPONSE:**

RUMC incorporates all of its objections herein.  RUMC objects based on privilege.

RUMC had none prior to the initiation of this suit.

10.    Separately, for each patent in suit, state Rush Medical's contentions on the issue of the amount of damages for infringement in the event the patent is held valid, enforceable and infringed, including the amount of such damages and the method of calculation.  A complete answer to this interrogatory shall include at least the following information:  an identification of all factors (including but not limited to factors set forth in the <u>Georgia Pacific</u> decision) that Rush Medical contends are relevant to the determination of a reasonable royalty in a hypothetical negotiation between Rush Medical and Hudson Surgical for a license under the patent; a description of how each such factor applies to the hypothetical negotiation; the particular terms Rush Medical would have proposed and/or accepted in the hypothetical negotiation; the amount Rush Medical contends to be a reasonable royalty; an identification of all documents and things pertaining to the subject matter of this interrogatory; and an identification of each person having information pertaining to the subject matter of this interrogatory.

**RESPONSE:**

RUMC incorporates all of its objections herein.   RUMC objects because this

interrogatory is overbroad and unduly burdensome because it purports to require RUMC to

provide information from before the filing of this lawsuit.  RUMC objects based on lack of

relevance.  RUMC objects because this interrogatory is premature.  Hudson is the plaintiff in

this action and has alleged infringement. However, Hudson has to date not provided a claim chart identifying which instruments of Zimmer for which it is alleging infringement. It is premature for RUMC to set forth damages positions when Hudson has not yet identified what is infringing.

RUMC does not itself perform any of the Accused Techniques. Therefore, RUMC cannot be liable for direct infringement.

RUMC is a related health care entity, as that term is defined in 35 U.S.C. Section 287(c). The Accused Techniques are medical activities under that same provision. Therefore, there is no remedy against RUMC even if it were to perform the Accused Techniques. Because there is no remedy, there is no case or controversy as between Hudson and RUMC relating to any alleged infringement by RUMC. There are also no damages for any period.

Hudson has not shown that RUMC was aware of the patents in suit prior to the initiation of the instant action. Hudson has not shown that it provided notice and/or marking under the patent statute. Therefore, RUMC cannot be liable for any damages stemming from before the initiation of this litigation. RUMC cannot be liable for contributory or inducing infringement because it has not been shown that RUMC was aware of the patents in suit. Therefore, the issue of damages is not relevant for any time period before the initiation of this lawsuit.

RUMC does not participate in the decision-making as to the procedure and/or devices that are used during a specific knee surgery. Individual surgeons perform the surgeries independent of RUMC. RUMC therefore cannot be liable for any type of infringement or responsible for damages. Subject to these objections, RUMC reserves the right to supplement this response.

14

11.    Identify each person Rush Medical expects to call as a witness (including both fact and expert witnesses) at any hearing or trial in this suit.  For each such person identified, state the subject matter of the testimony to be provided and identify all documents and persons consulted or to be consulted by each witness in preparation for his or her testimony.

**RESPONSE:**

RUMC incorporates all of its objections herein.    RUMC objects because this interrogatory is premature.   RUMC will identify any person as required by Federal Rule of Civil Procedure 26 or the Court's scheduling order.  RUMC reserves the right to supplement this response.

12.    Identify each patent or patent application filed, owned, controlled or licensed by or to Rush Medical that describes, covers or otherwise pertains to any Accused Instrument, any Accused Technique and/or any Accused Implant.

**RESPONSE:**

RUMC incorporates all of its objections herein.    RUMC is investigating this interrogatory.  RUMC reserves the right to supplement this response.

13.    Identify and describe each contact, communication, contract, agreement, arrangement or understanding (including but not limited to indemnification agreements and joint defense agreements) between Rush Medical and any third party, person or entity regarding Hudson Surgical, Hudson Surgical's patent rights, the patents in suit and/or this lawsuit, and identify each person having information pertaining to the subject matter of this interrogatory.

15

**RESPONSE:**

RUMC incorporates all of its objections herein. RUMC objects based on privilege. RUMC objects that the term third party is vague and lacks particularity. RUMC objects to this interrogatory as vague and overbroad, especially in regards to the meaning of "regarding Hudson Surgical, Hudson Surgical's patent rights, the patents in suit and/or this lawsuit." Without making any statement as to whether these agreements are "regarding Hudson Surgical, Hudson Surgical's patent rights, the patents in suit and/or this lawsuit," RUMC identifies two agreements that it will produce. RUMC will identify the production numbers when they are made available. The agreements speak for themselves. RUMC reserves the right to supplement this response.

14. Identify and describe each contact, communication, contract, agreement, arrangement or understanding between Rush Medical and any third party, person or entity (including, but not limited to, Zimmer Holdings, Inc., Zimmer, Inc., hospitals, health care providers, medical facilities and physicians) pertaining to the Accused Instruments, the Accused Techniques and/or the Accused Implants and identify each person having information pertaining to the subject matter of this interrogatory.

**RESPONSE:**

RUMC incorporates all of its objections herein. RUMC incorporates its response to Interrogatory No. 13 herein. RUMC reserves the right to supplement this response.

15. Describe the dates, locations and content [sic] any training pertaining to the Accused Instruments, the Accused Techniques and/or the Accused Implants provided by, for or at Rush Medical, and identify all documents and things pertaining to the subject matter of this interrogatory and each person having information pertaining to the subject matter of this

16

interrogatory.

**RESPONSE:**

RUMC incorporates all of its objections herein. RUMC is investigating this interrogatory. RUMC reserves the right to supplement this response.


Dated: June 16, 2008.                     For the objections,


                                          *Brian Sodikoff*
                                          _____
                                          Robert B. Breisblatt
                                          Sheldon T. Zenner
                                          Brian J. Sodikoff
                                          Thomas J. Maas
                                          KATTEN MUCHIN ROSENMAN LLP
                                          525 West Monroe Street
                                          Chicago, Illinois   60661-3693
                                          (312) 902-5462
                                          brian.sodikoff@kattenlaw.com

17

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served on the following via U.S. Mail, with a courtesy copy via email, on:

Christopher J. Lee (clee@nshn.com)
David J. Sheikh (shiekh@nshn.com)
Richard B. Megley, Jr. (megleyjr@nshn.com)
NIRO, SCAVONE, HALLER & NIRO
181 W. Madison Street, Suite 4600
Chicago, IL 60602


Christina L. Brown (brownc@mbhb.com)
Michael H. Baniak (baniak@mbhb.com)
Gary E. Hood (hood@mbhb.com)
MCDONNELL BOEHNEN HULBERT & BERGHOFF, LLP
300 S. Wacker Drive, Suite 3100
Chicago, IL 60606

6-16-08

Brian J. Sodikoff
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois   60661-3693
(312) 902-5462
brian.sodikoff@kattenlaw.com

18

50488018

# EXHIBIT E

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| HUDSON SURGICAL DESIGN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 08 C 1566 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| ZIMMER HOLDINGS, INC., ZIMMER, | ) | Magistrate Judge Nan R. Nolan |
| INC., RUSH SYSTEM FOR HEALTH | ) | |
| and RUSH UNIVERSITY MEDICAL | ) | |
| CENTER, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### Rush University Medical Center's
### Response to Hudson's First Set of Requests for Production

### OBJECTIONS

1.      Rush University Medical Center ("RUMC") objects to the definition of "Rush Medical" as provided, and does not respond to any of the requests for production pursuant to that definition.   In its responses, any reference to Rush Medical or RUMC means Rush University Medical Center and only Rush University Medical Center.

2.      RUMC objects to the definition of "Rush Health" as provided, and does not respond to any of the requests for production pursuant to that definition.   In its responses, any reference to Rush Health or RSH means Rush System for Health and only Rush System for Health.

3.      RUMC objects to the definition of the term "Accused Instruments" as being vague, ambiguous, and potentially requiring legal conclusions to be determined, especially as that definition, as stated in the requests for production, is "not limited to" anything.   In responding to these requests for production, RUMC reads "Accused Instruments" as "NexGen Complete Knee

Solution Quad-Sparing Instrumentation."

4.      RUMC objects to the definition of the term "Accused Techniques" at least on the same bases as it objects to the term "Accused Instruments" as the former definition incorporates the latter.   RUMC further objects that the phraseology "minimally invasive quadriceps-sparing surgical techniques for total knee replacement" is vague and overbroad.

5.      RUMC objects to the definition of the term "Accused Implants" at least on the same bases as it objects to the terms "Accused Instruments" and "Accused Techniques" as the first definition incorporates the latter two.

6.      RUMC objects to the definitions of the terms "persons" and "acts of a person" and does not respond pursuant to those definitions but rather pursuant to normal usage.

7.      RUMC objects to Plaintiff's First Set of Requests for production on the grounds and to the extent they seek information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege or immunity.    Nothing contained in these objections and responses is intended to be, or in any way constitutes, a waiver of any such applicable privilege or immunity.

8.      RUMC objects to Plaintiff's First Set of Requests for Production on the grounds and to the extent that they seek to impose any obligation on RUMC in addition to or different from those imposed by the Federal Rules of Civil Procedure, the Local Civil Rules for the Northern District of Illinois and/or any Order of the Court or agreement between the parties, and limits its responses to that required.

9.      RUMC objects to Plaintiff's First Set of Requests for Production on the grounds and to the extent that they seek to impose any obligation on RUMC to disclose information not in its possession, custody or control.

10.    RUMC objects to Plaintiff's First Set of Requests for Production on the grounds and to the extent they are overly broad, unduly burdensome, not relevant to any claims or defenses in this action, not reasonably calculated to lead to the discovery of admissible information, and seek material not within the permissible scope of discovery.

11.    RUMC objects to Plaintiff's First Set of Requests for Production on the grounds and to the extent they prematurely seek information and contentions prior to the completion of the discovery necessary for RUMC to fully respond.

12.    To the extent not specifically objected to above, RUMC objects to Plaintiff's definitions on the grounds and to the extent they purport to alter the plain meaning or scope of any request for production, on the grounds that such alteration renders the request for production vague, ambiguous, unduly broad and uncertain.

13.    RUMC does not concede the relevance or materiality of the subject matter of any of these requests for production or RUMC's Responses thereto.  Further, RUMC does not concede the relevancy, materiality or admissibility of any particular document identified or produced in response to any of Plaintiff's requests for production.  RUMC reserves the right to object to any further discovery or to the admissibility of any matter or document at trial.

14.    RUMC objects to requests for production as vague, overbroad, and unduly burdensome to the extent that their temporal scope is not limited to after the filing of this action because Hudson has not established that it states a claim for patent infringement and/or damages for any time before the filing of this action, and therefore RUMC limits, where applicable, its response to documents after the filing of this action.

15.    The discovery period established by the Court is still ongoing.  RUMC responses are based on its current understanding and reserves the right to supplement and/or amend these

3

responses.

## REQUESTS FOR DOCUMENTS AND THINGS

**REQUEST NO. 1:**

All documents and things requested by any interrogatory or other discovery request served by plaintiff, and/or identified in answer to, reviewed, consulted or relied on by defendant in response to any such interrogatory or other discovery request.

**RESPONSE NO. 1:**

RUMC incorporates all of its objections herein.  RUMC incorporates its objections to each specific interrogatory and other discovery request.  Subject to those objections, RUMC will produce documents in its custody, possession or control that RUMC identifies in any interrogatory response.

**REQUEST NO. 2:**

Documents and things sufficient to show defendant's policies, practices, actions and/or efforts to preserve documents and things pertaining to the subject matter of this suit.

**RESPONSE NO. 2:**

RUMC incorporates all of its objections herein.  RUMC objects based on privilege. RUMC reserves the right to supplement this response.

**REQUEST NO. 3:**

All documents and things that defendant may use in support of its contentions, defenses and/or counterclaims in this suit.

**RESPONSE NO. 3:**

RUMC incorporates all of its objections herein.  RUMC objects that this request is premature.  RUMC objects that this request is overbroad and vague, and does not provide RUMC with sufficient notice to determine the documents sought.  RUMC will produce documents as required by Federal Rule of Civil Procedure 26.  Subject to those objections, RUMC will produce documents it intends to use in support of its contentions, defenses and/or

counterclaims in this suit.   RUMC reserves the right to supplement this response.

**REQUEST NO. 4:**

All documents and things pertaining to a contention, defense or counterclaim by defendant that any claim of a patent in suit is not infringed.

**RESPONSE NO. 4:**

RUMC incorporates all of its objections herein.   RUMC objects that this request is premature.   RUMC objects that this request is overbroad and vague, and does not provide RUMC with sufficient notice to determine the documents sought.   RUMC will produce documents as required by Federal Rule of Civil Procedure 26.   Subject to those objections, RUMC will produce documents it intends to use in support of its contention of non-infringement. RUMC reserves the right to supplement this response.

**REQUEST NO. 5:**

All documents and things pertaining to a contention, defense or counterclaim by defendant that any claim of a patent in suit is invalid.

**RESPONSE NO. 5:**

RUMC incorporates all of its objections herein.   RUMC objects that this request is premature.   RUMC objects that this request is overbroad and vague, and does not provide RUMC with sufficient notice to determine the documents sought.   RUMC will produce documents as required by Federal Rule of Civil Procedure 26.   Subject to those objections, RUMC will produce documents it intends to use in support of its contention of invalidity. RUMC reserves the right to supplement this response.

**REQUEST NO. 6:**

All documents and things pertaining to a contention, defense or counterclaim that any claim of a patent in suit is unenforceable.

**RESPONSE NO. 6:**

RUMC incorporates all of its objections herein. RUMC objects that this request is premature. RUMC objects that this request is overbroad and vague, and does not provide RUMC with sufficient notice to determine the documents sought. RUMC will produce documents as required by Federal Rule of Civil Procedure 26. Subject to those objections, RUMC will produce documents it intends to use in support of any contention of unenforceability. RUMC reserves the right to supplement this response.

**REQUEST NO. 7:**

All documents and things pertaining to plaintiff's allegations that defendant has infringed the patents in suit.

**RESPONSE NO. 7:**

RUMC incorporates all of its objections herein. RUMC objects that this request is premature. RUMC objects that this request is overbroad and vague, and does not provide RUMC with sufficient notice to determine the documents sought. RUMC will produce documents as required by Federal Rule of Civil Procedure 26. Subject to those objections, RUMC will produce documents it intends to use in support of its contention of non-infringement. RUMC reserves the right to supplement this response.

**REQUEST NO. 8:**

All documents and things pertaining to plaintiff's allegations that defendant has willfully infringed the patents in suit.

**RESPONSE NO. 8:**

RUMC incorporates all of its objections herein. RUMC objects that this request is premature. RUMC objects that this request is overbroad and vague, and does not provide RUMC with sufficient notice to determine the documents sought. RUMC will produce documents as required by Federal Rule of Civil Procedure 26. Subject to those objections,

RUMC will produce documents it intends to use in support of its contentions regarding willfulness.   RUMC reserves the right to supplement this response.

**REQUEST NO. 9:**

All documents and things pertaining to plaintiff's allegations that it is entitled to monetary damages for infringement of the patents in suit.

**RESPONSE NO. 9:**

RUMC incorporates all of its objections herein.   RUMC objects that this request is premature.   RUMC objects that this request is overbroad and vague, and does not provide RUMC with sufficient notice to determine the documents sought.   RUMC objects because Plaintiff has not provided a factual basis for its allegations of an entitlement to monetary damages, and so it is not reasonable for RUMC to determine the scope of this request or respond. RUMC will produce documents as required by Federal Rule of Civil Procedure 26.   Subject to those objections, RUMC will produce documents it intends to use in support of its contention that Plaintiff is not entitled to monetary damages.   RUMC reserves the right to supplement this response.

**REQUEST NO. 10:**

All documents and things that defendant may use for any purpose at any deposition, hearing or trial in this suit.

**RESPONSE NO. 10:**

RUMC incorporates all of its objections herein.   RUMC objects that this request is premature.   RUMC objects that this request is overbroad and vague, and does not provide RUMC with sufficient notice to determine the documents sought.   RUMC will produce documents as required by Federal Rule of Civil Procedure 26.   Subject to those objections, RUMC will produce documents it intends to use in support of its contentions, defenses and/or

7

counterclaims in this suit.   RUMC reserves the right to supplement this response.

**REQUEST NO. 11:**

All documents and things provided to and/or reviewed by any expert retained by defendant in connection with this suit or the subject matter of this suit.

**RESPONSE NO. 11:**

RUMC incorporates all of its objections herein.   RUMC objects that this request is premature.   RUMC objects that this request is overbroad and vague, and does not provide RUMC with sufficient notice to determine the documents sought.   RUMC will produce documents as required by Federal Rule of Civil Procedure 26.   Subject to those objections, RUMC will produce documents it intends to use in support of its contentions, defenses and/or counterclaims in this suit.   RUMC reserves the right to supplement this response.

**REQUEST NO. 12:**

All documents and things constituting or pertaining to the Accused Techniques, the Accused Instruments and/or the Accused Implants including, but not limited to, the "Zimmer Institute Surgical Protocol Binder:  Zimmer MIS Quad-Sparing Total Knee Surgical Technique for NexGen Complete Knee Solution."

**RESPONSE NO. 12:**

RUMC incorporates all of its objections herein.   RUMC objects that this request is premature.   RUMC objects that this request seeks information in the public domain that is equally accessible to Hudson as it is to RUMC.   In fact, it appears as Hudson has already produced the protocol binder.   RUMC objects that this request is overbroad.   It is not temporally limited, and "all documents and things" relating to such broad categories does not provide RUMC with sufficient notice in determining documents that might be responsive to this request.   RUMC reserves the right to supplement this response.

8

**REQUEST NO. 13:**

Documents and things sufficient to show when, where and by whom the Accused Techniques have been used.

**RESPONSE NO. 13:**

RUMC incorporates all of its objections herein. RUMC objects based on overbreadth. RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement. Without that information, RUMC does not have sufficient notice of the documents that might be responsive. Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence. For example, Hudson has not identified with any particularity what Hudson claims infringes the '272 patent or the '541 patent. The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC to search for unspecified procedures from prior to the issuance of that patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the '272 patent. RUMC objects because this document request may seek documents that may be proprietary to other persons. RUMC objects because these documents may be ascertainable from other persons, and production by RUMC would be duplicative. Subject to those objections, RUMC is investigating for documents since the issuance of the '541 patent. RUMC reserves the right to supplement this response.

**REQUEST NO. 14:**

Documents and things sufficient to show when, where and by whom the Accused Instruments have been used.

**RESPONSE NO. 14:**

RUMC incorporates all of its objections herein. RUMC objects based on overbreadth.

9

RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement. Without that information, RUMC does not have sufficient notice of the documents that might be responsive. Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence. For example, Hudson has not identified with any particularity what Hudson claims infringes the '272 patent or the '541 patent. The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC to search for unspecified procedures from prior to the issuance of that patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the '272 patent. RUMC objects because this document request may seek documents that may be proprietary to other persons. RUMC objects because these documents may be ascertainable from other persons, and production by RUMC would be duplicative. Subject to those objections, RUMC is investigating for documents since the issuance of the '541 patent. RUMC reserves the right to supplement this response.

**REQUEST NO. 15:**

Documents and things sufficient to show the number of Accused Instruments that have been provided to defendant and when such instruments were provided.

**RESPONSE NO. 15:**

RUMC incorporates all of its objections herein. RUMC objects based on overbreadth. RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement. Without that information, RUMC does not have sufficient notice of the documents that might be responsive. Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence. For example, Hudson has not identified with any particularity what

Hudson claims infringes the '272 patent or the '541 patent. The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC to search for unspecified procedures from prior to the issuance of that patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the '272 patent. RUMC objects because this document request may seek documents that may be proprietary to other persons. RUMC objects because these documents may be ascertainable from other persons, and production by RUMC would be duplicative. Subject to those objections, RUMC is investigating for documents since the issuance of the '541 patent. RUMC reserves the right to supplement this response.

**REQUEST NO. 16:**

Documents and things sufficient to show who was and/or is in possession of the Accused Instruments.

**RESPONSE NO. 16:**

RUMC incorporates all of its objections herein. RUMC objects based on overbreadth. RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement. Without that information, RUMC does not have sufficient notice of the documents that might be responsive. Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence. For example, Hudson has not identified with any particularity what Hudson claims infringes the '272 patent or the '541 patent. The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC to search for unspecified procedures from prior to the issuance of that patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the '272 patent. RUMC objects because this document request may seek documents that may be proprietary to other

11

persons. RUMC objects because these documents may be ascertainable from other persons, and production by RUMC would be duplicative. Subject to those objections, RUMC is investigating for documents since the issuance of the '541 patent. RUMC reserves the right to supplement this response.

**REQUEST NO. 17:**

All documents and things constituting and/or pertaining to training for use of the Accused Techniques, the Accused Instruments and/or the Accused Implants including, but not limited to, Zimmer Institute training materials.

**RESPONSE NO. 17:**

RUMC incorporates all of its objections herein. RUMC objects based on overbreadth. RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement. Without that information, RUMC does not have sufficient notice of the documents that might be responsive. Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence. For example, Hudson has not identified with any particularity what Hudson claims infringes the '272 patent or the '541 patent. The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC to search for unspecified procedures from prior to the issuance of that patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the '272 patent. RUMC objects because this document request may seek documents that may be proprietary to other persons. RUMC objects because these documents may be ascertainable from other persons, and production by RUMC would be duplicative. Subject to those objections, RUMC is investigating for documents since the issuance of the '541 patent. RUMC reserves the right to supplement this response.

12

**REQUEST NO. 18:**

Documents and things sufficient to show the dates on which and the circumstances under which the Accused Techniques, the Accused Instruments and the Accused Implants were conceived, designed, developed, made, used, offered for sale, sold provided, supplied and/or distributed.

**RESPONSE NO. 18:**

RUMC incorporates all of its objections herein.  RUMC objects based on overbreadth.

RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants

that it is accusing of infringement.  Without that information, RUMC does not have sufficient

notice of the documents that might be responsive.  Further, it would be an undue burden on

RUMC to try to search for documents that may or may not be calculated to lead to the discovery

of admissible evidence.  For example, Hudson has not identified with any particularity what

Hudson claims infringes the '272 patent or the '541 patent.  The '541 patent just issued on

March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC

to search for unspecified procedures from prior to the issuance of that patent if Hudson is

alleging that a certain procedure only infringes the '541 patent, and not the '272 patent.  RUMC

objects because documents responsive to this request may not be in the possession, custody, or

control of RUMC.  RUMC objects because this document request may seek documents that may

be proprietary to other persons.  RUMC objects because these documents may be ascertainable

from other persons, and production by RUMC would be duplicative.  RUMC reserves the right

to supplement this response.

**REQUEST NO. 19:**

Documents and things sufficient to show the design, function and operation of the Accused Instruments.

**RESPONSE NO. 19:**

RUMC incorporates all of its objections herein. RUMC objects based on overbreadth. RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement. Without that information, RUMC does not have sufficient notice of the documents that might be responsive. Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence. For example, Hudson has not identified with any particularity what Hudson claims infringes the '272 patent or the '541 patent. The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC to search for unspecified procedures from prior to the issuance of that patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the '272 patent. RUMC objects because documents responsive to this request are likely to be available from persons other than RUMC, and to the extent that RUMC is in the possession, custody, or control of any responsive documents, those documents would be duplicative. RUMC objects because this document request may seek documents that may be proprietary to other persons. RUMC reserves the right to supplement this response.

**REQUEST NO. 20:**

All documents constituting or pertaining to agreements or contracts between defendant and any third party pertaining to the Accused Techniques, the Accused Instruments and/or the Accused Implants.

**RESPONSE NO. 20:**

RUMC incorporates all of its objections herein. RUMC objects based on overbreadth. RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement. Without that information, RUMC does not have sufficient notice of the documents that might be responsive. Further, it would be an undue burden on

14

RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence. For example, Hudson has not identified with any particularity what Hudson claims infringes the '272 patent or the '541 patent. The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC to search for unspecified procedures from prior to the issuance of that patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the '272 patent. RUMC objects because documents responsive to this request are likely to be available from persons other than RUMC, and to the extent that RUMC is in the possession, custody, or control of any responsive documents, those documents would be duplicative. RUMC objects because this document request may seek documents that may be proprietary to other persons. RUMC is investigating for documents responsive to this request since the issuance of the '541 patent. RUMC reserves the right to supplement this response.

**REQUEST NO. 21:**

Documents sufficient to show the dates, the amounts and/or the purposes of all payments made by defendant to any third party or by any third party to defendant pertaining to the Accused Techniques, the Accused Instruments and/or the Accused Implants.

**RESPONSE NO. 21:**

RUMC incorporates all of its objections herein. RUMC objects based on overbreadth. RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement. Without that information, RUMC does not have sufficient notice of the documents that might be responsive. Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence. For example, Hudson has not identified with any particularity what Hudson claims infringes the '272 patent or the '541 patent. The '541 patent just issued on

March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC

to search for unspecified procedures from prior to the issuance of that patent if Hudson is

alleging that a certain procedure only infringes the '541 patent, and not the '272 patent.   RUMC

objects because documents responsive to this request are likely to be available from persons

other than RUMC, and to the extent that RUMC is in the possession, custody, or control of any

responsive documents, those documents would be duplicative.   RUMC objects because this

document request may seek documents that may be proprietary to other persons.   RUMC is

investigating for documents responsive to this request since the issuance of the '541 patent.

RUMC reserves the right to supplement this response.

**REQUEST NO. 22:**

Documents sufficient to identify all physicians and other health care providers who have agreements or contracts with defendant pertaining to the Accused Techniques, the Accused Instruments and/or the Accused Implants and the terms and conditions of these agreements or contracts.

**RESPONSE NO. 22:**

RUMC incorporates all of its objections herein.   RUMC objects based on overbreadth.

RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants

that it is accusing of infringement.   Without that information, RUMC does not have sufficient

notice of the documents that might be responsive.   Further, it would be an undue burden on

RUMC to try to search for documents that may or may not be calculated to lead to the discovery

of admissible evidence.   For example, Hudson has not identified with any particularity what

Hudson claims infringes the '272 patent or the '541 patent.   The '541 patent just issued on

March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC

to search for unspecified procedures from prior to the issuance of that patent if Hudson is

alleging that a certain procedure only infringes the '541 patent, and not the '272 patent.   RUMC

objects because documents responsive to this request are likely to be available from persons other than RUMC, and to the extent that RUMC is in the possession, custody, or control of any responsive documents, those documents would be duplicative. RUMC objects because this document request may seek documents that may be proprietary to other persons. RUMC is investigating for documents responsive to this request since the issuance of the '541 patent. RUMC reserves the right to supplement this response.

**REQUEST NO. 23:**

Documents and things sufficient to show all revenues of defendant pertaining to the Accused Techniques, the Accused Instruments and/or the Accused Implants.

**RESPONSE NO. 23:**

RUMC incorporates all of its objections herein. RUMC objects based on overbreadth. RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement. Without that information, RUMC does not have sufficient notice of the documents that might be responsive. Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence. For example, Hudson has not identified with any particularity what Hudson claims infringes the '272 patent or the '541 patent. The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC to search for unspecified procedures from prior to the issuance of that patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the '272 patent. Further, Hudson has not specified when, if ever, it provided RUMC with notice of the patents-in-suit before the initiation of this action. RUMC objects because documents responsive to this request are likely to be available from persons other than RUMC, and to the extent that RUMC is in the possession, custody, or control of any responsive documents, those documents would be

duplicative. RUMC objects because this document request may seek documents that may be proprietary to other persons. RUMC is investigating for documents responsive to this request since the issuance of the '541 patent. RUMC reserves the right to supplement this response.

**REQUEST NO. 24:**

Documents and things sufficient to show all profits (gross, operating and incremental) of defendant pertaining to the Accused Techniques, the Accused Instruments and/or the Accused Implants.

**RESPONSE NO. 24:**

RUMC incorporates all of its objections herein. RUMC objects based on overbreadth. RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement. Without that information, RUMC does not have sufficient notice of the documents that might be responsive. Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence. For example, Hudson has not identified with any particularity what Hudson claims infringes the '272 patent or the '541 patent. The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC to search for unspecified procedures from prior to the issuance of that patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the '272 patent. Further, Hudson has not specified when, if ever, it provided RUMC with notice of the patents-in-suit before the initiation of this action. RUMC objects because documents responsive to this request are likely to be available from persons other than RUMC, and to the extent that RUMC is in the possession, custody, or control of any responsive documents, those documents would be duplicative. RUMC objects because this document request may seek documents that may be proprietary to other persons. RUMC objects because Hudson can have no remedy against

RUMC, including damages, pursuant to 35 U.S.C. Section 287(c).  RUMC is investigating for documents responsive to this request since the issuance of the '541 patent.  RUMC reserves the right to supplement this response.

**REQUEST NO. 25:**

Documents and things sufficient to show all consideration received by defendant pertaining to the Accused Techniques, the Accused Instruments and/or the Accused Implants.

**RESPONSE NO. 25:**

RUMC incorporates all of its objections herein.  RUMC objects based on overbreadth. RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement.  Without that information, RUMC does not have sufficient notice of the documents that might be responsive.  Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence.  For example, Hudson has not identified with any particularity what Hudson claims infringes the '272 patent or the '541 patent.  The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC to search for unspecified procedures from prior to the issuance of that patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the '272 patent.  Further, Hudson has not specified when, if ever, it provided RUMC with notice of the patents-in-suit before the initiation of this action.  RUMC objects because documents responsive to this request are likely to be available from persons other than RUMC, and to the extent that RUMC is in the possession, custody, or control of any responsive documents, those documents would be duplicative.  RUMC objects because this document request may seek documents that may be proprietary to other persons.  RUMC objects because Hudson can have no remedy against RUMC, including damages, pursuant to 35 U.S.C. Section 287(c).  RUMC is investigating for

19

documents responsive to this request since the issuance of the '541 patent. RUMC reserves the right to supplement this response.

**REQUEST NO. 26:**

All documents and things pertaining to defendant's knowledge of the patents in suit.

**RESPONSE NO. 26:**

RUMC incorporates all of its objections herein. RUMC objects based on privilege. RUMC is investigating to respond to this request. RUMC reserves the right to supplement this response.

**REQUEST NO. 27:**

All documents and things pertaining to defendant's awareness of plaintiff.

**RESPONSE NO. 27:**

RUMC incorporates all of its objections herein. RUMC objects based on privilege. RUMC is investigating to respond to this request. RUMC reserves the right to supplement this response.

**REQUEST NO. 28:**

All documents and things pertaining to defendant's knowledge of plaintiff's patents and/or patent applications.

**RESPONSE NO. 28:**

RUMC incorporates all of its objections herein. RUMC objects based on privilege. RUMC is investigating to respond to this request. RUMC reserves the right to supplement this response.

**REQUEST NO. 29:**

All communications with or pertaining to plaintiff.

**RESPONSE NO. 29:**

RUMC incorporates all of its objections herein.   RUMC objects based on privilege.
RUMC objects because this interrogatory is overbroad and vague and not likely to lead to the
discovery of admissible evidence.   RUMC reserves the right to supplement this response.

**REQUEST NO. 30:**

All documents and things constituting and/or pertaining to opinions, analyses, reports,
studies or the like pertaining to the '272 patent.

**RESPONSE NO. 30:**

RUMC incorporates all of its objections herein.   RUMC objects based on privilege.
RUMC is investigating to respond to this request.   RUMC reserves the right to supplement this
response.

**REQUEST NO. 31:**

All documents and things constituting and/or pertaining to opinions, analyses, reports,
studies or the like pertaining to the '541 patent.

**RESPONSE NO. 31:**

RUMC incorporates all of its objections herein.   RUMC objects based on privilege.
RUMC is investigating to respond to this request.   RUMC reserves the right to supplement this
response.

**REQUEST NO. 32:**

All documents and thing constituting and/or pertaining to opinions, analyses, reports,
studies or the like pertaining to any patent or patent application owned or controlled by plaintiff.

**RESPONSE NO. 32:**

RUMC incorporates all of its objections herein.   RUMC objects based on privilege.
RUMC objects because this request is not likely to lead to the discovery of admissible evidence,
inasmuch as it would apply to patents not at issue in this litigation.   RUMC reserves the right to
supplement this response.

**REQUEST NO. 33:**

All documents and things constituting and/or pertaining to patents or patent applications owned by, controlled by or licensed by or to defendant pertaining to the Accused Techniques, the Accused Instruments and/or the Accused Implants including, but not limited to, U.S. Patent Application No. 10/357,282, entitled "Apparatus for Knee Surgery and Method of Use," and U.S. Patent Application No. 11/343,849, entitled "Tibial Cut Guide Assembly Having Rotatable Cut Guide Body."

**RESPONSE NO. 33:**

RUMC incorporates all of its objections herein. RUMC objects based on privilege. RUMC objects because this request is not likely to lead to the discovery of admissible evidence, inasmuch as it would apply to patents not at issue in this litigation. RUMC reserves the right to supplement this response.

**REQUEST NO. 34:**

All license agreements pertaining to the Accused Techniques, the Accused Instruments and/or the Accused Implants.

**RESPONSE NO. 34:**

RUMC incorporates all of its objections herein. RUMC objects based on privilege. RUMC objects because it is not clear what this discovery request is seeking. RUMC is not currently aware of any license agreement with Hudson. RUMC reserves the right to supplement this response.

**REQUEST NO. 35:**

Documents and things sufficient to identify any litigation (other than this suit) pertaining to the Accused Techniques, the Accused Instruments and/or the Accused Implants.

**RESPONSE NO. 35:**

RUMC incorporates all of its objections herein. RUMC objects based on privilege. RUMC is not currently aware of any such documents. RUMC reserves the right to supplement this response.

**REQUEST NO. 36:**

Documents and things pertaining to claims for patent infringement (other than in this suit) based on the Accused Techniques, the Accused Instruments and/or the Accused Implants.

**RESPONSE NO. 36:**

RUMC incorporates all of its objections herein.   RUMC objects based on privilege.

RUMC is not currently aware of any such documents.   RUMC reserves the right to supplement

this response.

**REQUEST NO. 37:**

Documents and things sufficient to show defendant's past and present organizational structure from 2002 to the present including, without limitation, its relationship with Rush Health, Midwest Orthopaedics at Rush, LLC and/or the Zimmer Institute.

**RESPONSE NO. 37:**

RUMC incorporates all of its objections herein.   RUMC objects based on privilege.

RUMC objects based on overbreadth.   RUMC objects because Hudson has yet to identify the

specific techniques, devices, and implants that it is accusing of infringement.   Further, it would

be an undue burden on RUMC to try to search for documents that may or may not be calculated

to lead to the discovery of admissible evidence.   For example, Hudson has not identified with

any particularity what Hudson claims infringes the '272 patent or the '541 patent.   The '541

patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of

relevance, for RUMC to search for unspecified procedures from prior to the issuance of that

patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the

'272 patent.    As another example, Hudson may be asserting infringement only against

techniques, devices, and implants that were not in practice in 2002.   In such a case, documents

requested here would not be reasonably calculated to lead to the discovery of admissible

evidence. Further, Hudson has not specified when, if ever, it provided RUMC with notice of the

23

patents-in-suit before the initiation of this action.  RUMC objects because documents responsive to this request are likely to be available from persons other than RUMC, and to the extent that RUMC is in the possession, custody, or control of any responsive documents, those documents would be duplicative.  RUMC objects because this document request may seek documents that may be proprietary to other persons.  RUMC objects because Hudson can have no remedy against RUMC, including damages, pursuant to 35 U.S.C. Section 287(c).  RUMC is investigating for documents responsive to this request since the issuance of the '541 patent. RUMC reserves the right to supplement this response.

**REQUEST NO. 38:**

All documents and things constituting and/or pertaining to prior art that defendant may rely on for any purpose in this suit.

**RESPONSE NO. 38:**

RUMC is investigating its response and will produce all prior art in due course.

**REQUEST NO. 39:**

All documents and things constituting and/or pertaining to any public use, public knowledge, offer for sale and/or sale of a product or process that defendant may rely on for any purpose in this suit.

**RESPONSE NO. 39:**

RUMC is investigating its response and will produce responsive documents in its possession, custody or control in due course.

**REQUEST NO. 40:**

All documents and things constituting and/or pertaining to commercial success, copying, long felt need, failure of others and skepticism of the inventions described in the patents in suit.

**RESPONSE NO. 40:**

RUMC objects that this request is vague and overbroad.  RUMC objects that it lacks the particularity necessary to provide RUMC with proper notice of the documents requested.

RUMC will produce documents it intends to rely on in support of its claim of obviousness in due

course.

**REQUEST NO. 41:**

All documents and things constituting and/or pertaining to commercial success, copying, long felt need, failure of others and skepticism of the Accused Techniques, the Accused Instruments and/or the Accused Implants.

**RESPONSE NO. 41:**

RUMC objects that this request is vague and overbroad.  RUMC objects that it lacks the

particularity necessary to provide RUMC with proper notice of the documents requested.

RUMC will produce documents it intends to rely on in support of its claim of obviousness in due

course.

**REQUEST NO. 42:**

Documents and things sufficient to show the number of Accused Implants made, sold, supplied, provided and/or distributed by or for defendant, the dates on which the Accused Implants were made, sold, supplied, provided and/or distributed and the terms and conditions of sale, supply, provision and/or distribution.

**RESPONSE NO. 42:**

RUMC incorporates all of its objections herein.  RUMC objects based on privilege.

RUMC objects based on overbreadth.  RUMC objects because Hudson has yet to identify the

specific techniques, devices, and implants that it is accusing of infringement.  Further, it would

be an undue burden on RUMC to try to search for documents that may or may not be calculated

to lead to the discovery of admissible evidence.  For example, Hudson has not identified with

any particularity what Hudson claims infringes the '272 patent or the '541 patent.  The '541

patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of

relevance, for RUMC to search for unspecified procedures from prior to the issuance of that

patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the

'272 patent.   As another example, Hudson may be asserting infringement only against techniques, devices, and implants that were not in practice in 2002.   In such a case, documents requested here would not be reasonably calculated to lead to the discovery of admissible evidence. Further, Hudson has not specified when, if ever, it provided RUMC with notice of the patents-in-suit before the initiation of this action.   RUMC objects because documents responsive to this request are likely to be available from persons other than RUMC, and to the extent that RUMC is in the possession, custody, or control of any responsive documents, those documents would be duplicative.   RUMC objects because this document request may seek documents that may be proprietary to other persons.   RUMC objects because Hudson can have no remedy against RUMC, including damages, pursuant to 35 U.S.C. Section 287(c).   RUMC is investigating for documents responsive to this request since the issuance of the '541 patent. RUMC reserves the right to supplement this response.

**REQUEST NO. 43:**

Documents and things sufficient to show the number of Accused Instruments made, sold, supplied, provided and/or distributed by or for defendant, the dates on which the Accused Implants were made, sold, supplied, provided and/or distributed and the terms and conditions of sale, supply, provision and/or distribution.

**RESPONSE NO. 43:**

RUMC incorporates all of its objections herein.   RUMC objects based on privilege. RUMC objects based on overbreadth.  RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement.   Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence.   For example, Hudson has not identified with any particularity what Hudson claims infringes the '272 patent or the '541 patent.   The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of

relevance, for RUMC to search for unspecified procedures from prior to the issuance of that patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the '272 patent.    As another example, Hudson may be asserting infringement only against techniques, devices, and implants that were not in practice in 2002.  In such a case, documents requested here would not be reasonably calculated to lead to the discovery of admissible evidence. Further, Hudson has not specified when, if ever, it provided RUMC with notice of the patents-in-suit before the initiation of this action.  RUMC objects because documents responsive to this request are likely to be available from persons other than RUMC, and to the extent that RUMC is in the possession, custody, or control of any responsive documents, those documents would be duplicative.  RUMC objects because this document request may seek documents that may be proprietary to other persons.  RUMC objects because Hudson can have no remedy against RUMC, including damages, pursuant to 35 U.S.C. Section 287(c).  RUMC is investigating for documents responsive to this request since the issuance of the '541 patent. RUMC reserves the right to supplement this response.

**REQUEST NO. 44:**

All documents and things constituting and/or pertaining to statements by third parties (including, but not limited to, actual or potential witnesses) pertaining to this suit or the subject matter of this suit.

**RESPONSE NO. 44:**

RUMC incorporates its objections herein.  RUMC objects based on privilege.  RUMC objects based on lack of particularity which does not provide RUMC with reasonable notice of the documents sought.  RUMC objects based on relevance.  RUMC reserves the right to supplement this response.

**REQUEST NO. 45:**

All documents constituting and/or pertaining to submissions by or for defendant to the Food and Drug Administration pertaining to the Accused Techniques, the Accused Instruments and/or the Accused Implants.

**RESPONSE NO. 45:**

RUMC incorporates its objections herein.　RUMC objects based on privilege.　RUMC is not currently aware of such documents.　RUMC reserves the right to supplement this response.

**REQUEST NO. 46:**

All documents and things pertaining to the function, operation and/or marketing of the Accused Techniques, the Accused Instruments and/or the Accused Implants.

**RESPONSE NO. 46:**

RUMC incorporates all of its objections herein.　RUMC objects based on privilege. RUMC objects based on overbreadth.　RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement.　Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence.　For example, Hudson has not identified with any particularity what Hudson claims infringes the '272 patent or the '541 patent.　The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC to search for unspecified procedures from prior to the issuance of that patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the '272 patent.　As another example, Hudson may be asserting infringement only against techniques, devices, and implants that were not in practice in 2002.　In such a case, documents requested here would not be reasonably calculated to lead to the discovery of admissible evidence. Further, Hudson has not specified when, if ever, it provided RUMC with notice of the patents-in-suit before the initiation of this action.　RUMC objects because documents responsive

28

to this request are likely to be available from persons other than RUMC, and to the extent that

RUMC is in the possession, custody, or control of any responsive documents, those documents

would be duplicative. RUMC objects because this document request may seek documents that

may be proprietary to other persons. RUMC objects because Hudson can have no remedy

against RUMC, including damages, pursuant to 35 U.S.C. Section 287(c). RUMC is

investigating for documents responsive to this request since the issuance of the '541 patent.

RUMC reserves the right to supplement this response.

**REQUEST NO. 47:**

All documents and things pertaining to praise, criticism or commentary on or about the
Accused Techniques, the Accused Instruments and/or the Accused Implants including, but not
limited to, publications, articles, press releases, advertisements, books, correspondence,
statements and testimonials.

**RESPONSE NO. 47:**

RUMC incorporates all of its objections herein. RUMC objects based on privilege.

RUMC objects based on overbreadth. RUMC objects because Hudson has yet to identify the

specific techniques, devices, and implants that it is accusing of infringement. Further, it would

be an undue burden on RUMC to try to search for documents that may or may not be calculated

to lead to the discovery of admissible evidence. For example, Hudson has not identified with

any particularity what Hudson claims infringes the '272 patent or the '541 patent. The '541

patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of

relevance, for RUMC to search for unspecified procedures from prior to the issuance of that

patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the

'272 patent. As another example, Hudson may be asserting infringement only against

techniques, devices, and implants that were not in practice in 2002. In such a case, documents

requested here would not be reasonably calculated to lead to the discovery of admissible

evidence. Further, Hudson has not specified when, if ever, it provided RUMC with notice of the patents-in-suit before the initiation of this action. RUMC objects because documents responsive to this request are likely to be available from persons other than RUMC, and to the extent that RUMC is in the possession, custody, or control of any responsive documents, those documents would be duplicative. RUMC objects because this document request may seek documents that may be proprietary to other persons. RUMC objects because Hudson can have no remedy against RUMC, including damages, pursuant to 35 U.S.C. Section 287(c).

RUMC further objects that most of the documents requested in this request, to the extent they exist, would be as easily accessible to Hudson as to RUMC. RUMC is investigating for non-public documents responsive to this request since the issuance of the '541 patent. RUMC reserves the right to supplement this response.

**REQUEST NO. 48:**

All business plans, strategic plans and/or business strategies pertaining to the Accused Techniques, the Accused Instruments and/or the Accused Implants.

**RESPONSE NO. 48:**

RUMC incorporates all of its objections herein. RUMC objects based on privilege. RUMC objects based on overbreadth. RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement. Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence. For example, Hudson has not identified with any particularity what Hudson claims infringes the '272 patent or the '541 patent. The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC to search for unspecified procedures from prior to the issuance of that patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the

'272 patent.   As another example, Hudson may be asserting infringement only against techniques, devices, and implants that were not in practice in 2002.   In such a case, documents requested here would not be reasonably calculated to lead to the discovery of admissible evidence. Further, Hudson has not specified when, if ever, it provided RUMC with notice of the patents-in-suit before the initiation of this action.   RUMC objects because documents responsive to this request are likely to be available from persons other than RUMC, and to the extent that RUMC is in the possession, custody, or control of any responsive documents, those documents would be duplicative.   RUMC objects because this document request may seek documents that may be proprietary to other persons.   RUMC objects because Hudson can have no remedy against RUMC, including damages, pursuant to 35 U.S.C. Section 287(c).   RUMC objects to this request to the extent it seeks documents prior to the issuance of the '541 patent.

Subject to those objections, RUMC is not currently aware of documents responsive to this request.   RUMC reserves the right to supplement this response.

**REQUEST NO. 49:**

All market studies, analyses or reports pertaining to the Accused Techniques, the Accused Instruments and/or the Accused Implants.

**RESPONSE NO. 49:**

RUMC incorporates all of its objections herein.   RUMC objects based on privilege. RUMC objects based on overbreadth.   RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement.   Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence.   For example, Hudson has not identified with any particularity what Hudson claims infringes the '272 patent or the '541 patent.   The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of

31

relevance, for RUMC to search for unspecified procedures from prior to the issuance of that patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the '272 patent.   As another example, Hudson may be asserting infringement only against techniques, devices, and implants that were not in practice in 2002.   In such a case, documents requested here would not be reasonably calculated to lead to the discovery of admissible evidence. Further, Hudson has not specified when, if ever, it provided RUMC with notice of the patents-in-suit before the initiation of this action.   RUMC objects because documents responsive to this request are likely to be available from persons other than RUMC, and to the extent that RUMC is in the possession, custody, or control of any responsive documents, those documents would be duplicative.   RUMC objects because this document request may seek documents that may be proprietary to other persons.   RUMC objects because Hudson can have no remedy against RUMC, including damages, pursuant to 35 U.S.C. Section 287(c).   RUMC objects to this request to the extent it seeks documents prior to the issuance of the '541 patent.

Subject to those objections, RUMC is not currently aware of documents responsive to this request.   RUMC reserves the right to supplement this response.

**REQUEST NO. 50:**

All sales reports and/or projections pertaining to the Accused Techniques, the Accused Instrument and/or the Accused Implants.

**RESPONSE NO. 50:**

RUMC incorporates all of its objections herein.   RUMC objects based on privilege. RUMC objects based on overbreadth.   RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement.   Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence.   For example, Hudson has not identified with

any particularity what Hudson claims infringes the '272 patent or the '541 patent. The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC to search for unspecified procedures from prior to the issuance of that patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the '272 patent. As another example, Hudson may be asserting infringement only against techniques, devices, and implants that were not in practice in 2002. In such a case, documents requested here would not be reasonably calculated to lead to the discovery of admissible evidence. Further, Hudson has not specified when, if ever, it provided RUMC with notice of the patents-in-suit before the initiation of this action. RUMC objects because documents responsive to this request are likely to be available from persons other than RUMC, and to the extent that RUMC is in the possession, custody, or control of any responsive documents, those documents would be duplicative. RUMC objects because this document request may seek documents that may be proprietary to other persons. RUMC objects because Hudson can have no remedy against RUMC, including damages, pursuant to 35 U.S.C. Section 287(c). RUMC objects to this request to the extent it seeks documents prior to the issuance of the '541 patent.

Subject to those objections, RUMC is not currently aware of projections. RUMC is investigating for documents showing the usage of certain implants. RUMC reserves the right to supplement this response.

**REQUEST NO. 51:**

All documents and things that state, describe and/or comment on advantages of the Accused Techniques, the Accused Instruments and/or the Accused Implants over alternative techniques, instruments and/or implants.

**RESPONSE NO. 51:**

RUMC incorporates all of its objections herein. RUMC objects based on privilege.

RUMC objects based on overbreadth. RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement. Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence. For example, Hudson has not identified with any particularity what Hudson claims infringes the '272 patent or the '541 patent. The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC to search for unspecified procedures from prior to the issuance of that patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the '272 patent. As another example, Hudson may be asserting infringement only against techniques, devices, and implants that were not in practice in 2002. In such a case, documents requested here would not be reasonably calculated to lead to the discovery of admissible evidence. Further, Hudson has not specified when, if ever, it provided RUMC with notice of the patents-in-suit before the initiation of this action. RUMC objects because documents responsive to this request are likely to be available from persons other than RUMC, and to the extent that RUMC is in the possession, custody, or control of any responsive documents, those documents would be duplicative. RUMC objects because this document request may seek documents that may be proprietary to other persons. RUMC objects because Hudson can have no remedy against RUMC, including damages, pursuant to 35 U.S.C. Section 287(c). RUMC objects to this request to the extent it seeks documents prior to the issuance of the '541 patent.

RUMC objects because these documents, to the extent they exist, are more likely to be publicly available or available from other persons. Subject to those objections, RUMC is investigating for responsive documents since the issuance of the '541 patent. RUMC reserves the right to supplement this response.

34

**REQUEST NO. 52:**

All documents and things pertaining to competitive techniques, instruments and/or implants.

**RESPONSE NO. 52:**

RUMC incorporates all of its objections herein. RUMC objects based on privilege. RUMC objects based on overbreadth. RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement. Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence. For example, Hudson has not identified with any particularity what Hudson claims infringes the '272 patent or the '541 patent. The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC to search for unspecified procedures from prior to the issuance of that patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the '272 patent. As another example, Hudson may be asserting infringement only against techniques, devices, and implants that were not in practice in 2002. In such a case, documents requested here would not be reasonably calculated to lead to the discovery of admissible evidence. Further, Hudson has not specified when, if ever, it provided RUMC with notice of the patents-in-suit before the initiation of this action. RUMC objects because documents responsive to this request are likely to be available from persons other than RUMC, and to the extent that RUMC is in the possession, custody, or control of any responsive documents, those documents would be duplicative. RUMC objects because this document request may seek documents that may be proprietary to other persons. RUMC objects because Hudson can have no remedy against RUMC, including damages, pursuant to 35 U.S.C. Section 287(c). RUMC objects to this request to the extent it seeks documents prior to the issuance of the '541 patent.

RUMC objects because these documents, to the extent they exist, are more likely to be publicly available or available from other persons. Subject to those objections, RUMC is investigating for responsive documents since the issuance of the '541 patent. RUMC reserves the right to supplement this response.

**REQUEST NO. 53:**

Documents and things sufficient to show how defendant records, determines and reports sales, revenues and profits pertaining to the Accused Techniques, the Accused Instruments and/or the Accused Implants.

**RESPONSE NO. 53:**

RUMC incorporates all of its objections herein. RUMC objects based on privilege. RUMC objects based on overbreadth. RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement. Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence. For example, Hudson has not identified with any particularity what Hudson claims infringes the '272 patent or the '541 patent. The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC to search for unspecified procedures from prior to the issuance of that patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the '272 patent. As another example, Hudson may be asserting infringement only against techniques, devices, and implants that were not in practice in 2002. In such a case, documents requested here would not be reasonably calculated to lead to the discovery of admissible evidence. Further, Hudson has not specified when, if ever, it provided RUMC with notice of the patents-in-suit before the initiation of this action. RUMC objects because documents responsive to this request are likely to be available from persons other than RUMC, and to the extent that

RUMC is in the possession, custody, or control of any responsive documents, those documents

would be duplicative.  RUMC objects because this document request may seek documents that

may be proprietary to other persons.  RUMC objects because Hudson can have no remedy

against RUMC, including damages, pursuant to 35 U.S.C. Section 287(c).  RUMC objects to

this request to the extent it seeks documents prior to the issuance of the '541 patent.

Subject to those objections, RUMC will produce an exemplar bill for a knee replacement

surgery.  RUMC reserves the right to supplement this response.

**REQUEST NO. 54:**

Documents and things sufficient to show the dates, amounts, terms, conditions and
sources of any and all payments or other consideration received by or for defendant pertaining in
any way to the Accused Techniques, the Accused Instruments and/or the Accused Implants.

**RESPONSE NO. 54:**

RUMC incorporates all of its objections herein.  RUMC objects based on privilege.

RUMC objects based on overbreadth.  RUMC objects because Hudson has yet to identify the

specific techniques, devices, and implants that it is accusing of infringement.  Further, it would

be an undue burden on RUMC to try to search for documents that may or may not be calculated

to lead to the discovery of admissible evidence.  For example, Hudson has not identified with

any particularity what Hudson claims infringes the '272 patent or the '541 patent.  The '541

patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of

relevance, for RUMC to search for unspecified procedures from prior to the issuance of that

patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the

'272 patent.  As another example, Hudson may be asserting infringement only against

techniques, devices, and implants that were not in practice in 2002.  In such a case, documents

requested here would not be reasonably calculated to lead to the discovery of admissible

evidence. Further, Hudson has not specified when, if ever, it provided RUMC with notice of the patents-in-suit before the initiation of this action. RUMC objects because documents responsive to this request are likely to be available from persons other than RUMC, and to the extent that RUMC is in the possession, custody, or control of any responsive documents, those documents would be duplicative. RUMC objects because this document request may seek documents that may be proprietary to other persons. RUMC objects because Hudson can have no remedy against RUMC, including damages, pursuant to 35 U.S.C. Section 287(c). RUMC objects to this request to the extent it seeks documents prior to the issuance of the '541 patent.

Subject to these objections, RUMC will produce its agreements with Zimmer and an exemplar bill for a knee replacement surgery. RUMC reserves the right to supplement this response.

**REQUEST NO. 55:**

Documents and things sufficient to show the dates, amounts, terms, conditions and recipients of any and all payments or other consideration made or provided by or for defendant pertaining in any way to the Accused Techniques, the Accused Instruments and/or the Accused Implants.

**RESPONSE NO. 55:**

RUMC incorporates all of its objections herein. RUMC objects based on privilege. RUMC objects based on overbreadth. RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement. Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence. For example, Hudson has not identified with any particularity what Hudson claims infringes the '272 patent or the '541 patent. The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC to search for unspecified procedures from prior to the issuance of that

patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the '272 patent. As another example, Hudson may be asserting infringement only against techniques, devices, and implants that were not in practice in 2002. In such a case, documents requested here would not be reasonably calculated to lead to the discovery of admissible evidence. Further, Hudson has not specified when, if ever, it provided RUMC with notice of the patents-in-suit before the initiation of this action. RUMC objects because documents responsive to this request are likely to be available from persons other than RUMC, and to the extent that RUMC is in the possession, custody, or control of any responsive documents, those documents would be duplicative. RUMC objects because this document request may seek documents that may be proprietary to other persons. RUMC objects because Hudson can have no remedy against RUMC, including damages, pursuant to 35 U.S.C. Section 287(c). RUMC objects to this request to the extent it seeks documents prior to the issuance of the '541 patent.

Subject to these objections, RUMC will produce its agreements with Zimmer and an exemplar bill for a knee replacement surgery. RUMC reserves the right to supplement this response.

**REQUEST NO. 56:**

All documents and things constituting or pertaining to information provided by or for defendant to third parties for the purpose of training, educating, teaching and/or informing them on or about the Accused Techniques, the Accused Instruments and/or the Accused Implants.

**RESPONSE NO. 56:**

RUMC incorporates all of its objections herein. RUMC objects based on privilege. RUMC objects based on overbreadth. RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement. Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated

to lead to the discovery of admissible evidence. For example, Hudson has not identified with any particularity what Hudson claims infringes the '272 patent or the '541 patent. The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC to search for unspecified procedures from prior to the issuance of that patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the '272 patent. As another example, Hudson may be asserting infringement only against techniques, devices, and implants that were not in practice in 2002. In such a case, documents requested here would not be reasonably calculated to lead to the discovery of admissible evidence. Further, Hudson has not specified when, if ever, it provided RUMC with notice of the patents-in-suit before the initiation of this action. RUMC objects because documents responsive to this request are likely to be available from persons other than RUMC, and to the extent that RUMC is in the possession, custody, or control of any responsive documents, those documents would be duplicative. RUMC objects because this document request may seek documents that may be proprietary to other persons. RUMC objects because Hudson can have no remedy against RUMC, including damages, pursuant to 35 U.S.C. Section 287(c). RUMC objects to this request to the extent it seeks documents prior to the issuance of the '541 patent.

RUMC objects to this request to the extent it seeks documents equally accessible to Hudson because it is public or documents more likely to be in the possession of other persons.

Subject to these objections, RUMC will investigate to find documents since the issuance of the '541 patent responsive to this request. RUMC reserves the right to supplement this response.

**REQUEST NO. 57:**

All extrinsic evidence that defendant contends is relevant to the construction of any claim

of a patent in suit.

**RESPONSE NO. 57:**

RUMC incorporates its objections herein.  RUMC objects based on privilege.  RUMC

will produce all documents it contends are relevant to the construction of any claim.

**REQUEST NO. 58:**

To the extent not requested above, all contracts and agreements between defendant and
Rush Health pertaining in any way to the Accused Techniques, the Accused Instruments and/or
the Accused Implants.

**RESPONSE NO. 58:**

RUMC incorporates its objections herein.   RUMC is not aware of any such contracts or

agreements.

**REQUEST NO. 59:**

To the extent not requested above, all contracts and agreements between defendant and
Rush Medical pertaining in any way to the Accused Techniques, the Accused Instruments and/or
the Accused Implants.

**RESPONSE NO. 59:**

RUMC responds that this request does not pertain to RUMC.

**REQUEST NO. 60:**

To the extent not requested above, all contracts and agreements between defendant and
Rush Health, Zimmer Holdings, Zimmer and/or Midwest Orthopaedics at Rush, LLC (including
any person affiliated with any of these entities) pertaining in any way to the Accused Techniques,
the Accused Instruments and/or the Accused Implants.

**RESPONSE NO. 60:**

RUMC incorporates its objections herein.  RUMC objects that this request is overbroad

and does not have reasonable particularity.  RUMC incorporates all of its objections herein.

RUMC objects based on privilege.  RUMC objects based on overbreadth.  RUMC objects

because Hudson has yet to identify the specific techniques, devices, and implants that it is

accusing of infringement.  Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence. For example, Hudson has not identified with any particularity what Hudson claims infringes the '272 patent or the '541 patent.  The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC to search for unspecified procedures from prior to the issuance of that patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the '272 patent.  As another example, Hudson may be asserting infringement only against techniques, devices, and implants that were not in practice in 2002.  In such a case, documents requested here would not be reasonably calculated to lead to the discovery of admissible evidence. Further, Hudson has not specified when, if ever, it provided RUMC with notice of the patents-in-suit before the initiation of this action.  RUMC objects because documents responsive to this request are likely to be available from persons other than RUMC, and to the extent that RUMC is in the possession, custody, or control of any responsive documents, those documents would be duplicative.  RUMC objects because this document request may seek documents that may be proprietary to other persons.  RUMC objects because Hudson can have no remedy against RUMC, including damages, pursuant to 35 U.S.C. Section 287(c).  RUMC objects to this request to the extent it seeks documents prior to the issuance of the '541 patent.  RUMC will produce the agreements with Zimmer.  RUMC reserves the right to supplement this response.

**REQUEST NO. 61:**

To the extent not requested above, all contracts and agreements between defendant and any hospital, physician or other health care provider pertaining in any way to the Accused Techniques, the Accused Instruments and/or the Accused Implants.

**RESPONSE NO. 61:**

RUMC incorporates its objections herein. RUMC objects that this request is overbroad and does not have reasonable particularity. RUMC incorporates all of its objections herein. RUMC objects based on privilege. RUMC objects based on overbreadth. RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement. Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence. For example, Hudson has not identified with any particularity what Hudson claims infringes the '272 patent or the '541 patent. The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC to search for unspecified procedures from prior to the issuance of that patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the '272 patent. As another example, Hudson may be asserting infringement only against techniques, devices, and implants that were not in practice in 2002. In such a case, documents requested here would not be reasonably calculated to lead to the discovery of admissible evidence. Further, Hudson has not specified when, if ever, it provided RUMC with notice of the patents-in-suit before the initiation of this action. RUMC objects because documents responsive to this request are likely to be available from persons other than RUMC, and to the extent that RUMC is in the possession, custody, or control of any responsive documents, those documents would be duplicative. RUMC objects because this document request may seek documents that may be proprietary to other persons. RUMC objects because Hudson can have no remedy against RUMC, including damages, pursuant to 35 U.S.C. Section 287(c). RUMC objects to this request to the extent it seeks documents prior to the issuance of the '541 patent. RUMC will produce the agreements with Zimmer. RUMC reserves the right to supplement this response.

43

**REQUEST NO. 62:**

To the extent not requested above, documents and things sufficient to identify all sources of revenue or other consideration generated, obtained or received by defendant pertaining in any way to the Accused Techniques, the Accused Instruments and/or the Accused Implants.

**RESPONSE NO. 62:**

RUMC incorporates its objections herein.  RUMC objects that this request is overbroad and does not have reasonable particularity.  RUMC incorporates all of its objections herein. RUMC objects based on privilege.  RUMC objects based on overbreadth.  RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement.  Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence. For example, Hudson has not identified with any particularity what Hudson claims infringes the '272 patent or the '541 patent.  The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC to search for unspecified procedures from prior to the issuance of that patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the '272 patent.  As another example, Hudson may be asserting infringement only against techniques, devices, and implants that were not in practice in 2002.  In such a case, documents requested here would not be reasonably calculated to lead to the discovery of admissible evidence.  Further, Hudson has not specified when, if ever, it provided RUMC with notice of the patents-in-suit before the initiation of this action.  RUMC objects because documents responsive to this request are likely to be available from persons other than RUMC, and to the extent that RUMC is in the possession, custody, or control of any responsive documents, those documents would be duplicative.  RUMC objects because this document request may seek documents that may be proprietary to other persons.  RUMC objects

44

because Hudson can have no remedy against RUMC, including damages, pursuant to 35 U.S.C. Section 287(c). RUMC objects to this request to the extent it seeks documents prior to the issuance of the '541 patent. RUMC will produce the agreements with Zimmer and an exemplar bill for a knee surgery. RUMC reserves the right to supplement this response.

**REQUEST NO. 63:**

To the extent not requested above, documents and things sufficient to show the number of Accused Techniques performed at, by or for defendant, and when such techniques were performed, from 2000 to the present.

**RESPONSE NO. 63:**

RUMC incorporates its objections herein. RUMC objects that this request is overbroad and does not have reasonable particularity. RUMC incorporates all of its objections herein. RUMC objects based on privilege. RUMC objects based on overbreadth. RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement. Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence. For example, Hudson has not identified with any particularity what Hudson claims infringes the '272 patent or the '541 patent. The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC to search for unspecified procedures from prior to the issuance of that patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the '272 patent. As another example, Hudson may be asserting infringement only against techniques, devices, and implants that were not in practice in 2002. In such a case, documents requested here would not be reasonably calculated to lead to the discovery of admissible evidence. Further, Hudson has not specified when, if ever, it provided RUMC with notice of the patents-in-suit before the initiation of this action. RUMC

45

objects because documents responsive to this request are likely to be available from persons other than RUMC, and to the extent that RUMC is in the possession, custody, or control of any responsive documents, those documents would be duplicative.  RUMC objects because this document request may seek documents that may be proprietary to other persons.  RUMC objects because Hudson can have no remedy against RUMC, including damages, pursuant to 35 U.S.C. Section 287(c).  RUMC objects to this request to the extent it seeks documents prior to the issuance of the '541 patent.

RUMC reserves the right to supplement this response.

**REQUEST NO. 64:**

To the extent not requested above, all documents and things pertaining to Hudson, Timothy G. Haines and/or David B. Goldstein.

**RESPONSE NO. 64:**

RUMC incorporates all of its objections herein.  RUMC objects based on privilege. RUMC is not currently aware of any documents responsive to this request from before the initiation of this action.  RUMC reserves the right to supplement this response.

**REQUEST NO. 65:**

To the extent not requested above, all communications between defendant on the one hand and Hudson, any agent or representative of Hudson, Timothy G. Haines and/or David B. Goldstein on the other hand, prior to the filing of this suit.

**RESPONSE NO. 65:**

RUMC incorporates all of its objections herein.  RUMC objects on privilege.  RUMC is not currently aware of any documents responsive to this request.  RUMC reserves the right to supplement this response.

**REQUEST NO. 66:**

To the extent not requested above, all documents pertaining to communications between

46

defendant on the one hand and Hudson, any agent or representative of Hudson, Timothy G. Haines and/or David B. Goldstein on the other hand, prior to the filing of this suit.

**RESPONSE NO. 66:**

RUMC incorporates all of its objections herein.   RUMC objects on privilege.   RUMC is not currently aware of any documents responsive to this request.   RUMC reserves the right to supplement this response.

**REQUEST NO. 67:**

To the extent not requested above, all documents and things describing or otherwise pertaining to benefits of the Accused Techniques, the Accused Instruments and/or the Accused Implants over alternative techniques, instruments and/or implants.

**RESPONSE NO. 67:**

RUMC incorporates its response to Request No. 51.

**REQUEST NO. 68:**

To the extent not requested above, documents sufficient to identify the relationships between Rush Medical and Zimmer Holdings, Zimmer, Zimmer Institute, Midwest Orthopaedics at Rush LLC, Dr. Richard Berger and/or Dr. Aaron Rosenberg.

**RESPONSE NO. 68:**

RUMC incorporates its objections herein.   RUMC objects that this request is overbroad and does not have reasonable particularity.   RUMC incorporates all of its objections herein. RUMC objects based on privilege.   RUMC objects based on overbreadth.   RUMC objects because Hudson has yet to identify the specific techniques, devices, and implants that it is accusing of infringement.   Further, it would be an undue burden on RUMC to try to search for documents that may or may not be calculated to lead to the discovery of admissible evidence. For example, Hudson has not identified with any particularity what Hudson claims infringes the '272 patent or the '541 patent.   The '541 patent just issued on March 18, 2008, so it would be a burden, especially in light of the lack of relevance, for RUMC to search for unspecified

47

procedures from prior to the issuance of that patent if Hudson is alleging that a certain procedure only infringes the '541 patent, and not the '272 patent. As another example, Hudson may be asserting infringement only against techniques, devices, and implants that were not in practice in 2002. In such a case, documents requested here would not be reasonably calculated to lead to the discovery of admissible evidence. Further, Hudson has not specified when, if ever, it provided RUMC with notice of the patents-in-suit before the initiation of this action.

Subject to these objections, RUMC is investigating for documents responsive to this request since the issuance of the '541 patent. RUMC reserves the right to supplement this response.

**REQUEST NO. 69:**

To the extent not requested above, all documents and things constituting or otherwise pertaining to communications between Rush Medical and any third party pertaining to Hudson, Timothy G. Haines, David B. Goldstein, Hudson's patent rights, the patents in suit and/or this suit or the subject matter of this suit.

**RESPONSE NO. 69:**

RUMC incorporates its objections herein. RUMC objects based on privilege. RUMC is not currently aware of any documents responsive to this request stemming from before the filing date of this action. RUMC reserves the right to supplement this response.

**REQUEST NO. 70:**

To the extent not requested above, all documents and things constituting or otherwise pertaining to communications between Rush Medical and Rush Health, Zimmer Holdings and/or Zimmer pertaining to Hudson, Timothy G. Haines, David B. Goldstein, Hudson's patent rights, the patents in suit and/or this suit or the subject matter of this suit.

**RESPONSE NO. 70:**

RUMC incorporates its objections herein. RUMC objects based on privilege. RUMC is not currently aware of any documents responsive to this request stemming from before the filing

date of this action.    RUMC reserves the right to supplement this response.


Dated:   June 16, 2008.                      Respectfully submitted,

                                             *Brian Sodikoff* (signature)
                                             _____
                                             Robert B. Breisblatt
                                             Sheldon T. Zenner
                                             Brian J. Sodikoff
                                             Thomas J. Maas
                                             KATTEN MUCHIN ROSENMAN LLP
                                             525 West Monroe Street
                                             Chicago, Illinois   60661-3693
                                             (312) 902-5462
                                             brian.sodikoff@kattenlaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served on the following via U.S. Mail, with a courtesy copy via email, on:

Christopher J. Lee (clee@nshn.com)
David J. Sheikh (shiekh@nshn.com)
Richard B. Megley, Jr. (megleyjr@nshn.com)
NIRO, SCAVONE, HALLER & NIRO
181 W. Madison Street, Suite 4600
Chicago, IL 60602


Christina L. Brown (brownc@mbhb.com)
Michael H. Baniak (baniak@mbhb.com)
Gary E. Hood (hood@mbhb.com)
MCDONNELL BOEHNEN HULBERT & BERGHOFF, LLP
300 S. Wacker Drive, Suite 3100
Chicago, IL 60606

*Brian Sodikoff*    6-16-08

Brian J. Sodikoff
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois   60661-3693
(312) 902-5462
brian.sodikoff@kattenlaw.com

# EXHIBIT F

**Zimmer**
*Confidence in your hands®*

**I For the Medical Professional** / United States    I Go to [Area of interest ▾]

Products:   MIS   CAS   Hip   Knee   Elbow   Shoulder   Spine   Trauma   Ortho Surgical   Dental

[Choose state ▾]
or go to advanced search

**Search Zimmer for:** [_____]

Our Science

Clinical Trial

The Zimmer Institute

Highly Crosslinked
Polyethylene

Trabecular Metal Technology

Health Economics and
Reimbursement

Practice Resources

Medical Library

Surgical Techniques

Product Catalog

Message to Students

Surgical Instruments
Cleaning

Latex Information

Metal Sensitivity & MRI
Information

Med Zone ✚

Contact Us

Medical Professional Home

## Find a Doctor

**72 Doctors Found**                                           Try a New Search

Mitchell B. Sheinkop M.D.
Chicago, IL
United States

- Joint/Procedure specialties: Gender
  Knee, MIS Hip, MIS Knee, Hip, Knee
- Surgical Interests: Adult Reconstruction

Aaron Rosenberg M.D.
Chicago, IL
United States

- Joint/Procedure specialties: Gender
  Knee, MIS Hip, MIS
  Knee, Hip, Knee, Elbow, Shoulder
- Surgical Interests: Adult Reconstruction

Richard A. Berger M.D.
Chicago, IL
United States

- Joint/Procedure specialties: Gender
  Knee, MIS Hip, MIS
  Knee, Hip, Knee, Elbow, Shoulder
- Surgical Interests: MIS Knee and Hip
  Replacement

Craig J. Della Valle M.D.
Chicago, IL
United States

- Joint/Procedure specialties: Gender
  Knee, MIS Hip, MIS Knee, Hip, Knee
- Surgical Interests: Adult Reconstructive
  Surgery

Howard An M.D.
Chicago, IL
United States

- Joint/Procedure specialties: Spine
- Surgical Interests: Spine Reconstruction

Frank M. Phillips M.D.
Chicago, IL
United States

- Joint/Procedure specialties: Spine
- Surgical Interests: Spinal Surgery

Joshua J. Jacobs M.D.
Chicago, IL
United States

- Joint/Procedure specialties: Gender
  Knee, Hip, Knee
- Surgical Interests: Adult Reconstruction

David Stulberg M.D.
Chicago, IL
United States

- Joint/Procedure specialties: MIS
  Hip, Hip, Knee

John Hefferon M.D.
Chicago, IL
United States

- Joint/Procedure specialties: Gender
  Knee, Knee, Shoulder

Giri T. Girresan M.D.
Chicago, IL
United States

- Joint/Procedure specialties: Spine

Scott Cordes M.D.
Chicago, IL
United States

- Joint/Procedure specialties: Gender
  Knee, MIS Knee, Hip, Knee, Shoulder
- Surgical Interests: Adult Reconstruction,
  Trauma, Sports Medicine, Foot & Ankle

Mark K. Bowen M.D.
Chicago, IL
United States

- Joint/Procedure specialties: Gender
  Knee, MIS Hip, MIS Knee
- Surgical Interests: Adult Reconstruction

Raju S. Ghate M.D.
Chicago, IL
United States

- Joint/Procedure specialties: Gender
  Knee, MIS Hip, MIS Knee, Hip, Knee
- Surgical Interests: Adult Reconstruction

Proctor Anderson M.D.
Chicago, IL

- Joint/Procedure specialties: Gender
  Knee, Hip, Knee

A⁺ Text smaller
A⁺ Text larger

🖃 Share

**Medical Professionals –**
**Order Education**
**Materials**   I [Go] ▸

United States

Steve Stern M.D.
Chicago, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Knee, Hip, Knee
- Surgical Interests: Adult Reconstruction

Nasim Rana M.D.
Chicago, IL
United States

- Joint/Procedure specialties: Hip, Knee
- Surgical Interests: Total Joint Replacements

David Garelick M.D.
Chicago, IL
United States

- Joint/Procedure specialties: Gender Knee, Hip, Knee, Elbow, Shoulder

Dan Newman M.D.
Chicago, IL
United States

- Joint/Procedure specialties: Gender Knee, Hip, Knee, Shoulder

Ignas G. Labanauskas M.D.
Chicago, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Hip, MIS Knee, Hip, Knee, Shoulder
- Surgical Interests: Adult Reconstruction, Sports Medicine, Trauma

Joseph D'Silva M.D.
Chicago, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Hip, MIS Knee, Hip, Knee
- Surgical Interests: Minimally Invasive Hip and Knee Replacement

John Cherf M.D.
Chicago, IL
United States

- Joint/Procedure specialties: Hip, Knee

Thomas L. Rodts M.D.
Elmhurst, IL
United States

- Joint/Procedure specialties: Gender Knee, Hip, Knee, Shoulder
- Surgical Interests: Adult Reconstruction and Fractures

Victor M. Romano M.D.
Oak Park, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Hip, MIS Knee, Hip, Knee, Elbow, Shoulder
- Surgical Interests: Adult Reconstruction, Sports Medicine

Joseph Sheehan M.D.
Oak Park, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Hip, MIS Knee, Hip, Knee
- Surgical Interests: Total Joint Replacement

Ignas G. Labanauskas M.D.
Chicago, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Hip, MIS Knee, Hip, Knee, Shoulder
- Surgical Interests: Adult Reconstruction, Sports Medicine, Trauma

Joyce A. Tarbet M.D.
Berwyn, IL
United States

- Joint/Procedure specialties: Gender Knee, Knee
- Surgical Interests: Sports Medicine

David W. Manning M.D.
Chicago, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Hip, MIS Knee, Hip, Knee
- Surgical Interests: Adult Reconstruction, Hip & Knee Replacement, Hip & Knee Revision, Minimally Invasive Surgery, Computer Assisted Surgery

Hue H. Luu M.D.
Chicago, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Knee, Hip, Knee
- Surgical Interests: Adult Reconstruction and Oncology

Joseph D'Silva M.D.
Chicago, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Hip, MIS Knee, Hip, Knee
- Surgical Interests: Minimally Invasive Hip and Knee Replacement

Joseph D'Silva M.D.

- Joint/Procedure specialties: Gender Knee, MIS Hip, MIS Knee, Hip, Knee

Chicago, IL
United States

- Surgical Interests: Minimally Invasive Hip and Knee Replacement

Jeffrey S. Meisles M.D.
Melrose Park, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Hip, MIS Knee, Hip, Knee
- Surgical Interests: Hip and Knee Replacement

Ryon Hennessy M.D.
Melrose Park, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Hip, MIS Knee, Hip, Knee, Spine
- Surgical Interests: Adult Reconstruction and Spine

Paul Prinz M.D.
Melrose Park, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Hip, MIS Knee, Hip, Knee, Elbow, Shoulder
- Surgical Interests: Adult Reconstruction

David J. Smith M.D., F.A.C.S
Oak Lawn, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Hip, MIS Knee, Hip, Knee, Shoulder
- Surgical Interests: Adult Reconstruction, Sports Medicine

Jesse Butler M.D.
Morton Grove, IL
United States

- Joint/Procedure specialties: Spine
- Surgical Interests: Adult Spine Care, Revision Spinal Surgery, Disc Replacement, Dynesis

Marc Breslow M.D.
Morton Grove, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Knee, Knee, Shoulder
- Surgical Interests: Sports Medicine

Matthew Lawrence Jimenez M.D., F.A.C.S.
Morton Grove, IL
United States

- Joint/Procedure specialties: Gender Knee, Hip, Knee
- Surgical Interests: Adult Reconstruction

Alexander Gordon M.D.
Morton Grove, IL
United States

- Joint/Procedure specialties: Gender Knee, Hip, Knee
- Surgical Interests: Adult Reconstruction

Daniel A. Troy M.D.
Palos Hills, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Hip, MIS Knee, Hip, Knee, Spine
- Surgical Interests: Adult Reconstruction, Sports Medicine, Spine

George Branovacki M.D.
Palos Hills, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Hip, MIS Knee, Hip, Knee
- Surgical Interests: Adult Reconstruction, Revision Surgery

Anton J. Fakhouri M.D.
Palos Hills, IL
United States

- Joint/Procedure specialties: Elbow
- Surgical Interests: Hand

David Beigler M.D.
Glenview, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Knee, Hip, Knee, Elbow, Shoulder
- Surgical Interests: Adult Reconstruction, Sports, Fracture care

Kevin Luke M.D.
Palos Heights, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Knee, Knee
- Surgical Interests: Trauma, Total Joints, Sports Medicine

Eric P. Chassin M.D.
Hinsdale, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Hip, MIS Knee, Hip, Knee, Shoulder

Robert A. Beatty M.D.
Hinsdale, IL
United States

- Joint/Procedure specialties: Spine
- Surgical Interests: Spine Exclusively

Robert J. Daley M.D.
Hinsdale, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Knee, Hip, Knee
- Surgical Interests: Adult Reconstruction

- Joint/Procedure specialties: Gender

Mike Durkin M.D.
Hinsdale, IL
United States

- Knee, MIS Hip, MIS
  Knee, Hip, Knee, Elbow, Shoulder
- Surgical Interests: Adult Reconstruction,
  Sports Medicine

Jeffrey S. Meisles M.D.
Elmhurst, IL
United States

- Joint/Procedure specialties: Gender
  Knee, MIS Hip, MIS Knee, Hip, Knee
- Surgical Interests: Hip and Knee Replacement

William M. Hedesman M.D.
Elmhurst, IL
United States

- Joint/Procedure specialties: Gender
  Knee, MIS Hip, MIS
  Knee, Hip, Knee, Shoulder
- Surgical Interests: Sports Medicine, Total
  Joints

Kevin Koutsky M.D.
Elmhurst, IL
United States

- Joint/Procedure specialties:
  Elbow, Shoulder, Spine

Ryon M. Hennessy M.D.
Elmhurst, IL
United States

- Joint/Procedure specialties: Gender
  Knee, MIS Hip, MIS Knee, Hip, Knee, Spine
- Surgical Interests: Spine and Adult
  Reconstruction

John W. Nikoleit M.D.
Elmhurst, IL
United States

- Joint/Procedure specialties: Gender
  Knee, MIS Hip, MIS
  Knee, Hip, Knee, Shoulder
- Surgical Interests: Joint Replacement, Sports
  Medicine

Eugene J. Bartucci M.D.
Elmhurst, IL
United States

- Joint/Procedure specialties: Gender
  Knee, MIS Hip, MIS
  Knee, Hip, Knee, Shoulder
- Surgical Interests: Adult Reconstruction

Daryl L. O'Connor M.D.
Elmhurst, IL
United States

- Joint/Procedure specialties: Gender
  Knee, MIS Hip, MIS
  Knee, Hip, Knee, Elbow, Shoulder
- Surgical Interests: Sports Medicine

Dean R. Milos M.D.
Elmhurst, IL
United States

- Joint/Procedure specialties: Gender
  Knee, MIS Knee, Hip, Knee, Shoulder
- Surgical Interests: Hip and Knee
  Replacement, Sports Medicine

John Lyon M.D.
Des Plaines, IL
United States

- Joint/Procedure specialties: Gender
  Knee, MIS Hip, Hip, Knee, Elbow

Joe Tansey M.D.
Orland Park, IL
United States

- Joint/Procedure specialties: Gender
  Knee, Knee
- Surgical Interests: Adult Reconstruction, Foot
  and Ankle Specialist

Joseph Thometz M.D.
Orland Park, IL
United States

- Joint/Procedure specialties: Gender
  Knee, Knee
- Surgical Interests: Adult Reconstruction,
  Sports Medicine

David J. Smith M.D., F.A.C.S.
Orland Park, IL
United States

- Joint/Procedure specialties: Gender
  Knee, MIS Hip, MIS
  Knee, Hip, Knee, Shoulder
- Surgical Interests: Adult Reconstruction,
  Sports Medicine

Martin Hall M.D.
Hazel Crest, IL
United States

- Joint/Procedure specialties: Gender
  Knee, MIS Hip, MIS
  Knee, Hip, Knee, Shoulder
- Surgical Interests: Adult Reconstruction,
  Sports Medicine, Knees, Shoulders, Hips,
  Hand

Jack Casini M.D.
Lombard, IL
United States

- Joint/Procedure specialties: Gender
  Knee, MIS Hip, MIS Knee, Hip, Knee

David J. Smith M.D., F.A.C.S.
Flossmoor, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Hip, MIS Knee, Hip, Knee, Shoulder
- Surgical Interests: Adult Reconstruction, Sports Medicine

E. Thomas Marquardt M.D.
Downers Grove, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Knee, Knee
- Surgical Interests: Arthroscopic Joint Surgery, Total Joint Replacements, Sports Medicine

Lawrence Lieber M.D.
Downers Grove, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Hip, MIS Knee, Hip, Knee, Shoulder
- Surgical Interests: Total Joint Replacement, Sports Medicine, General Orthopaedics

Eugene P. Lopez M.D.
Elk Grove Village, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Hip, MIS Knee, Hip, Knee

Daniel T. Kuesis M.D.
Elk Grove Village, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Hip, MIS Knee, Hip, Knee, Elbow, Shoulder
- Surgical Interests: Adult Reconstruction, Sports Medicine

Thomas Y. Kim M.D.
Arlington Heights, IL
United States

- Joint/Procedure specialties: Gender Knee, Hip, Knee, Elbow, Shoulder
- Surgical Interests: Adult Reconstruction, Sports Medicine, Trauma

Luis J. Redondo M.D.
Orland Park, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Hip, MIS Knee, Hip, Knee
- Surgical Interests: Orthopaedic Surgery - Knee

Jose R. Perez-Sanz M.D.
Orland Park, IL
United States

- Joint/Procedure specialties: Shoulder
- Surgical Interests: Orthopaedic Surgery - Shoulder

Anton J. Fakhouri M.D.
Orland Park, IL
United States

- Joint/Procedure specialties: Elbow
- Surgical Interests: Hand

Richard Lim M.D.
Orland Park, IL
United States

- Joint/Procedure specialties: Spine

Ram Aribindi M.D.
Olympia Fields, IL
United States

- Joint/Procedure specialties: Gender Knee, MIS Hip, Hip, Knee
- Surgical Interests: Adult Joint Reconstruction, Sports Medicine

Privacy Notice | Legal Notice

Help | Last updated 2/28/05

© 2007 Zimmer, Inc. (owner of site) version 5.0

## Outstanding Program Achievements

## Midwest Orthopaedics at Rush surgeons were the first in the world to:

## Joint Replacement

## Midwest Orthopaedics at Rush, a National Leader in Joint Replacement

Midwest
Orthopaedics
at RUSH

www.rushorthocare.com
For appointment information, call us
at 877-MD-BONES (877-632-6637)



# EXHIBIT G

# Filed Under Seal

# Restricted Document
# Pursuant to Local Rule 26.2

# EXHIBIT H

# NIRO, SCAVONE, HALLER & NIRO

RAYMOND P. NIRO
TIMOTHY J. HALLER
WILLIAM L. NIRO
JOSEPH N. HOSTENY, III
ROBERT A. VITALE, JR.
JOHN C. JANKA
PAUL K. VICKREY
DEAN D. NIRO
RAYMOND P. NIRO, JR.
PATRICK F. SOLON
ARTHUR A. GASEY
CHRISTOPHER J. LEE
DAVID J. SHEIKH
VASILIOS D. DOSSAS
SALLY WIGGINS
RICHARD B. MEGLEY, JR.
MATTHEW G. McANDREWS

181 WEST MADISON STREET - SUITE 4600

CHICAGO, ILLINOIS 60602 - 4635

———

TELEPHONE (312) 236-0733

FACSIMILE (312) 236-3137

LEE F. GROSSMAN
PAUL C. GIBBONS
BRADY J. FULTON
GREGORY P. CASIMER
DOUGLAS M. HALL
DINA M. HAYES
FREDERICK C. LANEY
DAVID J. MAHALEK
KARA L. SZPONDOWSKI
ROBERT A. CONLEY
ERIC J. MERSMANN
NICHOLAS M. DUDZIAK
LAURA A. KENNEALLY
TAHITI ARSULOWICZ

———

OF COUNSEL:
THOMAS G. SCAVONE

July 18, 2008

***Email Transmission: thomas.maas@kattenlaw.com***
Thomas J. Maas
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL 60661

Re:  *Hudson Surgical Design, Inc. v. Zimmer Holdings, Inc. et al.*

Dear Tom:

We write in our ongoing effort to resolve deficiencies in RUMC's responses to Hudson Surgical's discovery requests. Contrary to the assertion in your letter of July 11, 2008, the documents produced by RUMC to date do not resolve the issues in our letters of June 27, July 7 and July 9, 2008. Please consider this letter in connection with Local Rule 37.2.

Many issues in our letters remain unaddressed.

We are still waiting to receive documents and things that provide details on quad sparing surgeries done at RUMC, including when the surgeries were performed, who performed them, what instruments were used and the associated financial information. You have had the details of Hudson Surgical's current infringement contentions against RUMC, including detailed claim charts applying the asserted claims to quad sparing instruments, implants and techniques on a claim element by claim element basis, since July 9, 2008. We previously identified the accused instruments, implants and techniques, and the surgeons who we believe have performed quad sparing surgeries at RUMC, in our letter dated June 27, 2008. Accordingly, you should be in a position to provide the requested information.

We have reviewed the documents produced by RUMC, and we can provide further information to assist you in complying with Hudson Surgical's requests.

Thomas J. Maas
July 18, 2008
Page 2

RUMC0001543-45 is a "Preference Card" for Dr. Richard A. Berger that specifically identifies "MIS Tibial Cutting Jigs" and a "Quad Sparing Femoral Tray." We request that RUMC produce any and all Preference Cards in its possession, custody or control that identify the MIS Tibial Cutting Jigs and/or the Quad Sparing Femoral Tray. To avoid any potential misunderstandings, we are not limiting our requests to documents of this type that are entitled "Preference Cards," or that specifically refer to "MIS Tibial Cutting Jigs" or "Quad Sparing Femoral Tray." Our request encompasses any document or thing that shows or indicates a preference for, a request for, the provision of or the usage of any quad sparing instrument that was or is in the possession, custody or control of RUMC.

To provide even further guidance on our request, we refer you to the following documents produced by RUMC which appear to identify quad sparing instruments: RUMC 0001928, RUMC 0001933, RUMC 0001553, RUMC 0001554, RUMC 0001555, RUMC 0001556-58 RUMC 0001565, RUMC 0001962-64 and RUMC0001968. Our request encompasses documents and things showing when and by whom any of these instruments (or instruments of the same design) were used, and the associated financial information.

In our July 9 letter, we requested confirmation that each and every contract, agreement or written understanding between RUMC or RSH and any Zimmer entity pertaining to the accused techniques, implants and/or instruments has been produced. We are still waiting for this confirmation or, absent confirmation, copies of the contracts, agreements or written understandings.

In our July 9 letter, we asked for an identification of the "other sources" you referred us to who allegedly have information on RUMC's purchases and acquisition of the accused implants and instruments. We also asked whether RUMC is withholding responsive documents or things based on these "other sources." Please provide us with the requested information. Regardless, we renew our request for documents and things providing information on RUMC's purchases and acquisition of the accused implants and instrument.

In our July 9 letter, we explained that we have requested contracts, agreements and written understandings between physicians/health care providers and RUMC and/or RSH that permit the accused techniques to be performed at RUMC and/or that permit the accused implants and the accused instruments to be used at RUMC. We renew our request for these documents.

In our July 9 letter, we explained our request for documents relating to the credentialing/approval process relating to the accused techniques, implants and instruments and documents providing details on surgeries conducted in accordance with the credentialing/approval process. Please let us know when we will receive this information.

In our July 9 letter we requested a firm date by when RUMC will supplement its responses to Hudson Surgical's interrogatories. We renew our request for this information. In particular, Interrogatories 2-4 seek fundamental information on surgeries, implants and instruments at RUMC that is directly relevant to Hudson Surgical's infringement contentions. RUMC has sufficient information, and has had adequate time, to provide complete, substantive responses to these interrogatories.

Thomas J. Maas
July 18, 2008
Page 3

We are still waiting to receive "Zimmer usage information" for the years 2006 forward (RUMC's current production covers only the years 2003-2005). Please provide this information.

In addition, RUMC's document production does not include information on educational and training programs relating to the accused techniques, implants and instruments. We are aware of numerous such programs at RUMC. We renew our request for documents and things pertaining to these programs.

Finally, to address the second paragraph of your July 11 letter, we do not understand your assertion that the documents produced by RUMC "show the overly burdensome nature of Hudson's Request and highlight the fact that the discovery can be obtained from other sources." On the contrary, RUMC's document production highlights the fact that RUMC has highly relevant documents in its possession, custody or control that can and should be produced. For example, RUMC's production of Dr. Berger's Preference Card (RUMC0001543-45, discussed above) indicates that RUMC has and can readily locate and produce similar information for physicians who perform surgeries using the accused techniques, implants and instruments. And the "chain of custody" documents produced by RUMC relating to the accused instruments indicates that RUMC can readily locate and produce documents providing details on the surgeries in which these instruments were used. Perhaps some of this information can be obtained from "other sources," as you say (although you don't identify these sources). But that is not the point. RUMC is a party to this suit that has benefitted from the activities that are accused of infringement, and affirmatively challenged Hudson Surgical's patent rights. Accordingly, RUMC must participate in the discovery process and comply with the Federal Rules of Civil Procedure.

We look forward to receiving your prompt response and the information that we have repeatedly requested.

Regards,

David J. Sheikh

DJS\le
cc:    Robert B. Briesblatt (robert.breisblatt@kattenlaw.com)
       Brian Sodikoff (brian.sodikoff@kattenlaw.com)

# EXHIBIT I

## NIRO, SCAVONE, HALLER & NIRO

RAYMOND P. NIRO
TIMOTHY J. HALLER
WILLIAM L. NIRO
JOSEPH N. HOSTENY, III
ROBERT A. VITALE, JR.
JOHN C. JANKA
PAUL K. VICKREY
DEAN D. NIRO
RAYMOND P. NIRO, JR.
PATRICK F. SOLON
ARTHUR A. GASEY
CHRISTOPHER J. LEE
DAVID J. SHEIKH
VASILIOS D. DOSSAS
SALLY WIGGINS
RICHARD B. MEGLEY, JR.
MATTHEW G. McANDREWS

181 WEST MADISON STREET-SUITE 4600

CHICAGO, ILLINOIS 60602-4635

———

TELEPHONE (312) 236-0733

FACSIMILE (312) 236-3137

June 27, 2008

LEE F. GROSSMAN
PAUL C. GIBBONS
BRADY J. FULTON
GREGORY P. CASIMER
DOUGLAS M. HALL
DINA M. HAYES
FREDERICK C. LANEY
DAVID J. MAHALEK
KARA L. SZPONDOWSKI
ROBERT A. CONLEY
ERIC J. MERSMANN
NICHOLAS M. DUDZIAK
LAURA A. KENNEALLY
TAHITI ARSULOWICZ

———

OF COUNSEL:
THOMAS G. SCAVONE

**Email Transmission:** (*robert.breisblatt@kattenlaw.com*)
Robert B. Breisblatt
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL 60661

Re:    *Hudson Surgical v. Rush System for Health, et al.*

Dear Bob:

Thanks for taking the time to talk with me this morning about the discovery related issues identified in our letters dated June 19 and 25, 2008. At your request I am sending this additional letter to assist you in addressing the issues. Because you and I discussed the issues in this letter, I request that you personally respond to me instead of delegating the matter to another attorney at your firm who did not take part in our conversation.

### The Accused Techniques, Implants and Instruments

You indicated that you need assistance in identifying the accused techniques and instruments. While we do not agree there is any legitimate confusion on this point, we are willing to provide additional assistance.

First, we refer you to Zimmer's response to Hudson Surgical's Interrogatory 3, which was served on you. The scope of Hudson Surgical's discovery requests to RUMC extend to the "Zimmer MIS Quad-Sparing Total Knee instruments" in the possession, custody or control of RUMC that are identified in the response, as well as the implants implanted using these instruments.

More specifically, Hudson Surgical's current infringement allegations include Zimmer Quad Sparing tibial and femoral cutting guides and alignment guides. The scope of Hudson Surgical's discovery requests extends to these guides, and the trays including them, that have been consigned to or purchased by RUMC.

Next, we direct you to document RUMC0001555, which was produced by Rush University Medical Center (RUMC). This document identifies a Zimmer Quad Sparing System that has been

Robert B. Breisblatt
June 27, 2008
Page 2

consigned to Rush. Hudson Surgical's current allegations of infringement extend to the surgical techniques, implants and instruments used in this system.

We also direct you to document H003538-39, which is RUMC press release dated February 6, 2004, that describes an "MIS Quad-Sparing Total Knee Procedure" done at RUMC. Hudson Surgical's current infringement contentions extend to the technique, implants and instruments used in this procedure, and the techniques implants and instruments used in all prior and subsequent MIS Quad-Sparing Total Knee Procedures done at RUMC. It is worth reiterating that this is a RUMC press release that was located with minimal difficulty on RUMC's website.

We also direct you to documents H004014-65 and H004166-220, which are entitled, "MIS Quad-Sparing Surgical Technique for Total Knee Arthroscopy, NEXGEN COMPLETE KNEE SOLUTION." Hudson Surgical's current infringement contentions extend to this technique and the instruments and implants described and shown in it. We also direct you to the MIS Quad-Sparing surgical techniques and the "Zimmer MIS Quad-Sparing Total Knee Procedure Instrumentation Case Layouts" produced by Zimmer in this litigation. Hudson Surgical's current infringement contentions extend to these techniques and instruments

Next, we direct you to document RUMC0001553, which describes a femoral tray. Although the document does not provide details, such as drawings or photos of the instruments, we believe that the tray, and specifically the Medial IM Guides and the Cutting Guides, are relevant to Hudson Surgical's current infringement contentions. We believe that RUMC should have similar documents describing a Quad Sparing Tibial Tray, and we request that you look into this.

Document RUMC0001554 may be relevant to Hudson Surgical's contentions, but we require additional information on the design of the Cutting Heads. Please provide this information. Document RUMC0001565 appears to be a duplication of RUMC0001554. To the extent it is not, we request additional information on the Cutting Heads identified in the document.

You directed us to documents RUMC0001556-558, which relate to a Quad Sparing Femoral Tray. We believe the Medial IM Guides and the Distal Cutting Guides are relevant to Hudson Surgical's infringement contentions. The quality of the photos is poor, so we need additional information on the design of these instruments. Furthermore, we believe RUMC should have similar documents describing a Quad Sparing Tibial Tray, and we request that you look into this.

You also directed us to document RUMC0001543, which is a preference card for Dr. Richard A Berger. We believe the Quad Sparing Femoral Tray and the MIS Tibial Cutting Jigs are relevant to Hudson Surgical's infringement contentions, but we require additional information on the designs of these instruments.

We believe that RUMC may have quad sparing trays and cutting guides for lateral placement. We did not see information on these trays and guides in the documents produced by RUMC to date. Please look into this.

To reiterate what I said during our conversation, we firmly believe that RUMC has records specifically identifying all of the above types of quad sparing instruments and trays that it has in is possession, custody or control, when it received the instruments and trays, when and by whom they were used and when and by whom they were sterilized. Please provide this information.

Robert B. Breisblatt
June 27, 2008
Page 3

We believe that the above information is more than sufficient to enable you to locate and produce documents and things identifying the quad sparing instruments that have been consigned to or purchased by RUMC. To the extent you are still having trouble doing this, we recommend you contact Zimmer. Zimmer has had no problem understanding what techniques and instruments are accused of infringement. Given the business, contractual and legal relationships between Zimmer and Rush, we assume Zimmer will help you out.

If we cannot obtain the information we have requested through responses to Hudson Surgical's written discovery requests, an alternative is to serve a notice of inspection under Fed.R.Civ.P. 34(a)(2) under which we would go to RUMC's facilities to inspect the consigned instruments and identify the relevant ones. At this point, we are proceeding on the basis that we will receive the requested documents and things from you. If our assumption is correct, please let us know.

**Information on RUMC Surgeons Who Have**
**Done Infringing Quad Sparing Procedures**

During our call, you stated that you intend to provide information on quad sparing procedures done at RUMC by Dr. Berger and Dr. Aaron Rosenberg because we previously referred to these doctors. Please provide this information. I indicated that we believe additional RUMC surgeons have done infringing quad sparing procedures and I requested information on these procedures. We debated whether it was reasonable for you to provide this information given the number of RUMC surgeons. In an effort to resolve our debate, I visited the websites of Midwest Orthopaedics at Rush and Zimmer to limit the scope of our request. I have attached printouts from these websites that identify area surgeons who we believe have done quad sparing procedures at RUMC. We request information on such procedures done by any of the nine surgeons identified on the Midwest Orthopaedics and Rush website, and any of the surgeons identified on the Zimmer website whose joint procedure specialties include "MIS Knee." We believe this resolves our debate. Please confirm that you will provide the requested information.

During our conversation, you urged us to seek discovery from the surgeons. We await and renew our request for documents that define the relationships between RUMC and its surgeons (or surgeon organizations). Furthermore, assuming the surgeons are third parties, we believe it appropriate to pursue our discovery requests with RUMC, which is a party to this suit, before turning to the surgeons.

**Information on RUMC Acquisitions and Purchases of Zimmer Implants**

We discussed that, to date, RUMC has provided information on RUMC's acquisitions and purchases of Zimmer implants for the years 2003-2005. You indicated that you would provide this information for the years 2006 through the first quarter of 2008 as well. We look forward to receiving this information.

Robert B. Breisblatt
June 27, 2008
Page 4

Finally, I won't spend time addressing the inconsistencies and misstatements in Thomas Maas' letter of June 25, 2008. I think I made myself clear on the letter during our conversation. I look forward to hearing back from you on the above issues

Very truly yours,

David J. Sheikh

DJS\le
cc:     Thomas Maas
        Brain Sodikoff

# EXHIBIT J

# The Zimmer Institute Surgical Technique

*MIS™ Quad-Sparing™*
**Surgical Technique for**
**Total Knee Arthroplasty**
*NEXGEN®* COMPLETE KNEE SOLUTION



THE ZIMMER INSTITUTE

©2004 Zimmer, Inc.

# acknowledgments

This *MIS Quad-Sparing* Surgical Technique for Total Knee Arthroplasty has been developed in conjunction with

Thomas M. Coon, MD
Orthopedic Surgical Institute
Red Bluff, California

E. Marlowe Goble, MD
Adjunct Clinical Professor of Orthopedics
University of Utah
Salt Lake City, Utah

Alfred J. Tria, Jr, MD
Clinical Professor of Orthopaedic Surgery
University of Medicine and Dentistry - New Jersey
Robert Wood Johnson Medical School
New Brunswick, New Jersey

Key contributions to the *MIS Quad-Sparing* Surgical Technique for Total Knee Arthroplasty were provided by

Jean-Noël Argenson, MD
Professor of Orthopaedic Surgery
Aix-Marseille University
Sainte Marguerite Hospital
Marseille, France

Francesco Benazzo, MD
Professor of Orthopaedic Surgery
University of Pavia
Pavia, Italy

Richard Berger, MD
Associate Professor of Orthopaedic Surgery
Rush University Medical College
Chicago, Illinois

Kim Bertin, MD
Utah Hip and Knee Center
Salt Lake City, Utah

Robert Booth, MD
Professor of Orthopaedic Surgery
University of Pennsylvania
Philadelphia, Pennsylvania

Mark Hartzband, MD
Director, Total Joint Replacement Service
Department of Orthopedics
Hackensack University Medical Center
Hackensack, New Jersey

Mark Pagnano, MD
at Mayo Clinic
Rochester, Minnesota

Wayne Paprosky, MD
Associate Professor of Orthopaedic Surgery
Rush University Medical College
Chicago, Illinois

Aaron Rosenberg, MD
Professor of Orthopaedic Surgery
Rush University Medical College
Chicago, Illinois

H004167

# contents

**LIST OF ABBREVIATIONS**
4

**INTRODUCTION**
5

**MIS QUAD-SPARING TKA KEY SUCCESS FACTORS**
6

Preparation for and Participation in Zimmer
*MIS Quad-Sparing* TKA Training Sessions . . . . . . . . 6

Meticulous Surgical Technique . . . . . . . . . . . . . 6

Conservative Patient Selection . . . . . . . . . . . . . 6

Precise Location of Incision . . . . . . . . . . . . . . 6

Knowledge of *NexGen* Cruciate Retaining (CR)
and Posterior Stabilized (PS) Knees . . . . . . . . . . 6

Adherence to the Procedures Outlined in this
Surgical Technique . . . . . . . . . . . . . . . . . . 7

Planning Your First *MIS Quad-Sparing* TKA . . . . . . . 7

**PATIENT SELECTION GUIDELINES**
8

**PREOPERATIVE TEMPLATING FOR NEXGEN IMPLANTS**
10

Templating the Femur . . . . . . . . . . . . . . . . .10
Templating the Tibia . . . . . . . . . . . . . . . . . .12

**SURGICAL TECHNIQUE**
14

Introduction . . . . . . . . . . . . . . . . . . . . . .14
Step 1: Define Incision and Expose Joint . . . . . . . .16
Step 2: Prepare the Patella . . . . . . . . . . . . . .18
Step 3: Resect the Distal Femur . . . . . . . . . . . .20
Step 4: Resect the Proximal Tibia . . . . . . . . . . .24
Step 5: Size the Femur and Establish External Rotation . .32
Step 6: Finish the Femur . . . . . . . . . . . . . . . .36
Step 7: Finish the Tibia . . . . . . . . . . . . . . . .40
Step 8: Perform a Trial Reduction . . . . . . . . . . .43
Step 9: Implant Components . . . . . . . . . . . . . .44
Step 10: Close the Incision . . . . . . . . . . . . . .49

**SURGERY CHECKLIST**
50

©2004 Zimmer, Inc.

3

## list of abbreviations

A/P: Anteroposterior

cm: Centimeter(s)

CR: Cruciate Retaining (Knee)

IM: Intramedullary

in: Inch(es)

L Lat: Left-lateral

L Med: Left-medial

LCCK: *Legacy®* Constrained Condylar Knee

LPS: *Legacy®* Posterior Stabilized (Knee)

M/L: Mediolateral

*MIS™: Minimally Invasive Solutions*™

mm: Millimeter(s)

PS: Posterior Stabilized (Knee)

R Lat: Right-lateral

R Med: Right-medial

ROM: Range of motion

TKA: Total knee arthroplasty

VAS: Visual analogue scale

4

©2004 Zimmer, Inc.

## introduction

Each year more than 300,000 total knee arthroplasties (TKAs) are performed in the United States alone (D'Ambrosia, *Orthopedics*, 2002). The surgical approach to TKA has undergone continual refinement and improvement since its introduction in the 1970s. Zimmer, Inc. has developed an innovative, minimally invasive TKA technique that employs implants with accepted and well-established design features that maintain the present expectation for accurate implant alignment. The Zimmer *Minimally Invasive Solutions™* (*MIS™*) *Quad-Sparing™* Surgical Technique for TKA has been designed to reduce incision length, reduce blood loss, shorten the hospitalization period, and possibly accelerate rehabilitation of the affected knee compared with current, traditional, non-minimally invasive approaches (Tria, *Orthopedics*, 2003). The goal of this *MIS Quad-Sparing* TKA Surgical Technique is to provide the surgeon and surgical team with the information necessary for them to help their patients achieve the best possible outcomes after TKA.*

*Zimmer has developed a set of specialized instruments designed for the *MIS Quad-Sparing* TKA. Zimmer is committed to the development and manufacture of instrumentation and implants that will enhance the efficiency of the surgical team in carrying out the steps of the procedure. Additionally, because of the technical demands of the procedure, it is required that the surgeon—and in some instances the first assistant—attend a Zimmer *MIS Quad-Sparing* TKA course before incorporating this procedure into practice. An expert on the *MIS Quad-Sparing* TKA may be made available at your medical center during your first case.

The *MIS Quad-Sparing* TKA training information is organized into a 3-ring binder that has been labeled and tab divided for quick reference. Primary components include *MIS Quad-Sparing* TKA critical success factors, patient selection, preoperative templating, and step-by-step procedures. The layout of the surgical procedures component is provided in a comprehensive, easy-to-follow stepwise manner. Each step in the *MIS Quad-Sparing* TKA is self-contained on one or more pages and is divided into sections to facilitate training of the surgical team. The sections included in each step of the procedures are summarized below.

### STEP DESCRIPTION
➤ Provides detailed text instruction to the surgeon and an inventory of the specialized instrumentation required to complete that step.

### MEDICAL ILLUSTRATIONS
➤ Corresponding line drawings, radiographs, and photographs are provided to illustrate the goals for that particular step.

### SURGEON NOTES AND TIPS
➤ Provides the surgeon with notes, hints, and tips from leading experts on the *MIS Quad-Sparing* TKA.

### SURGICAL SUPPORT TEAM TIPS
➤ Summarizes important patient positioning and other key support to help improve the efficiency of the surgery.

In addition, a number of distinctive instruments have been developed to help improve efficiency in performing the steps of the *MIS Quad-Sparing* TKA. New instrumentation appears in **bold** print throughout the text.

As this technique may continue to develop with additional experience, your Zimmer sales associate will provide you with periodic updates as they become available.**

**Instrumentation for performing the *MIS Quad-Sparing* TKA procedure is continually being refined, and information about these new developments will be made available periodically.

©2004 Zimmer, Inc.

H004170

# MIS Quad-Sparing TKA key success factors

## Preparation for and Participation in Zimmer MIS Quad-Sparing TKA Training Sessions

The MIS Quad-Sparing TKA employs an innovative medial approach that may cause experienced surgeons to undergo a period of adjustment to a new orientation of common landmarks. In addition, specialized instrumentation has been developed that requires instruction on proper use. As a consequence, there are no shortcuts to gaining the expertise to use the approach effectively in orthopaedic practice. The value of any training program for a new procedure is proportional to the commitment put forth by the participants. Attendance and active participation in the pretraining exercises, anatomy labs, cadaver training, and preceptorship program are essential to help minimize complications and help enable success.

## Meticulous Surgical Technique

The MIS Quad-Sparing TKA requires a high level of performance and attention to detail by the surgeon, especially with respect to soft tissue management in the early portion of the procedure. When performed by the hands of a trained surgeon, the MIS Quad-Sparing TKA has the potential to help the surgeon achieve great success with regard to patient outcomes. However, although the success of other surgeons has demonstrated the efficacy of this technique, only the individual surgeon can evaluate his or her present skill level and the ability of the surgical team to undertake this approach.*

*Experience with unicondylar knee arthroplasty and Mini-Incision TKA may be helpful before performing the more technically demanding MIS Quad-Sparing TKA.

## Conservative Patient Selection

Although the surgeon may be tempted to expand the patient pool for the MIS Quad-Sparing TKA, patients should be selected based on a conservative approach to patient and disease factors to help achieve the best outcomes, particularly for the surgeon's and surgical team's initial experiences. For instance, when first starting with the procedure, a patient who is well-proportioned and with no more than 10 degrees of joint deformity in any plane may be considered a potential candidate for MIS Quad-Sparing TKA. The ideal patient should be non-obese, with a range of motion (ROM) of >110 degrees with underlying osteoarthritis. However, after the surgeon gains experience and skill with the MIS Quad-Sparing TKA, the selection criteria may be expanded to include more patient and joint disease factors (within the indications/contraindications contained in the package insert.)

## Precise Location of Incision

As with all surgery, the location of the skin incision becomes increasingly critical with decreasing incision length. To optimize visualization and implant alignment, the incision must be made at the precise position determined using standard landmarks. In contrast to the position of the incision, the length of the incision is less important, and the MIS Quad-Sparing TKA name refers more to the minimal dissection and interruption of soft tissue and muscle rather than incision length.

If visualization and/or working space prove too limited, or in the rare case in which complications arise, the surgeon can easily convert from the MIS Quad-Sparing TKA to the Mini-Incision TKA or a traditional TKA.

## Knowledge of NexGen Cruciate Retaining (CR) and Posterior Stabilized (PS) Knees

Because the MIS Quad-Sparing TKA has been developed to capitalize on preserving the quadriceps mechanism while optimizing limb alignment and soft tissue balance and stability, it is highly recommended that the surgical team have substantial experience with NexGen implants and associated Mini-Incision TKA instrumentation before incorporating the MIS Quad-Sparing TKA into practice. There are nuances to each implant design that must be understood.

©2004 Zimmer, Inc.



THE ZIMMER INSTITUTE

## Adherence to the Procedures Outlined in this Surgical Technique

The *MIS Quad-Sparing* TKA technique was first practiced in early 2002, and has since undergone numerous refinements to minimize interruption of the quadriceps mechanism and other soft tissue manipulation. Additionally, specialized instrumentation has been provided to help the surgeon with the procedure. This instrumentation will be demonstrated in the didactic lecture portion of the training and, subsequently, in anatomic demonstrations/sessions. Some flexibility in performing the steps of the *MIS Quad-Sparing* TKA is provided through alternative practices located in the "Surgeon Notes and Tips" section of each step. In his or her practice, the surgeon may note that a slight variation of these techniques may work well; however, attention should focus on successfully completing the steps as outlined in this surgical technique, especially in early experiences.

## Planning Your First *MIS Quad-Sparing* TKA

It is important to capitalize on the initial *MIS Quad-Sparing* TKA training by promptly scheduling further training with a preceptor. It is highly recommended that you attend a live demonstration within 2 weeks after attending the lecture and laboratory training. A member of the Zimmer *MIS Quad-Sparing* TKA team or your local/regional Zimmer sales associate can help arrange the logistics for such meetings.

©2004 Zimmer, Inc.

7

# patient selection guidelines

As with other major elective surgeries, some patients are better suited for one TKA surgical approach versus another. The potential benefits and risks of the various TKA options should be clearly described to the patient to help ensure that an informed decision is made. In this section, selection parameters for the *MIS Quad-Sparing* TKA procedure will be considered.

Although your own experience will guide your subsequent selection process, a carefully defined subgroup of patients eligible for traditional TKA may be considered for your initial experiences with the *MIS Quad-Sparing* TKA. General inclusion and exclusion criteria are summarized in Table 1. To date, the vast majority of *MIS Quad-Sparing* TKA procedures have been performed in patients with mild to moderate osteoarthritis whose pain is no longer alleviated with nonsurgical treatments. Currently, there is limited experience or rationale for performing the *MIS Quad-Sparing* TKA in patients with other pathologies, such as severe hypertrophic arthritis, rheumatoid arthritis, or fixed flexion or angular deformities. Although a portion of these patients may be suitable for the *MIS Quad-Sparing* TKA, they should not be the initial cases selected.

## TABLE 1. RECOMMENDED *MIS QUAD-SPARING* TKA CRITERIA

**Inclusion criteria**
- ➤ Mild to moderate osteoarthritis
- ➤ Pain not alleviated with medication or other noninvasive therapies
- ➤ <10-degree varus deformity
- ➤ <10-degree valgus deformity
- ➤ <10- to 15-degree flexion contracture
- ➤ Range of motion >100 degrees
- ➤ Non-obese, well proportioned
- ➤ No cognitive impairment
- ➤ Willing and able to comply with directions
- ➤ No prior knee surgery on the affected joint

**Exclusion criteria**
- ➤ Rheumatoid arthritis
- ➤ Severe hypertrophic arthritis
- ➤ Fixed flexion or angular deformities
- ➤ Osteoporosis
- ➤ Standard manufacturer precautions listed in package insert*

*Please refer to package insert for complete product information including contraindications, warnings, precautions, and adverse events.

8

©2004 Zimmer, Inc.



THE ZIMMER INSTITUTE

The typical patient is well proportioned, and exhibits a relatively normal knee joint anatomy (<10-degree deformity in any plane). Although leaner patients may be preferred in initial cases, care should be exercised that the patient is not overly muscular. Additionally, although patients with ROM >110 degrees are better suited for early cases, patients with ROM >100 degrees may also be considered. Other important patient selection factors include varus and valgus deformities limited to 10 degrees. Similarly, patients with a flexion contracture <15 degrees are preferred. Elderly patients with comorbidities may also be suitable candidates provided the conditions are stable or well controlled (e.g., diabetes, hypertension). In general, age is not considered a contraindication provided the general health of the patient and the bone stock are adequate. However, a potentially longer tourniquet time should be considered when determining whether to perform surgery on older patients.

©2004 Zimmer, Inc.

H004174

# preoperative templating for *NEXGEN* implants

The Zimmer *MIS Quad-Sparing* TKA capitalizes on an approach that preserves the quadriceps mechanism, protects the suprapatellar pouch and minimizes soft tissue manipulation and disruption. The new medial approach employed in this technique requires a shift in planning by the surgical team. In contrast to the traditional TKA approach, in which the affected knee is templated intraoperatively, it is highly recommended that the surgeon template the knee before *MIS Quad-Sparing* TKA because of the more limited exposure. Additionally, the positions of anatomic landmarks will be substantively different from those previously mastered in the traditional TKA. This reinforces the importance of thorough and accurate preoperative planning to help ensure that the surgeon has a clear knowledge of the radiographs and knee joint before surgery is performed.

The overall objective of preoperative templating is to aid the surgeon in

➤ Identifying joint deformity and flexion contracture issues.

➤ Estimating the size of the Femoral and Tibial Components for implantation*.

*An adequate inventory of implant sizes and corresponding instruments should be available at the time of surgery, and should include sizes larger and smaller than those estimated in preoperative templating. Extra implant components are recommended to be prepared for intraoperative contingencies.

The *MIS Quad-Sparing* TKA technique helps the surgeon to ensure that the distal femur will be cut perpendicular to the mechanical axis and, after soft tissue balancing, will be parallel to the resected surface of the proximal tibia. Use template overlays available from your Zimmer sales associate to help determine the angle between the anatomic and mechanical axes of the femur (Figure 1). This angle should be reproduced intraoperatively.



Figure 1. Anatomic and mechanical axes of the femur.

### Templating the Femur

The primary objective of templating the femur is to estimate the size of the Femoral Component. Preoperative determination of the correct Femoral Component size requires radiographs of the affected knee in both anteroposterior (A/P) and lateral views. The initial templating should start with the A/P radiograph. The template over-lays are superimposed over the radiograph until a component is found that provides the ideal fit with maximum coverage (Figure 2).



Figure 2. Radiograph of template fit in A/P view.

©2004 Zimmer, Inc.

H004175



THE ZIMMER INSTITUTE

The size of the Femoral Component should be determined and cross-checked by superimposing the templates on the A/P and lateral radiographs.

An excessively large Femoral Component size should alert the surgeon to the likelihood that the incision may need to be extended (Table 2).

**Table 2. Estimated *MIS Quad-Sparing* TKA Incision Length Versus Femoral Component Size**

| Femoral Component size* | Estimated *MIS Quad-Sparing* TKA incision length, cm (inches) |
|---|---|
| A, B, C, D | 7 - 8 (~3) |
| D, E, F | 8 - 9 (~3.5) |
| F, G, H | 9 - 11 (~4) |

*NexGen Femoral Components are available for either knee in 8 sizes (A, B, C, D, E, F, G, H).

The *NexGen* knee system is a complete and totally integrated system with an offering of cruciate retaining, cruciate substituting, and fully constrained component configurations. The *NexGen* CR and LPS implants are intended for primary TKA in patients with good bone stock and adequate ligament stability and balance. The *NexGen* CR-Flex and LPS-Flex implants are designed to safely accommodate greater range of motion for cultural, recreational, or work activities that require deep flexion. The surgeon can select the implant system that fits the surgeon's design philosophy and meets specific patient needs.

©2004 Zimmer, Inc.

H004176

**Templating the Tibia**

The primary objective of templating the tibia is to estimate the dimensions of the Tibial Plate and articular surfaces.** Radiographs in the A/P and lateral views should be used to estimate the dimensions of the Tibial Components that will provide the best coverage for the prepared tibial surface. Superimpose the template overlays until a component size is found that provides the best fit.

**The *NexGen* Tibial Plates are available in 10 sizes (sizes 1 to 10).

The dimensions of the Tibial Components should be determined and cross-checked by superimposing the templates on the A/P and lateral radiographs.

Although femoral and tibial preoperative templating is important to optimizing *MIS Quad-Sparing* TKA, it is not absolutely determinate. The final decision on component size is made during surgery, when all the 3-dimensional aspects of the knee joint can be fully visualized.

12

©2004 Zimmer, Inc.

H004177

**NOTES**

THE ZIMMER INSTITUTE

©2004 Zimmer, Inc.

13

H004178

# surgical technique

## Introduction

Successful TKA is directly dependent on re-establishment of normal lower extremity alignment, proper component design and orientation, secure component fixation, and adequate soft tissue stability. The Zimmer *MIS Quad-Sparing* instrumentation was designed to help the surgeon accomplish these goals through combining optimal alignment accuracy with a simple, straightforward technique.

Successful *MIS Quad-Sparing* TKA is directly dependent on preserving the quadriceps mechanism and protecting the suprapatellar pouch. The *MIS Quad-Sparing* TKA instruments were designed to be used through a shorter incision and without completely everting the patella. The procedure was developed to provide unobstructed access for the resection instruments. Proper soft tissue retraction and joint positioning allow excellent visualization of the joint.

The *MIS Quad-Sparing* TKA instruments can be used with the following implants:

➤ *NexGen* CR

➤ *NexGen* CR-Flex Fixed

➤ *NexGen* LPS

➤ *NexGen* LPS-Flex Fixed

➤ *NexGen* LPS-Flex Mobile*

*This device not available for commercial distribution in the United States.

The center of the hip, knee, and ankle are restored to lie on a straight line, establishing a neutral mechanical axis. The *NexGen* Femoral and Tibial Components are oriented perpendicular to the mechanical axis. The instruments were designed to allow accurate resection to help ensure secure component fixation. An extensive size range of components allows soft tissue balancing with appropriate soft tissue release.

Implant flexibility offers the opportunity to switch from a CR prosthesis to a PS prosthesis quickly and easily. Similarly, instrument flexibility offers the opportunity to switch from a minimally invasive technique to a traditional open technique at any point in the procedure.

The *MIS Quad-Sparing* TKA instrument sets are designed to accommodate exposure from the medial side of the joint and for a right or left limb. Appropriate adjustments must be made, including the use of different instruments and attending an advanced training course prior to using a lateral approach.

©2004 Zimmer, Inc.

H004179

**NOTES**

**THE ZIMMER INSTITUTE**

©2004 Zimmer, Inc.

15

## STEP 1: DEFINE INCISION AND EXPOSE JOINT

After the patient has been prepped, the incision is defined. Palpate the anatomic landmarks of the knee. Mark the circumference of the patella, the tibiofemoral joint line, and the medial femoral condyle. With the anatomic references marked make a slightly curved medial parapatellar skin incision beginning over the medial edge of the quadriceps tendon at the level of the superior pole of the patella. Extend the incision around the superior medial corner of the patella, then straight to approximately 2 to 3cm below the joint line (Figure 1A).

capsular incision in line with the skin incision. With the joint open, excise the fat pad. Then release the deep portion of the medial collateral ligament and elevate the ligament from the medial tibia.

Expose the patella medially. Then extend the capsular incision superiorly to the level of the skin incision (Figure 1C), being careful to avoid the vastus medialis. Isolate the vastus medialis where its fibers meet the fibers of the quadriceps tendon. This will help free the patella without violating the quadriceps tendon or the vastus medialis muscle.

Remove the patellar fat pad from beneath the patellar tendon.

Use electrocautery to mark the base of the femoral sulcus. This forms one of the reference points for the A/P axis.







Figure 1C. Insertion beneath the vastus medialis muscle.

Figure 1A. Marked landmarks and skin incision.



Figure 1B. Dissect the subcutaneous tissue.

Dissect the subcutaneous tissue and locate the insertion of the vastus medialis muscle (Figure 1B). Continue to dissect through the fat pad, and make a

Dissect the synovium from the anterior aspect of the femur to allow identification of bony landmarks. Use a collateral retractor to retract the soft tissue laterally. Sublux the patella laterally to visualize the lateral aspect of the joint.

©2004 Zimmer, Inc.

H004181



**THE ZIMMER INSTITUTE**

## SURGEON NOTES & TIPS

➤ The skin incision should be moved as a window to expose the area of dissection and minimize the chance of excessive retraction. This window can be moved both medial to lateral and superior to inferior as needed to gain optimal exposure.

➤ When experiencing difficulty with visualization, exposure may be altered by repositioning the leg in flexion or extension (although counterintuitive, greater visibility can often be achieved with the limb in extension).

➤ Although surgeons initially train to operate from the opposite side of the incision (i.e., laterally), some surgeons may prefer to perform the steps of the procedure from the medial side.

## SURGICAL SUPPORT TEAM TIPS

➤ As a general practice, apply gentle retraction where the surgeon is working and needs visualization.

➤ Excessive retraction can lead to a paradoxical reduction in exposure and may cause damage to the skin and soft tissues.

➤ A leg holder may facilitate leg positioning throughout surgery. Your Zimmer sales associate can provide contact information for obtaining a leg holder.

©2004 Zimmer, Inc.

H004182

## STEP 2: INITIAL PATELLA CUT

Turn the patella approximately 90 degrees, and use the Patellar Caliper to measure its thickness (Figure 2A). Then remove osteophytes and soft tissue from the medial side of the patella.

Determine the amount of bone to remain.



Figure 2A. *Use a Patellar Caliper to measure the thickness of the patella.*

Place a ostetome or retractor behind the patella to help protect the other joint surfaces and soft tissues, then use an oscillating saw to resect the articular surface.

Make a preliminary freehand saw cut to remove 5-7mm of bone.

The patella may be finished near the conclusion of surgery after finishing the femur and tibia.



©2004 Zimmer, Inc.

H004183

**THE ZIMMER INSTITUTE**

NOTES

©2004 Zimmer, Inc.

19

H004184

## STEP 3: RESECT THE DISTAL FEMUR

Remove the anterior cruciate ligament and, if using a *NexGen* LPS component, the posterior cruciate ligament. Use electrocautery to mark the midline of the roof of the intercondylar notch. With the knee in extension, connect this mark to the anterior mark made earlier (Figure 3A). This line represents the A/P axis (Whiteside's line) of the distal femur. Remove any osteophytes from the femoral anterior cortex and medial femoral condyle.



Figure 3A. Completed marking of A/P axis.

Use the 8-mm Intramedullary (IM) Drill w/Step to drill a hole in the center of the patellar sulcus of the distal femur (Figure 3B). Be sure that the drill is parallel to the shaft of the femur in both the A/P and mediolateral (M/L) planes. The hole should be approximately (1cm) or just anterior to the origin of the posterior cruciate ligament. The step on the drill will enlarge the entrance hole to 12mm to help reduce intramedullary pressure from placement of subsequent IM guides.



Figure 3B. IM Drill in correct position and orientation.

Select the appropriate **IM Alignment Guide** for the desired valgus angle as determined in preoperative planning. The medial IM Alignment Guide is available in 4, 5 and 6 degree valgus angles.* If the femoral anatomy has been altered, as in a femur with a long-stem hip prosthesis or with a femoral fracture malunion, use the optional 6 in. IM Alignment Guide, which is not yet available.

*The medial IM Alignment Guide will also be available in 3 and 7 degree valgus angles at a later date.

©2004 Zimmer, Inc.

H004185



**THE ZIMMER INSTITUTE**

Select the medial **Distal Cut Guide**. The cut slot is 4mm smaller on the lateral Distal Cut Guide. Insert the threaded end of the *MIS* **Threaded Handle** through the slot of the IM Alignment Guide and attach the Distal Cut Guide by threading the handle into the guide (Figure 3C). Before inserting the IM Alignment Guide, slide the Distal Cut Guide away from the rod of the IM Alignment Guide and secure it loosely by turning the handle.

Figure 3C. Distal Cut Guide: components.



Insert the assembly into the hole in the distal femur until the base of the IM Alignment Guide is flush against the distal femur (Figure 3D). Loosen the *MIS* Threaded Handle and slide the Distal Cut Guide toward the joint until it contacts the medial femoral condyle.



Figure 3D. Assembly flush against medial femoral condyle.



©2004 Zimmer, Inc.

H004186

Slide the Distal Cut Guide anteriorly or posteriorly until it is properly centered relative to the condyle (Figure 3E). Tighten the *MIS* Threaded Handle. Position the angle of the Distal Cut Guide against the femur for optimum condyle fixation of the guide.

If desired, use the Resection Guide to check the depth of the cut.

Pin the Distal Cut Guide in place using two 3.2-mm (1/8-in) Headless Screws, or predrill and use Gold Headless Holding Pins through the holes marked "0" on the medial face of the Distal Cut Guide. Using Headless Holding Pins allows repositioning of the Distal Cut Guide to the holes marked +2mm or −2mm.

For additional stability, insert a 3.2-mm (1/8-in) Headed Screw, or predrill and insert a headed pin through another hole on the Distal Cut Guide (Figure 3F).



Figure 3E. Distal Cut Guide in correct position relative to condyle.



Figure 3F. Distal Cut Guide with Headed Screw inserted.

©2004 Zimmer, Inc.

H004187



**THE ZIMMER INSTITUTE**

With the Distal Cut Guide firmly in place, use a narrow oscillating saw with a 1.27mm (0.05in) blade to begin to resect the medial condyle (Figure 3G).

Figure 3G. Resection of distal femur with Distal Cut Guide in place.

Remove the IM Alignment Guide, leaving the Distal Cut Guide in place. Begin resection of the lateral condyle. Then remove any holding pins or screws from the Distal Cut Guide and remove the Distal Cut Guide (Figure 3H). Complete the lateral condyle resection. It may be helpful to extend the knee to complete this resection, taking care to protect the lateral collateral ligament.



Figure 3H. Complete distal femoral condyle resection after Distal Cut Guide removal.

## SURGEON NOTES & TIPS

➤ When using screws or pins from the medial side in the posterior condyle, shorter screws should be used to avoid injury to intercondylar structures.

## SURGICAL SUPPORT TEAM TIPS

➤ Anticipate the instrumentation that is needed for the next step to help increase the efficiency of surgery.

©2004 Zimmer, Inc.

23

## STEP 4: RESECT THE PROXIMAL TIBIA

In this step, the tibial cut is aligned to help ensure proper posterior slope and rotation. The tibia is then resected perpendicular to the mechanical axis.

Remove the anterior portion of the lateral meniscus. Remove any remaining portion of the fat pad. Extend the knee and clear soft tissue from the lateral side of the proximal tibia. Then flex the knee and, if necessary, release more of the medial side of the patellar tendon from the anterior tibia. Use the Proximal Tibial Retractor to sublux the tibia anteriorly (Figure 4A).



Figure 4A. Tibia subluxed anteriorly.

*Assemble the Alignment Guide*
The **Tibial Alignment Guide** assembly consists of 7 instruments.

➤ Tibial Cut Guide

➤ Tubercle Arm

➤ Proximal Telescoping Rod

➤ Tibial Boom (7-degree tibial slope)*

➤ Distal Telescoping Rod

➤ Ankle Bar (M/L position) with optional strap

➤ Tibial Depth Gauge

*The Tibial Boom will also be available in a 3-degree tibial slope at a later date.

©2004 Zimmer, Inc.

H004189



**THE ZIMMER INSTITUTE**

Slide the **Ankle Bar** onto the dovetail at the bottom of the **Distal Telescoping Rod**. Turn the knob opposite the dovetail to temporarily hold the bar in place.

Arrows are etched onto both the **Proximal Telescoping Rod** and the Distal Telescoping Rod to indicate the correct orientation during assembly (Figure 4C). Insert the Proximal Telescoping Rod into the Distal Telescoping Rod. Adjust the length to approximate the length of the patient's tibia and temporarily tighten the thumb screw at the proximal end of the Distal Telescoping Rod.



Figure 4B. Assembly and correct orientation of Proximal and Distal Telescoping Rods.

The initial system includes a **Tibial Boom** that corresponds to the posterior slope of the selected stemmed tibial implant, typically 7 degrees. When using the 4-peg tibial implant, the surgeon chooses a Tibial Boom based on the slope the tibia is resected (i.e., 3 or 7 degrees, when the former is available). Slide the selected Tibial Boom over the dovetail at the proximal end of the Proximal Telescoping Rod. Slide it distally until it rests on the pin stop at the end of the dovetail. This will allow the depth of resection to be adjusted after the Tibial Alignment Guide has been secured in position.

©2004 Zimmer, Inc.

Attach the **Tubercle Arm** to the proximal end of the Proximal Telescoping Rod.

*Position the Alignment Guide*
Place the spring arms of the Ankle Bar around the ankle proximal to the malleoli (Figure 4D) and loosen the knob that provides M/L adjustment at the ankle. If preferred, the **Ankle Strap** (optional) may be used instead of the spring arms.



Figure 4C. Ankle Bar and Ankle Strap positioning.

H004190

Loosen the knob on the proximal end of the Distal Telescoping Rod and adjust the length of the guide until the Tubercle Arm is superior to the tibial tubercle. With the Tubercle Arm contacting the bone, move the arm mediolaterally to align the rod with the medial third of the tibial tubercle (Figure 4E). This will usually place the proximal end of the Distal Telescoping Rod so it is centered below the intercondylar eminence. The assembly will be slightly medial to the tibial shaft when positioned correctly relative to the tibial tubercle.

Use 3.2-mm (1/8-in) headed screws or predrill and insert 2 headed pins in the tibial tubercle through the cannulation in the Tubercle Arm. One headed screw should be inserted in an upper hole and one in a lower hole on the contralateral side. Alternatively, the Tubercle Arm may be fixed percutaneously. Tighten the proximal knob of the Distal Telescoping Rod to maintain the length of the assembly. The second screw should not be placed until the final varus/valgus and flexion/extension positions of the Tibial Cut Guide have been determined. (NOTE: If the headed screw is secured percutaneously do not over tighten against the skin).

Attach the Extramedullary Alignment Arch into the holes on the central block of the Tibial Boom, and insert the Alignment Rod with Coupler through the arch, passing it distally toward the ankle to check varus/valgus alignment.



Figure 4D. Component alignment relative to tibial tubercle.

©2004 Zimmer, Inc.

H004191



**THE ZIMMER INSTITUTE**

Adjust the distal end of the Distal Telescoping Rod by loosening the anterior knob and moving the slide at the foot of the rod medially or laterally until the guide is aligned with the mechanical axis of the tibia. The foot of the Distal Telescoping Rod should be positioned about 5 to 10mm medial to the midpoint between the palpable medial and lateral malleoli. The tip should point to the second toe (Figure 4F). When the proper M/L position is achieved, tighten the knob to secure the ankle clamp to the Distal Telescoping Rod.

In the sagittal plane, align the Distal Telescoping Rod so that it is parallel to the anterior tibial shaft by using the slide adjustment at the distal end of the Distal Telescoping Rod and the screw adjustment on the Tubercle Arm. Tighten the knob for the distal adjustment. If there is a bulky bandage around the ankle, adjust the Distal Telescoping Rod to accommodate the bandage. This will help ensure that the tibia will be resected with the proper slope. Tibial slope can be adjusted by modifying the position of the proximal and distal rods.



Figure 4F. Distal Telescoping Rod in proper position relative to the malleoli and toes.

©2004 Zimmer, Inc.

H004192

Sublux the tibia anteriorly. Slide the **Tibial Cut Guide** onto the medial extension of the Tibial Boom until the cutting head contacts the tibia at an oblique angle.

Tighten the thumb screw at the base of the Tibial Cut Guide. Then loosen the thumb screw on the Tibial Boom and adjust the Tibial Cut Guide up or down to the approximate depth of the cut. Insert the *MIS* **Tibial Depth Resection Guide** through the cutting slot to assess the slope of the cut (Figure 4G). The second threaded screw is then set in the Tubercle Arm.



Figure 4G. Tibial Cut Guide in position, with *MIS* Tibial Depth Resection Guide inserted.

*Set the Final Resection Level*
With the Tibial Cut Guide flush against the tibia, position the **Tibial Depth Resection Gauge** into the hole of the Tibial Cut Guide. Swing the arm of the Tibial Depth Resection Gauge over the damaged tibial condyle. For a minimal cut, adjust the Tibial Cut Guide by moving the Tibial Boom up or down on the Proximal Telescoping Rod until the tip of the 2mm arm on the Tibial Depth Resection Gauge rests on the surface of the condyle (Figure 4H). This will position the Tibial Cut Guide to remove 2mm of bone below the tip of the stylus.



Figure 4H. Tibial Cut Guide in position.

28

©2004 Zimmer, Inc.

H004193



**THE ZIMMER INSTITUTE**

Check the depth of the cut using the Tibial Depth Resection Gauge. If it is necessary to remove more bone, use the 4-mm tab of the Tibial Depth Resection Gauge.

Use the Hex-head Screwdriver to tighten the screw on the Tibial Boom and on the Tibial Cut Guide to maintain position. If desired, use the Extramedullary Alignment Arch and the Alignment Rod with Coupler to confirm alignment. Then, place a screw or Headless Holding Pin into the hole marked "0" on one side of the Tibial Cut Guide (Figure 4I).



Figure 4I. Headless Screw into "0" hole.

Insert a Headless Screw or pin into another hole on the other side of the Tibial Cut Guide (Figure 4J).



Figure 4J. Assembly firmly attached in place.

©2004 Zimmer, Inc.

**Resect the Proximal Tibia**
Use a 1.27mm (0.05in) oscillating saw blade through the slot on the Tibial Cut Guide to cut the proximal surface of the tibia flat (Figure 4K). After cutting as far lateral as possible with the Tibial Cut Guide, remove the alignment/cut guide assembly. Extend the knee and retract soft tissue on the lateral side; then complete the cut.



Figure 4K. Tibial cut.

H004194

Remove any remaining meniscal tissue. Use **MIS Spacer Blocks** to check limb alignment in extension (Figure 4M).



Figure 4M. *MIS* Spacer Block inserted with knee in full extension.

### SURGEON NOTES & TIPS

➤ Remove the Tibial Alignment/Cut Guide assembly without loosening any of the screws or changing any of the settings. This will help ensure that the assembly can be reattached if it becomes necessary to adjust the tibial cut.

➤ After cutting through the medial condyle, use a reciprocating saw to cut vertically down the center of the intercondylar eminence, being careful not to cut deeper than the desired depth of tibial resection. This allows the resected medial bone to be removed, providing a better view across the tibial surface when completing the cut on the lateral side.

➤ Removing the lateral aspect of the tibia is a difficult step in the procedure. Take precautions to prevent excessive forward movement of the saw and ensure that the lateral ligaments are protected.

### SURGICAL SUPPORT TEAM TIPS

➤ Be prepared to sublux the tibia to open or improve visibility.

➤ Protect soft tissue during resections.



©2004 Zimmer, Inc.

H004195

**THE ZIMMER INSTITUTE**

**NOTES**

©2004 Zimmer, Inc.

H004196

# STEP 5: SIZE THE FEMUR AND ESTABLISH EXTERNAL ROTATION

The *Quad-Sparing* **Medial A/P Sizer** is available in Small and standard sizes as well as Right and Left with 3 degrees of external rotation built into the posterior paddles.

For a femur that is estimated to be smaller than Size D, select the appropriate Small *Quad-Sparing* A/P Sizer right-medial (R Med) or left-medial (L Med) (Figure 5A).

For a femur that is estimated to be larger than Size C, select the appropriate standard *Quad-Sparing* A/P Sizer right-medial (R Med) or left-medial (L Med) (Figure 5A).



Figure 5A.—*Quad-Sparing* Medial A/P Sizer and A/P Sizer Tower.

Attach the tower component to the base. Secure the superior knob with the Hex-head Screwdriver. *Caution: Failure to secure the superior knob may result in a sizing error.*

Apply the guide so that the flat of the *Quad-Sparing* Medial A/P Sizer is flush against the resected surface of the distal femur and the feet of the *Quad-Sparing* Medial A/P Sizer are flush

against the posterior condyles (Figure 5B). Position the A/P Medial Sizer base so the engraved line is centered near the line drawn for the A/P axis (Figure 5C).

This will establish 3 degrees of external rotation relative to the posterior condyles.

Note: Remove any osteophytes that interfere with instrument positioning.



Figure 5B.—*Quad-Sparing* Medial A/P Sizer flush against posterior condyles.



Figure 5C.—*Quad-Sparing* Medial A/P Sizer base position relative to A/P axis.

If preferred, the long axis of the *Quad-Sparing* Medial A/P Sizer can be aligned to the A/P axis (Whiteside's line) by rotating the *Quad-Sparing* Medial A/P Sizer tower until it is parallel to Whiteside's line. The medial foot of the *Quad-Sparing* Medial A/P Sizer should remain flush against the medial condyle unless the condyle is atrophic.

©2004 Zimmer, Inc.

H004197



THE ZIMMER INSTITUTE

While holding the *Quad-Sparing* Medial A/P Sizer in place, insert a short (27 mm), 3.2mm (1/8in) Headed Screw or predrill and insert a short Headed Holding Pin into a hole on the face of the *Quad-Sparing* Medial A/P Sizer tower to secure the *Quad-Sparing* Medial A/P Sizer to the distal femur (Figure 5D). Check again to be sure the guide is properly aligned relative to the A/P axis. Then insert another screw or pin through any of the holes on the lateral side of the *Quad-Sparing* Medial A/P Sizer. Note that the fixation holes that are recessed angle obliquely.



Figure 5D.—*Quad-Sparing* Medial A/P Sizer secured in position.

Remove the *MIS* Threaded Handle. Slightly extend the knee and retract the soft tissues to expose the anterior femoral cortex. Attach the *MIS* **Locking Boom** to the *Quad-Sparing* Medial A/P Sizer tower (Figure 5E). Clear any soft tissue from the anterior cortex.



Figure 5E.—*MIS* Locking Boom in position.

©2004 Zimmer, Inc.

Turn the *Quad-Sparing* Medial A/P Sizer tower clockwise until the tip of the *MIS* Locking Boom contacts the lateral rise of the anterior femoral cortex (Figure 5F).

Figure 5F.—*MIS* Locking Boom positioned against the anterior femoral cortex.

The position of the *MIS* Locking Boom dictates the exit point of the anterior bone cut and the ultimate position of the femoral component. Determine the femoral size directly from the face of the tower assembly (Figure 5G). Read the size between the points on the guide. There are 8 sizes, labeled "A" through "H." If the indicator is between 2 sizes, the smaller femoral size is typically chosen. This prevents excessive ligament tightness in flexion.



Figure 5G.—Femoral size determination.

H004198

Remove the *MIS* Locking Boom and place the **External Rotation Cut Guide** on the *Quad-Sparing* Medial A/P Sizer tower so that it is aligned with the front of the femur. The Cutting Block will set the first femoral cut and establish 3 degrees of external rotation. Use the Resection Guide to ensure that the anterior femur will not be notched. Alternatively, the exit point for the sawblade can be determined by inserting the 3.2mm (1/8in) Drill into the space above the cut slot and checking the exit point of the Drill on the anterior femur. With the Cutting Block in place, insert a short, 3.2mm (1/8in) Headed Screw into the hole in the cutting block to secure its position. Use the 1.27mm (0.05in) narrow oscillating saw blade to make the preliminary cut (Figure 5I). Then remove the Headed Screw and External Rotation Cut Guide and complete the resection. After the resection is complete, remove the screws or pins and remove the *Quad-Sparing* Medial A/P Sizer. Verify that the cut establishes 3 degrees of external rotation.

©2004 Zimmer, Inc.

H004199

**NOTES**

THE ZIMMER INSTITUTE

©2004 Zimmer, Inc.

35

H004200

## STEP 6: FINISH THE FEMUR

Thread the *MIS* Threaded Handle into a threaded hole (center or lower medial edge) on the appropriate size *MIS* Femoral Finishing Guide or *MIS* Flex Femoral Finishing Guide. Place the *MIS* Modular Shelf onto the *MIS* Femoral Finishing Guide or *MIS* Flex Femoral Finishing Guide and secure (Figure 6A).



Figure 6A. Attach *MIS* Anterior Shelf to the *MIS* Femoral Finishing Guide.

Position the *MIS* Femoral Finishing Guide or *MIS* Flex Femoral Finishing Guide on the respected anterior surface of the femur. Apply the *MIS* Femoral Finishing Guide to the distal femur so that the *MIS* Modular Shelf fits securely over the preliminary cut made at the conclusion of the last step. Be sure the *MIS* Femoral Finishing Guide is flush against the cut surface of the distal femur. Remove any lateral osteophytes that may interfere with the *MIS* Femoral Finishing Guide placement.

With the knee in extension, position the *MIS* Femoral Finishing Guide mediolaterally. Insert a 3.2mm (27mm length) Headed Screw or predrill and insert a 3.2mm (1/8-in) Headed Pin through the hole on the lateral side of the *MIS* Modular Shelf. Insert a 3.2mm (27mm length) Headed Screw or predrill and insert a 3.2mm (1/8-in) Headed Pin through the hole on the medial side of the *MIS* Modular Shelf (Figure 6B).



Figure 6B. Screw or in insertion on the lateral sides of the *MIS* Modular Shelf.

With the knee in slight flexion, insert a 3.2mm (48mm) length Headed Screw or predrill and insert a 3.2mm (1/8-in) Headed Pin through the superior hole on the lateral side of the *MIS* Femoral Finishing Guide. For additional stability, insert a short Headed Holding Pin through the inferior hole on the lateral side of the *MIS* Femoral Finishing Guide. Insert a second screw through the superior hole on the medial side of the *MIS* Femoral Finishing Guide (Figure 6C). Remove the *MIS* Modular Shelf from the *MIS* Femoral Finishing Guide.



Figure 6C. *MIS* Femoral Finishing Guide secured on medial and lateral sides.

©2004 Zimmer, Inc.

H004201



THE ZIMMER INSTITUTE

Use the Patellar/Femoral Drill to drill the femoral post holes (Figure 6D).

Figure 6D. Patellar/Femoral Drill positioned for post hole drilling.

Use the 1.27-mm (0.05-in) narrow oscillating saw blade to cut the femoral profile in the following sequence for optimal stability of the Resection Guide (Figure 6E):

1. Anterior condyles
2. Anterior chamfer
3. Posterior condyles
4. Posterior chamfer
5. Base of trochlear recess
6. Sides of trochlear recess

Remove the *MIS* Femoral Finishing Guide. Complete any unfinished bone cuts.

Flexion and extension gaps can be checked using *MIS* Spacer Blocks. In addition, the Alignment Rod with Coupler can be used to check alignment. For more information concerning flexion and extension gaps, see the *NexGen* Flex-Fixed Surgical Technique.

If implanting a *NexGen* CR Component, proceed to "Step 7: Finish the Tibia." If implanting a *NexGen Legacy* PS Component, continue with "Cut the Intercondylar Notch."

H004202

### Cut the Intercondylar Notch

Position the appropriate size PS Notch Guide onto the femur so it is flush against the resected surfaces both distally and anteriorly (Figure 6E). The PS Notch Guide will not contact the anterior chamfer. Use the previously prepared trochlear recess and/or the femoral post holes to position the PS Notch Guide mediolaterally.



Figure 6E. PS Notch Guide flush against the femur.

Secure the PS Notch Guide to the femur with two 3.2mm (48mm) Headed Screw or predrill and insert two 3.2mm (1/8in) Holding Pins. Use a reciprocating saw to cut the sides and the base of the intercondylar notch (Figure 6F). Then remove the PS Notch Guide.



Figure 6F. Cuts in the sides and base of the intercondylar notch.

### SURGEON NOTES & TIPS

➤ Reminder: the incision can be moved both medial to lateral and superior to inferior as needed to gain optimal exposure.

➤ If preferred, another *NexGen* Trochlear Guide can be used to drill the femoral post holes and cut the base and sides of the trochlear recess. Place the Trochlear Guide of appropriate size and configuration onto the femur so it is flush against the resected surfaces both distally and anteriorly (Figure 6G). Position the guide mediolaterally and secure it with 3.2mm (1/8in) pins through the 2 holes on the front of the guide. Then drill the post holes and cut the trochlear recess.



Figure 6G. Trochlear Guide use to drill post holes and cut trochlear recess.

©2004 Zimmer, Inc.

H004203



**THE ZIMMER INSTITUTE**

➤ An oscillating saw with a narrow blade may also be used, or, a normal blade may be used to cut the sides and a chisel or osteotome used to cut the base of the notch.

➤ Although a sequence of femoral cuts has been provided, the cuts may be made in any sequence. It is recommended for the surgeon to complete the cuts in a consistent sequence to help ensure that all cuts are performed.

➤ If the *MIS* Femoral Finishing Guide is used, the flexion gap should equal the extension gap.

➤ If the *MIS* Flex Femoral Finishing Guide is used, then the flexion gap will be approximately 2mm greater. Use a Spacer Block to check the extension gap. Then add a 2mm Tension Gauge to check the flexion gap.

## SURGICAL SUPPORT TEAM TIPS

➤ A lateral retractor will help protect the patella during this step.

©2004 Zimmer, Inc.

H004204

## STEP 7: FINISH THE TIBIA

Select the appropriate size and style of Tibial Sizing Plate for either a stemmed or pegged tibial component (Figure 7A).



Figure 7A. Pegged and Stemmed Tibial Sizing Plates.

If the Articular Surface Provisional Component has both the femoral sizes (alpha) and tibial sizes (numeric), then use these alphanumeric codes to match the 3 components. If both the alphabetic and numeric sizes are not on the Articular Surface Provisional Component, then use the color code to match the Femoral Component and the numeric code to match the Tibial Sizing Plate. If there is no match between the Femoral Provisional Component, Articular Surface Provisional Component, and Tibial Sizing Plate, adjust the size of the Tibial Sizing Plate to yield a match.

Attach the holding clamp to the Tibial Sizing Plate, and apply the plate to the resected tibial surface (Figure 7B). Position the Tibial Sizing Plate mediolaterally and rotationally so that the handle of the holding clamp is over the medial aspect of the tibial tubercle. If tibial coverage is satisfactory, predrill and pin the Tibial Sizing Plate to the bone with a 3.2mm (1/8in) short screw or pin.



Figure 7B. Attach Holding Clamp to Tibial Sizing Plate.

Check the rotational position of the Tibial Sizing Plate by rotating the tibia until the holding clamp handle is aligned with the trochlear recess or notch of the femur. When the Tibial Sizing Plate is properly rotated, the ankle will be in 15 degrees of external rotation relative to the coronal plane. If an adjustment is necessary to obtain the proper rotational position, remove the pins and reposition the Tibial Sizing Plate (Figure 7C).



Figure 7C. Pin the sizing plate in place once proper rotational position is obtained.

©2004 Zimmer, Inc.

H004205



**THE ZIMMER INSTITUTE**

The rotational and varus/valgus alignment can be checked by inserting the Alignment Rod with Coupler through the handle of the holding clamp (Figure 7D).



Figure 7D. Alignment Rod with Coupler to confirm Tibial Sizing Plate alignment.

Recheck the mediolateral position of the plate to ensure that the Tibial Sizing Plate does not overhang the bone, especially on the lateral side. Then extend the knee and use the Alignment Rod to check the alignment in extension. When the position is satisfactory, remove the Alignment Rod and holding clamp. If a Pegged Tibial Component will be used, use the Tibial Peg Drill to drill the peg holes (Figure 7E).



Figure 7E. Use the Tibial Peg Drill to drill the peg holes.

If a Stemmed Tibial Plate will be used, place the appropriate Cemented or Porous Stem Tibial Drill Guide onto the Tibial Sizing Plate, and use the Cemented or Porous Stem Drill to drill the hole for the stem (Figure 7F). Then remove the Tibial Drill Guide.



Figure 7E. Stem Drill in position.

©2004 Zimmer, Inc.

H004206

Insert the Tibial Broach Bracket on top of the Tibial Sizing Plate (Figure 7F).



Figure 7F. Tibial Broach Bracket overlaid on Tibial Sizing Plate.

Assemble the proper size Tibial Broach to the Tibial Broach Handle. Seat the broach on the Tibial Sizing Plate and impact it (Figure 7G).



Figure 7G. Tibial Broach seated on Tibial Sizing Plate.

Remove the broach assembly with the Tibial Broach Bracket. Leave the Tibial Sizing Plate pinned in place.

©2004 Zimmer, Inc.

H004207

THE ZIMMER INSTITUTE

## STEP 8: PERFORM A TRIAL REDUCTION

With the Tibial Sizing Plate in position, retract soft tissue medially, laterally, and superiorly in preparation for the Femoral Provisional Component. Attach the Femoral Provisional Component to the Femoral Impactor/Extractor, and insert the Femoral Provisional Component onto the distal femur (Figure 8A). Impact the Femoral Provisional Component. Then remove the impactor/extractor by loosening the thumb screw on the medial side. The component can also be set by hand without a Femoral Impactor/Extractor.

Figure 8A. Femoral Provisional Component impacted into position on distal femur.

Remove the retractors. With the knee in extension, check to ensure that the Femoral Provisional Component is flush against the resected surface on the medial condyle. Then retract the lateral side and check to make sure it is flush on the lateral side. The Femoral Provisional Component should be centered mediolaterally on the distal femur.

Attach the appropriate Tibial Articular Surface Provisional Component and perform a trial reduction. Check ligament stability in extension and in 30, 60, and 90 degrees of flexion. Attempt to distract the joint in flexion to ensure that it will not distract. If a *NexGen* PS Component is used, hyperflex the knee and check to make sure that the spine still engages the cam.

Fully extend the knee and insert the Patellar Provisional Component onto the resected patellar surface. Perform ROM to check patellar tracking.

When component position, ROM, and joint stability have been confirmed, remove all provisional components.

### SURGEON NOTES & TIPS

➤ In performing the trial reduction and during implantation of the Femoral Provisional Component or prosthesis, make certain that no portion of the quadriceps or soft tissue is pinned underneath.

➤ Removal of the Femoral Provisional Component may prove difficult.

©2004 Zimmer, Inc.

H004208

**surgical technique**

## STEP 9: FINISH THE PATELLA

### PATELLA REAMER TECHNIQUE TOTAL SURFACING PROCEDURE

Use the Patella Reamer Surfacing Guides as templates to determine the appropriate size guide and reamer. Choose the guide which fits snugly around the patella, using the smallest guide possible (Figure 9A).



Figure 9A. Guide pits snugly around the patella.

If the patella is only slightly larger than the surfacing guide in the   mediolateral dimension, use a rongeur to  remove the medial or lateral edge until the  bone fits the guide. Insert the appropriate size Patella Reamer Surfacing Guide into the Patella



Apply the Patella Reamer Clamp at a 90° angle to the longitudinal axis with the Patella Reamer Surfacing Guide encompassing the articular surface of the patella. Squeeze the clamp until the anterior surface of the patella is fully seated against the fixation plate (Figure 9C). Turn the clamp screw to hold the instrument in place. The anterior surface must fully seat upon the pins and contact the fixation plate.



Figure 9C. Squeeze the clamp until the anterior surface of the patella is fully seated against the fixation plate..

Turn the depth gauge wing on the Patella Reamer Clamp to the proper indication for the correct amount of bone that is to remain after reaming (Figure 9D).



Figure 9D. Use Depth Gauge Winge on the Patella Reamer Clamp.

Attach the appropriate size Patella Reamer Blade to the appropriate size Patella Reamer Shaft (Figure 9E). Use only moderate hand pressure to tighten the blade.



Figure 9E. Select appropriately sized Patella Reamer Blade.

©2004 Zimmer, Inc.

H004209



**THE ZIMMER INSTITUTE**

## INSETTING TECHNIQUE

Use the Patella Reamer Insetting Guides as templates to determine the appropriate size guide and reamer. Choose the guide which will allow approximately 2mm between the superior edge of the patella and the outer diameter of the guide (Figure 9F).



Figure 9F. Select appropriately sized Patella Reamer Blade.

Insert the appropriate size Patella Reamer Insetting Guide into the Patella Reamer Clamp. Turn the locking screw until tight. Apply the Patella Reamer Clamp at a 90° angle to the longitudinal axis with the Patella Reamer Insetting Guide on the articular surface. Squeeze the clamp until the anterior surface of the patella is fully seated against the fixation plate. Turn the clamp screw to hold the instrument in place. The anterior surface must fully seat on the pins and contact the fixation plate.

Turn the clamp wing to the "inset" position.

Attach the appropriate size Patella Reamer Blade to the appropriate size Patella Reamer Shaft (Figure 9G). Use only moderate hand pressure to tighten the blade. Do not overtighten the blade. Insert the



Patella Reamer Shaft into a drill/reamer.

Figure 9G. Attach appropriately sized Patella Reamer Blade to the appropriate size Patella Reamer Shaft.

Use the Patella Reamer Depth Stops to control the amount of bone to be removed based on the thickness of the implant chosen.

(Note: If using a Primary Porous Patella with Trabecular Metal™ material, all implants are 10mm thick.) The depth gauge wing on the Patella Reamer Clamp can be used instead of the stops to control the amount of bone remaining, rather than the amount of bone removed.

Insert the reamer assembly into the Patella Reamer Insetting Guide. Raise the reamer slightly off the bone and bring it up to full speed. Advance it slowly until the prominent high points are reamed off the bone. Continue reaming with moderate pressure. Remove the reamer clamp assembly.



©2004 Zimmer, Inc.

H004210

## surgical technique

### UNIVERSAL SAW GUIDE TECHNIQUE

Apply the Universal Patella Saw Guide in line with the patellar tendon. Push the patella up between the jaws of the saw guide. Level the patella within the saw guide jaws and use the thumbscrew to tighten the guide.

The amount to be resected across the top of the saw guide jaws should be approximately the same on all sides. Check to be sure that the 10mm gauge does not rotate beneath the anterior or surface of the patella. If the gauge hits the anterior surface of the patella as it is rotated, this indicates that at least 10mm of bone stock will remain after the cut    (Figure 9H).



Figure 9H. Indication that bone stock needs to be cut.

Cut the patella flat so that a smooth surface remains (Figure 9I).



Figure 9I. Cut the patella

### FINISHING THE PATELLA-FOR THE NEXGEN PRIMARY POROUS PATELLA WITH TRABECULAR METAL MATERIAL

Center the appropriate Patella Drill Guide over the resected patella surface with the handle on the medial side of the patella and perpendicular to the tendon. Press the drill guide firmly in place so that the teeth fully engage and the drill guide sits flat on the bone surface (Figure 9J). Drill the peg hole making sure the drill stop collar contacts the top of the drill guide (Figure 9K).

Note: The Primary Porous Patellar Clamp may be used to fully seat the drill guide on hard sclerotic bone surfaces.



Figure 9J. Make sure the drill Guide sits flat on the bone surface



Figure 9K. Drill the peg hole.

©2004 Zimmer, Inc.

H004211



**THE ZIMMER INSTITUTE**

Apply cement to the Trabecular Metal surface and post of the patellar component while in a doughy consistency. Locate the drilled post hole and use the Primary Porous Patellar Clamp to insert and secure the patella in place. Fully open the jaws of the clamp and align the teeth to the anterior surface of the patella and the plastic ring to the posterior surface of the implant. Use the clamp to apply a significant amount of pressure to the implant to fully seat the implant on the patellar surface (Figure L). Remove excess cement.



Figure 9L. Fully Seat the implant on patellar surface.

Note: If the implant post begins to engage at an angle, the implant should be removed and repositioned perpendicular to the resected surface. Insert the patella again and reclamp, applying an even distribution of pressure on the patellar surface.

## FOR THE NEXGEN ALL-POLYETHYLENE PATELLA

Center the appropriate Patellar Drill Guide over the patella with the handle on the medial side of the patella and perpendicular to the tendon. Holding the drill guide firmly in place, drill the three peg holes using the Patellar/Femoral Drill Bit (Figure 9M).



Figure 9M. Drill peg holes.

Apply cement to the anterior surface and pegs of the patellar component while in a doughy consistency. Locate the drilled peg holes and use the Patellar Clamp to insert and secure the patella in place. Fully open the jaws of the clamp and align the teeth to the anterior surface of the patella and the plastic ring to the posterior surface of the implant. Use the clamp to apply a significant amount of pressure to the implant to fully seat the implant on the patellar surface. Remove excess cement.

©2004 Zimmer, Inc.

H004212

## STEP 10: IMPLANT COMPONENTS

After the implants have been chosen, make a final check to ensure that the Femoral, Tibial Plate, and Tibial Articular Surface Components match. If using a cemented component, mix the first batch of cement. The cement should have a doughy consistency when ready for use.

Attach the Tibial Impactor Handle to the appropriate size Tibial Plate Component (Figure 10A). Use the Hex-head Screwdriver to tighten the screw on the front of the Tibial Impactor Base. This will lock the implant onto the base. Place a layer of cement on the underside of the Tibial Plate Component and on the tibial cut surface. Then position the Tibial Plate Component onto the tibia and impact it until fully seated. Then remove the impactor assembly. Remove any excess cement in a consistent manner.

The Femoral Component is implanted next. Mix a second batch of cement. Retract the soft tissue medially, laterally, and superiorly. Attach the Femoral Component to the Femoral Impactor/Extractor. Place a layer of cement on the underside of the prosthetic and in the holes drilled in the femur and insert the Femoral Component onto the distal femur (Figure 10B). Impact the Femoral Component so that it is fully seated on the femur. Then remove the Femoral Impactor/Extractor by loosening the thumb screw on the medial side. Check the medial and lateral sides to make sure the Femoral Component is fully impacted. Remove any excess cement in a consistent manner.



Figure 10B. Femoral Component fully seated on the femur.



Figure 910A. Tibial Impactor assembly and Tibial Plate Component.

©2004 Zimmer, Inc.

H004213



**THE ZIMMER INSTITUTE**

The Patellar Component is implanted next. Place a layer of cement on the underside of the Patellar Component and position the component in place by hand, using the Patellar Clamp to fully seat the component (Figure 10C).



Figure 10C. Patellar Clamp insertion of the Patellar Component.

Next, use the Articular Surface Insertion Instrument to attach the appropriate Tibial Articular Surface onto the Tibial Plate (Figure 10D).



Figure 10D. Insertion of the Tibial Articular Surface onto the Tibial Plate.

©2004 Zimmer, Inc.

*Techniques for 17-mm and 20-mm Tibial Articular Surface Assemblies*
A secondary locking screw is required for the 17-mm and 20-mm Tibial Articular Surface components if using a Flex Femoral Component. Therefore, Stem Tibial Plates with either a stem extension or taper plug must be used with these thicker components.

With the *Prolong™* Highly Crosslinked Polyethylene Articular Surface component, the metal locking insert and screw are packaged separately from the Tibial Articular Surface Component container in the same box. Before inserting the Tibial Articular Surface Component, the metal locking insert must first be inserted into the anterior slot of the component (Figure 10E). The rail should be aligned with the space in the slot. There is an arrow on the superior side of the locking clip that indicates the correct direction for insertion. The purpose of the rail is to prevent the insert from being assembled incorrectly. The metal locking insert should glide easily into the slot. The insert is properly seated when a click is heard. For the molded Tibial Articular Surface Component, the metal locking insert is preassembled into the component.



Figure 10E. Metal locking insert attached to the Tibial Articular Surface Component.

49

H004214

A taper plug also can be used with the 10-mm to 14-mm Tibial Articular Surface Components. If it is planned to use a 14-mm component, or if the flexion and extension gaps are not balanced, consider using the taper plug in case, during final trial reduction, it is necessary to use a 17-mm or 20-mm component. Further, if the articular surface should ever require revision with a 17-mm or 20-mm thick component, the taper plug is already in place and revision of the Tibial Plate Component may not be necessary.

**For back table assembly.**—Follow the steps below.

1. Assemble the taper plug onto the Tibial Plate by striking it several times with a mallet to allow the ring on the taper to deform.

2. Place the Tibial Plate onto the holding fixture, which is an integral part of the instrument case.

3. Use the Articular Surface Insertion Instrument to insert the Tibial Articular Surface Component onto the Tibial Plate (Figure 10F).



Figure 10F. Use of Articular Surface Insertion Instrument in seating the Tibial Articular Surface Component.

4. When using the Flex Femoral Components, with the taper plug in place, insert the secondary locking screw (Figure 10), which is packaged with the Tibial Articular Surface Component.



Figure 10G. Secondary locking screw.

5. Use the *Legacy®* Constrained Condylar Knee (LCCK) Deflection Beam Torque Wrench with the 4.5-mm Hex Driver Bit attached to torque the screw to 95 inch-pounds (Figure 10H). Do not over-torque or under-torque.



Figure 10H. LCCK Deflection Beam Torque Wrench positioned on screw.

©2004 Zimmer, Inc.

H004215



**THE ZIMMER INSTITUTE**

**For in vivo assembly.**—If preferred, the 17-mm or 20-mm Tibial Articular Surface Component can be inserted after the Tibial Plate has been implanted.

1. Assemble the taper plug onto the Tibial Plate by striking it several times with a mallet to allow the ring on the taper to deform.

2. Implant the Tibial Plate. If bone cement is being used, wait for the cement to completely cure before attaching the Tibial Articular Surface Component.

3. Select the Tibial Plate Wrench that matches the size of the implant to be assembled. Place the end of the wrench over the Tibial Plate. Ensure that the wrench is in line with the base of the Tibial Plate (Figure 10I).



Figure 10J. Locking screw in the Tibial Articular Surface Component.



Figure 10I. Alignment of Tibial Plate Wrench and base of the Tibial Plate.

4. Place the locking screw through the hole in the Tibial Articular Surface Component (Figure 10J).

©2004 Zimmer, Inc.

H004216

5. Use the LCCK Deflection Beam Torque Wrench attached to the 4.5-mm Hex Driver Bit to torque the screw to 95 inch-pounds. (Figure 10K). Do not over-torque or under-torque.



Figure 10K. LCCK Deflection Beam Torque Wrench positioned on screw.

6. Recheck the ROM and stability of the knee.

## SURGEON NOTES & TIPS

➤ Be aware that the retractors may inadvertently dislodge the Tibial Plate Component, particularly on the posterolateral corner.

➤ Verify that the Femoral Component is fully seated before closing the wound.

➤ Confirm that no portion of the quadriceps mechanism has been pinned beneath the Femoral Component.

➤ With the CR knee, it is easier to implant the Tibial Base and Articular Surface Components first, then the Femoral Component, and finally, the Patellar Component.

## SURGICAL SUPPORT TEAM TIPS

➤ The cement may need to be prepared in 2 separate batches to implant the components:

　➤ Place cement onto the tibial bone, position the implant, and impact into place. Remove excess cement.

　➤ Place cement onto the Femoral Component, then position the implant and impact into place. Then cement the Patellar Component into place. Remove all excess cement in a consistent manner.

➤ After the Tibial Plate Component has been implanted, ensure that the Tibial Plate Component has not been dislodged when the femur is subluxed anteriorly to implant the Femoral Component.

©2004 Zimmer, Inc.

**THE ZIMMER INSTITUTE**

## STEP 11: CLOSE THE INCISION

Freely irrigate the wound with the solution of choice. A drain may be
placed intracapsular. The wound is then sutured closed and bandaged.

©2004 Zimmer, Inc.

H004218

## surgery checklist

Table 3 summarizes the Surgery Checklist for the Zimmer *MIS Quad-Sparing* TKA.

**Table 3. Surgery Checklist\* for Zimmer *MIS Quad-Sparing* TKA**

| Step | Checklist item(s) |
|---|---|
| **Preoperative** | |
| Templating | ➤ Ensure component availability and kinematic compatibility, +/−1mm component size |
| **Operative** | |
| Step 1: Define Incision and Expose Joint | ➤ Ensure that the vastus medialis and quadriceps mechanism have not been violated |
| Step 2: Prepare the Patella | ➤ Check patella thickness after resection |
| Step 3: Resect the Distal Femur | ➤ Check resection guide position and resection level with headless pins in place before resecting |
| Step 4: Resect the Proximal Tibia | ➤ Check varus/valgus alignment |
| | ➤ Check tibial cut depth and slope |
| | ➤ Check extension gap to confirm resection, ligament, and soft tissue balance |
| Step 5: Size the Femur and Establish External Rotation | ➤ Determine femoral size |
| | ➤ Establish external rotation with A/P Sizer aligned against marked A/P axis or referencing posterior condyles |
| Step 6: Finish the Femur | ➤ Check that all cuts are properly made |
| | ➤ Check flexion and extension gaps using Spacer Blocks |
| Step 7: Finish the Tibia | ➤ Check to ensure Tibial Sizing Plate does not overhang the bone |
| | ➤ Check alignment with knee in extension |
| Step 8: Perform a Trial Reduction | ➤ Verify Femoral Provisional Component is centered mediolaterally on the distal femur |
| | ➤ Verify sizes of Femoral and Tibial Articular Surface Components for implantation |
| Step 9: Resect the Patella | ➤ Insetting Technique |
| | ➤ Universal Saw Guide Technique |
| | ➤ Finish the Patella—for the *NexGen* Primary Porous Patella with Trabecular Metal material |
| | ➤ For the *NexGen* All-Polyethylene Patella |
| Step 10: Implant Components | ➤ Verify that the Femoral Component is seated flush with bone |
| | ➤ Ensure that the femoral prosthetic has not pinned any of the quadriceps mechanism underneath |
| | ➤ Check that the lateral (posterolateral) side of the tibial implant is flush with the bone |
| | ➤ Check range of motion, component alignment, and soft tissue balance |
| | ➤ Recheck all prosthetic positions before closing capsule |
| Step 11: Close the Incision | ➤ If desired, insert drain and attach to suction device or autotransfusion system such as *OrthoPAT*® Autotransfusion System\*\* |

©2004 Zimmer, Inc.

H004219



THE ZIMMER INSTITUTE

**Postoperative**

| 2 hours | ➤ Check range of motion |
|---|---|
| | ➤ Check drain |
| | ➤ Check pain level (0 to 10 score on VAS) |
| 4 hours | ➤ Check range of motion |
| | ➤ Check drain |
| | ➤ Check pain level (0 to 10 score on VAS) |
| | ➤ Initiate physical therapy |

TKA = Total knee arthroplasty; A/P = Anteroposterior; VAS = Visual analogue scale.
*Checklist may vary by individual surgeon preference.   **OrthoPAT is a trademark of Haemonetics Corporation.

©2004 Zimmer, Inc.

H004220

# EXHIBIT K

# Filed Under Seal

# Restricted Document
# Pursuant to Local Rule 26.2

# EXHIBIT L

# NIRO, SCAVONE, HALLER & NIRO

RAYMOND P. NIRO
TIMOTHY J. HALLER
WILLIAM L. NIRO
JOSEPH N. HOSTENY, III
ROBERT A. VITALE, JR.
JOHN C. JANKA
PAUL K. VICKREY
DEAN D. NIRO
RAYMOND P. NIRO, JR.
PATRICK F. SOLON
ARTHUR A. GASEY
CHRISTOPHER J. LEE
DAVID J. SHEIKH
VASILIOS D. DOSSAS
SALLY WIGGINS
RICHARD B. MEGLEY, JR.
MATTHEW G. McANDREWS

181 WEST MADISON STREET—SUITE 4600

CHICAGO, ILLINOIS 60602-4635

———

TELEPHONE (312) 236-0733

FACSIMILE (312) 236-3137

June 25, 2008

LEE F. GROSSMAN
PAUL C. GIBBONS
BRADY J. FULTON
GREGORY P. CASIMER
DOUGLAS M. HALL
DINA M. HAYES
FREDERICK C. LANEY
DAVID J. MAHALEK
KARA L. SZPONDOWSKI
ROBERT A. CONLEY
ERIC J. MERSMANN
NICHOLAS M. DUDZIAK
LAURA A. KENNEALLY
TAHITI ARSULOWICZ

———

OF COUNSEL:
THOMAS G. SCAVONE

**Email Transmission: (_robert.breisblatt@kattenlaw.com_)**
Robert B. Breisblatt
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL 60661

Re:     _Hudson Surgical v. Rush System for Health, et al._

Dear Bob:

This follows up on our letter of June 19, 2008 (copy attached) regarding RUMC's responses to Hudson Surgical's discovery requests.

Most of the issues identified in the letter remain unresolved. For example, we have not received RUMC's contracts with physicians and physician organizations (see item 3 in the letter), or supplemental responses to Hudson Surgical's interrogatories (see item 4 in the letter).

Moreover, we have not received the documents described in the paragraph spanning the first and second pages of the letter or the first full paragraph on the second page of the letter.

Please produce the documents now or let us know when you are available for a Rule 37.2 conference on the above issues. We are available any day this week.

Very truly yours,

David J. Sheikh

DJS\le
Enclsoure

# NIRO, SCAVONE, HALLER & NIRO

RAYMOND P. NIRO
TIMOTHY J. HALLER
WILLIAM L. NIRO
JOSEPH N. HOSTENY, III
ROBERT A. VITALE, JR.
JOHN C. JANKA
PAUL K. VICKREY
DEAN D. NIRO
RAYMOND P. NIRO, JR.
PATRICK F. SOLON
ARTHUR A. GASEY
CHRISTOPHER J. LEE
DAVID J. SHEIKH
VASILIOS D. DOSSAS
SALLY WIGGINS
RICHARD B. MEGLEY, JR.
MATTHEW G. McANDREWS

181 WEST MADISON STREET - SUITE 4600

CHICAGO, ILLINOIS 60602 - 4635

———

TELEPHONE (312) 236 - 0733

FACSIMILE (312) 236 - 3137

June 19, 2008

LEE F. GROSSMAN
PAUL C. GIBBONS
BRADY J. FULTON
GREGORY P. CASIMER
DOUGLAS M. HALL
DINA M. HAYES
FREDERICK C. LANEY
DAVID J. MAHALEK
KARA L. SZPONDOWSKI
ROBERT A. CONLEY
ERIC J. MERSMANN
NICHOLAS M. DUDZIAK
LAURA A. KENNEALLY
TAHITI ARSULOWICZ

———

OF COUNSEL:
THOMAS G. SCAVONE

**Email Transmission: (*robert.breisblatt@kattenlaw.com*)**
Robert B. Breisblatt
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL 60661

Re:     *Hudson Surgical v. Rush System for Health, et al.*

Dear Bob:

This follows up on our conversation yesterday regarding Rush System for Health ("RSH") and Rush University Medical Center's ("RUMC") responses to Hudson Surgical's discovery requests.

You indicated that you would provide us with a declaration of the Secretary for RSH in support of your position that RSH should be dismissed from the suit. You summarized the general subject matter of this declaration. I agreed to review it in connection with your request that we voluntarily dismiss RSH on the ground that RSH has no direct or indirect involvement in the activities that are accused of infringement. We agreed that if Hudson Surgical voluntarily dismisses RSH from the suit as you have requested, such dismissal would be in reliance on the statements in the declaration and would be without prejudice.

We also discussed RUMC's responses to Hudson Surgical's discovery requests. You agreed to produce at least the following documents by Friday, June 20, 2008, to address some of the issues I raised:

1) The relevant contracts between RUMC and Zimmer.
2) Documents reflecting RUMC's purchases and acquisition of Zimmer implants and instruments.
3) RUMC's contracts with physicians and physician organizations (such as Midwest Orthopedics at Rush, LLC).
4) A supplemental response to at least Interrogatory No. 1 which seeks the identification of RUMC employees, agents, consultants, etc. who have knowledge on specified topics.

I requested documents identifying physicians who are authorized, approved or credentialed to do knee replacement surgeries at RUMC. We discussed the possibility that RUMC has

Robert B. Breisblatt
June 19, 2008
Page 2

documents of this type that are directed specifically to the surgical techniques accused of infringement. You agreed to investigate this. To reiterate, we firmly believe that RUMC has documents such as internal review board reports, credential committee reports and the like that reflect RUMC's authorization for physicians to perform the surgical techniques accused of infringement at RUMC.

We also discussed whether RUMC has documents that reflect usage of the techniques or instruments that are accused of infringement. We firmly believe that RUMC has copies of surgical notes, reports or records that provide this information, and you agreed to investigate. Further on this topic, we firmly believe that RUMC has records reflecting a "chain of custody" for all of the accused surgical instruments in its possession, custody or control. These records would at least identify each set of instruments, where each set is located at any given time and when and by whom the instruments were used. This should help in your investigation.

We look forward to receiving the declaration and the documents by tomorrow.

Very truly yours,

David J. Sheikh

DJS\le

## Esquivel, Lisa E

| | |
|---|---|
| **From:** | Esquivel, Lisa E |
| **Sent:** | Thursday, June 19, 2008 9:56 AM |
| **To:** | 'robert.breisblatt@kattenlaw.com' |
| **Subject:** | Hudson Surgical v. Rush System for Health, et al. -- Transmitted and sent by Lisa Esquivel on behalf of David J. Sheikh. |
| **Attachments:** | lbriesblatt_djs(6-19-08).pdf |

Dear Counsel:

Please see the attached letter.


David J. Sheikh
NIRO, SCAVONE, HALLER & NIRO
181 W. Madison Street, Suite 4600
Chicago, Illinois 60602
(312) 236-0733
Fax: (312) 236-3137


**Transmitted and sent by Lisa Esquivel on behalf of David J. Sheikh.**

1

# EXHIBIT M

# NIRO, SCAVONE, HALLER & NIRO

RAYMOND P. NIRO
TIMOTHY J. HALLER
WILLIAM L. NIRO
JOSEPH N. HOSTENY, III
ROBERT A. VITALE, JR.
JOHN C. JANKA
PAUL K. VICKREY
DEAN D. NIRO
RAYMOND P. NIRO, JR.
PATRICK F. SOLON
ARTHUR A. GASEY
CHRISTOPHER J. LEE
DAVID J. SHEIKH
VASILIOS D. DOSSAS
SALLY WIGGINS
RICHARD B. MEGLEY, JR.
MATTHEW G. McANDREWS

181 WEST MADISON STREET-SUITE 4600

CHICAGO, ILLINOIS 60602-4635

———

TELEPHONE (312) 236-0733

FACSIMILE (312) 236-3137

July 7, 2008

LEE F. GROSSMAN
PAUL C. GIBBONS
BRADY J. FULTON
GREGORY P. CASIMER
DOUGLAS M. HALL
DINA M. HAYES
FREDERICK C. LANEY
DAVID J. MAHALEK
KARA L. SZPONDOWSKI
ROBERT A. CONLEY
ERIC J. MERSMANN
NICHOLAS M. DUDZIAK
LAURA A. KENNEALLY
TAHITI ARSULOWICZ

———

OF COUNSEL:
THOMAS G. SCAVONE

**Email Transmission: (*robert.breisblatt@kattenlaw.com*)**
Robert B. Breisblatt
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL 60661

Re:     *Hudson Surgical v. Rush System for Health, et al.*

Dear Bob:

I hope you had a pleasant holiday weekend.

You have not resolved the issues raised in our letters of June 19, 25 or 27, 2008 regarding RUMC's deficient responses to Hudson Surgical's discovery requests. We discussed these issues at length on June 19, 2008, and again on June 26, 2008.

We have satisfied our obligations under Local Rule 37.2 to make good faith efforts to resolve the issues we have raised. Unfortunately, these efforts have not been successful. Indeed, we have not received a single document in response to our letters or discussions. Please let us know by today whether you will provide all of the requested information without the need for a Court order directing you to do so.

Very truly yours,

David J. Sheikh

DJS\le
cc:    Thomas Maas
       Brain Sodikoff

# EXHIBIT N

# NIRO, SCAVONE, HALLER & NIRO

RAYMOND P. NIRO
TIMOTHY J. HALLER
WILLIAM L. NIRO
JOSEPH N. HOSTENY, III
ROBERT A. VITALE, JR.
JOHN C. JANKA
PAUL K. VICKREY
DEAN D. NIRO
RAYMOND P. NIRO, JR.
PATRICK F. SOLON
ARTHUR A. GASEY
CHRISTOPHER J. LEE
DAVID J. SHEIKH
VASILIOS D. DOSSAS
SALLY WIGGINS
RICHARD B. MEGLEY, JR.
MATTHEW G. McANDREWS

181 WEST MADISON STREET - SUITE 4600

CHICAGO, ILLINOIS 60602 - 4635

TELEPHONE (312) 236 - 0733

FACSIMILE (312) 236 - 3137

July 9, 2008

LEE F. GROSSMAN
PAUL C. GIBBONS
BRADY J. FULTON
GREGORY P. CASIMER
DOUGLAS M. HALL
DINA M. HAYES
FREDERICK C. LANEY
DAVID J. MAHALEK
KARA L. SZPONDOWSKI
ROBERT A. CONLEY
ERIC J. MERSMANN
NICHOLAS M. DUDZIAK
LAURA A. KENNEALLY
TAHITI ARSULOWICZ

OF COUNSEL:
THOMAS G. SCAVONE

*Email Transmission: brian.sodikoff@kattenlaw.com*
Brian Sodikoff
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL 60661

Re: *Hudson Surgical Design, Inc. v Zimmer Holdings, Inc., et al.*

Dear Brian:

This responds to your letter of July 7, 2008.

You obviously wrote the letter without investigating the status of RUMC's and RSH's responses to Hudson's discovery requests or our conversations with Bob Breisblatt. Hudson has served at least 70 requests for documents and at least 15 interrogatories on the Rush entities. RSH has failed to produce a single document in response to these requests, and has failed to substantively respond to the interrogatories. RUMC has also failed to substantively respond to the interrogatories. While RUMC has produced 1608 pages of documents, 1311 of them are Hudson's patents and file histories. Moreover, our letter of June 27, 2008, identifies the accused techniques, implants and instruments in great detail, yet neither RUMC nor RSH has produced additional information in response to the letter. If you cannot ascertain the subject of Hudson's infringement contentions based on the information we have provided, you are being intentionally obtuse in an effort to avoid compliance with Hudson's discovery obligations, and we will need to address the matter to the court.

Furthermore, your letter is evasive. You do not commit to doing anything within any set time frame. We request that you provide details on your positions.

Brian Sodikoff
July 9, 2008
Page 2

We have requested documents and things that provide details on quad sparing surgeries done at RUMC, including when the surgeries were performed, who performed them, what instruments were used and associated billing information. The relevance of this information is beyond dispute, as the surgeries themselves constitute activities accused of infringement. In paragraph 2 of your letter[1] you indicate that RUMC will not provide these documents because they contain private information. This contradicts Bob Breisblatt's previous agreement to provide the documents in redacted form. Indeed, at Bob's request, we included provisions in the protective order that protect the private patient information you are concerned about. Bob approved these provisions and the protective order has been adopted and entered by the court. Now you assert that making the redactions would be unduly burdensome. Unless we hear otherwise, we will proceed on the basis that RUMC is categorically refusing to produce the requested documents, even with the private patient information redacted, and we will address the matter to the court.

In paragraph 3 of your letter, you state that RUMC will produce responsive documents this week. Please tell us when these documents will be produced and precisely what the documents are, including what discovery requests they are responsive to. You also refer to an investigation by RUMC. Please provide details of this investigation including the persons who were involved and the locations that were searched.

In paragraph 5 of your letter, you assert that you have produced contracts between RUMC and Zimmer. Please confirm that each and every contract, agreement or written understanding between RUMC or RSH and any Zimmer entity (including, but not limited to Zimmer Holdings, Inc. and Zimmer, Inc.) pertaining to the accused techniques, implants and/or instruments has been produced.

In paragraph 6 of your letter, you assert that documents reflecting RUMC's purchases and acquisition of the accused implants and instruments "are likely available from other sources." Please identify these "other sources" and explain why you believe they are in a better position than RUMC to produce documents that are in the possession, custody or control of RUMC. Also, please tell us whether RUMC is withholding any responsive documents and, if so, what the documents are and the basis for withholding them. Finally, you also refer to an investigation by RUMC. Please provide details of this investigation including the persons who were involved and the locations that were searched.

---

[1] For ease of reference, we have attached copy of your letter with the paragraphs numbered.

Brian Sodikoff
July 9, 2008
Page 3

In paragraph 7 of your letter, you state that we have requested "contracts with physicians relating to knee replacement surgeries." This is partly correct, but is not a complete summary of the scope of Hudson's discovery requests. The requests seek all contracts, agreements and written understandings between physicians/health care providers and RUMC and/or RSH that permit the accused techniques to be performed at RUMC and/or that permit the accused implants and the accused instruments to be used at RUMC. We firmly believe that such documents exist and are in the possession, custody or control of RUMC or RSH. Please produce them or confirm that we will need to address the matter to the court. The choice is yours.

In paragraph 8 of your letter, you indicate that you will supplement "your" responses to Hudson's interrogatories. Please tell us when we will receive the supplemental interrogatory responses and identify precisely which interrogatories will be supplemented. Absent this information, we will proceed on the basis that you will not cooperate and we will address the matter to the court.

In paragraph 9 of your letter you state that you "have (and/or will be in the near future) produced documents showing the privileges of the doctors identified by Hudson." We are not aware of any such documents. Please identify them by production number. Also, please tell us precisely when the rest of the documents will be produced. Finally, please confirm that the documents will specifically identify the doctors and the nature of their relationships with RUMC and/or RSH, including the applicable credentialing/approval process, and please confirm that the documents will provide details on the surgeries performed by these doctors at RUMC's and/or RSH's facilities.

In paragraphs 10-11, you express confusion about what techniques, implants and instruments are accused of infringement. As stated above, you are being intentionally obtuse and this may be an issue that needs to be addressed to the court. Again, the choice is yours. The fact of the matter is that you and your clients know what the accused techniques, implants and instruments are for the reasons stated in our letter of June 27, 2008. Indeed, on June 19, 2008, eight days before we sent our letter, Bob Breisblatt and I discussed Hudson's infringement contentions and Bob indicated that he knew what was accused of infringement and stated that he appreciated the level of detail provided in Hudson's complaint and discovery requests. Unless we hear otherwise, we will proceed on the basis that you remain confused on this issue, and we will address the matter to the court.

In paragraphs 12-14 of your letter, you indicate that RUMC and RSH will not produce any documents dated prior to March 18, 2008. Unless we hear otherwise, we will proceed on the basis that this remains your position, and we will address the matter to the court.

Brian Sodikoff
July 9, 2008
Page 4

In footnote 1 of your letter, you state that "you" are unaware of any device and/or technique that can reasonably be considered to infringe the '272 patent. Ironically, this conclusory statement is more detailed than RUMC's and RSH's responses to Hudson's discovery requests. Please provide the factual basis for your statement, including the details of your search for an accused technique, implant and instrument.

You also assert that Hudson has not identified an infringing device or technique. This assertion is simply false; the accused techniques, implants and instruments are specifically identified in Hudson's pleadings and discovery requests and in our letter of June 27, 2008. Unless we hear otherwise, we will proceed on the basis that this matter needs to be addressed to the court.

In paragraph 15 of your letter you complain that Hudson has not explained its infringement contentions. We do not understand the basis for this complaint. Hudson's responses to RUMC's interrogatories requesting this information are due, and will be served, today. If you wanted the information earlier, you could have served your discovery requests earlier. Moreover, RUMC has affirmatively alleged that the patents are not infringed. We assume that you had a factual and legal basis for this allegation and made the allegation in good faith. We requested this information in Hudson's interrogatories, but you refused to provide it. Please do so now.

In addition, your letter ignores our request for documents showing the totality of quad sparing instruments in the possession, custody or control of RUMC and the chain of custody of these instruments. To date, only a limited number of largely illegible and marginally relevant documents have been produced. Unless we receive full compliance with our requests regarding the instruments, we will need to address this matter to the court.

Finally, we want to address the statements in the second paragraph of your letter suggesting that because RUMC is "a not-for-profit hospital that provides critical medical services to thousands of patients everyday," it should not be required to respond to Hudson's discovery requests. We are unaware of an exception to the Federal Rules of Civil Procedure for not-for-profit litigants, and we expect RUMC to comply with these rules We are confident that RUMC has expected no less from defendants in the numerous suits it has filed to protect its legal interests.

What is more, your position is at odds with your current approach to the discovery process, which will unnecessarily result in increased legal fees for your clients. Your position is also at odds with your insistence that we direct Hudson's initial discovery requests to the orthopedic surgeons themselves instead of RUMC. After all, it is these surgeons – not your firm

Brian Sodikoff
July 9, 2008
Page 5

or the RUMC employees responsible for dealing with litigation matters -- who are providing medical services and patient care. And we fail to understand your assertion that this dispute "is not really between Hudson and [RUMC]" given that 1) RUMC maintains possession, custody and control of the accused implants and the accused instruments, 2) RUMC surgeons perform the accused techniques at RUMC with RUMC support staff using the accused implants and the accused instruments, 3) RUMC has actively promoted and has benefitted from the accused techniques, 4) RUMC surgeons were directly involved in the development of the accused techniques and the design of the accused instruments, 5) RUMC has been directly involved in training surgeons on how to perform the accused techniques using the accused implants and the accused instruments and RUMC and 6) its surgeons have been paid millions of dollars based on the accused techniques and instruments. Please explain the basis for your assertion (since you did not do so in response to Hudson's discovery requests.)

As we stated in our letter of July 7, 2008, we believe that we have complied with our obligations under Local Rule 37.2. Nevertheless, we hope that you will see the benefit of addressing all of the above issues, so we can avoid burdening the court with a motion. We await your prompt response.

Regards,

David J. Sheikh

DJS\le
Enclosure
cc:    Robert Briesblatt
       Thomas Maas



**Katten**
Katten Muchin Rosenman LLP

525 W. Monroe Street
Chicago, IL 60661-3693
312.902.5200 tel
312.902.1061 fax

BRIAN J. SODIKOFF
Brian.sodikoff@kattenlaw.com
312.902.5462 direct
312.577.4778 fax

July 7, 2008

Via E-Mail (shiek@nshn.com)

Mr. David J. Sheikh
Niro, Scavone, Haller & Niro
181 W. Madison Street, Suite 4600
Chicago, IL 60602

Re:     **Hudson Surgical, Inc. v. Zimmer Holdings, Inc. et al.**

Dear David,



This letter is in response to your discovery letter of July 7, 2008, which does not accurately portray Rush Medical's response to Hudson's multitude of discovery requests and mistakenly states that Rush Medical has not produced documents responsive to Hudson's requests.



Rush Medical is a not-for-profit hospital that provides critical medical services to thousands of patients everyday. Any time that Rush Medical personnel spend responding to discovery requests for this patent dispute, which is not really between Hudson and Rush Medical, takes away from the time that they can spend providing patient care. Rush Medical's production of documents and information is further burdened by the presence of private patient information, which is present on many Rush Medical documents but must be protected under federal regulations. Review and redaction of significant quantities of documents would result in significant expense to Rush Medical and creates an undue burden. Therefore, documents and information that can be obtained from other sources (such as third parties) should be obtained from those other sources, not from Rush Medical.



That being said, Rush Medical has expended substantial resources to provide Hudson with the documents and information that it seeks. Indeed, contrary to your suggestion in the July 7, 2008 letter, **Rush Medical has provided substantially all of the additional discovery mentioned in Hudson's June 19, 2008 letter**. Further, Rush Medical continues its investigation and intends to produce further responsive documents this week.



You requested that Rush System for Health provide a declaration showing that it has no involvement in the subject matter of this litigation. In turn, we asked that Hudson dismiss Rush System for Health from this lawsuit. We provided you with that declaration the next day, on June 20, 2008.



You sought the contracts between Rush Medical and Zimmer. We produced them.

50491117



**Katten**
Katten Muchin Rosenman LLP

Mr. David J. Sheikh
Page 2

 You sought documents reflecting Rush Medical's purchases and acquisition of Zimmer implants and instruments. Documents showing this information are likely available from other sources, and so Hudson should not be troubling a not-for-profit hospital for their production. Still, Rush Medical has produced responsive documents and continues its investigation for more.

 You requested contracts with physicians relating to knee replacement surgeries. As we have stated, our initial investigation suggests there are no such contracts, but we will supplement our discovery should we uncover any.

 You requested that we supplement our response to Interrogatory No. 1. We are in the process of supplementing our response to interrogatories and will provide our updated responses when they are completed.

 You sought documents identifying physicians who are authorized to do knee replacement surgeries at Rush Medical. We have (and/or will be in the near future) produced documents showing the privileges of the doctors identified by Hudson.

 With regards to Hudson's requests for documents reflecting the usage of the techniques or instruments, we requested in our letter of June 25, 2008 for Hudson to provide a more detailed basis of its infringement allegations so that Rush Medical could focus its discovery investigations.

 Specifically, in our letter we requested that Hudson identify the specific patent claims that it is asserting against Rush Medical. Your letter of June 27, 2008 did not respond in this regard. In fact, Hudson did not identify any patent claims it was asserting against Rush Medical.

 The identification of allegedly infringed patent claims is very important in determining the scope of discovery in all patent actions, and is especially important in this action. Hudson's '541 patent issued on March 18, 2008. There can be no infringement of that patent prior to March 18, 2008, and so documents relating to activities prior to that date would not be relevant as to infringement of the '541 patent.

 Because Hudson has not provided detailed infringement allegations, we cannot determine whether Hudson is seeking relevant documents. For example, in your letter of June 27, 2008, Hudson seeks documents relating to a February 6, 2004 press release. Those documents would not be relevant to claims of infringement of the '541 patent, which issued in 2008. Without



Mr. David J. Sheikh
Page 3

knowing which patent Hudson is asserting against which specific technique, we cannot fully determine whether that request and others like it seek relevant documents.[1]



Because of the recent issuance of the '541 patent and the attendant restriction on relevant discovery as to that patent to 2008 documents, an identification by Hudson of which techniques/devices infringe which claims of which patent is critical and necessary for determining the scope of discovery.



Furthermore, because Hudson has not provided a detailed claim of infringement for any of its patents in response to our request, we disagree with your contention that Hudson has made the necessary good faith efforts to resolve discovery disputes. We note that under Federal Circuit precedent, as embodied in *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) & *Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997), Hudson should have completed a detailed infringement analysis *before* filing the instant action, and so there is no reason for Hudson to withhold this analysis now. We therefore reiterate our request of June 27, 2008 that Hudson provide a detailed infringement analysis for each claim of each patent so that Rush Medical can consider Hudson's discovery requests in the context of the claims and defenses in this action.

Sincerely,

*Brian J. Sodikoff*

Katten Muchin Rosenman LLP
By:    Brian J. Sodikoff

---

[1] As to the '272 patent, we are not aware of any device and/or technique that can reasonably be considered to infringe any claim of the '272 patent, and Hudson has not specifically identified any such device/technique.